IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

Case No. _____

SABRINA BOUKHEIR,

      Plaintiff,

vs.

THE DOWNS LAW GROUP, P.A.,

      Defendant.

_____/

## **COMPLAINT**

Plaintiff, Sabrina Boukheir ("Plaintiff"), sues Defendant, The Downs Law Group, P.A. ("Defendant"), and alleges as follows.

1.     This is an action by Plaintiff against Defendant, a law firm and Plaintiff's former employer, for sex discrimination and retaliation in violation of the Florida Civil Rights Act of 1992, Fla. Stat. § 760.01 *et seq.* ("FCRA"). In addition, Plaintiff brings a claim for breach of contract.

2.     Plaintiff seeks damages exceeding $30,000, exclusive of interest, attorneys' fees, and costs.

3.     Plaintiff seeks all damages provided for under the FCRA, including attorneys' fees and costs, as well as any other available damages.

4.     In addition, Plaintiff seeks damages for Defendant's breach of its agreement with Plaintiff to pay five percent (5%) of the annual salary of two individuals Plaintiff referred/recruited to Defendant and who worked for Defendant for at least ninety (90) days.

## PARTIES, JURISDICTION, AND VENUE

5.      Plaintiff is an individual over the age of 18 and is otherwise *sui juris*.

6.      During the relevant period, Plaintiff was employed by Defendant and performed services for Defendant in Miami-Dade County, Florida.

7.      During the relevant period, Defendant conducted business in Miami-Dade County, Florida.

8.      This Court has jurisdiction over Plaintiff's claims as all events leading to the filing of this Complaint took place in Miami-Dade County, Florida.

9.      Venue is proper in Miami-Dade County because all events leading to the filing of this Complaint took place in Miami-Dade County, Florida.

10.     During the relevant period, Defendant was an "employer" as that term is defined under the FCRA as it employed 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of Defendant.

11.     During the relevant period, Plaintiff was an employee of Defendant as she performed services for, and was under the control and direction of, Defendant, and was provided wages and other remuneration by Defendant.

## PLAINTIFF HAS EXHAUSTED ADMINISTRATIVE REMEDIES

12.     Plaintiff was terminated by Defendant on or about May 9, 2022.

13.     On May 31, 2022, Plaintiff filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"), and dual-filed the Charge with the Florida Commission on Human Relations ("FCHR"). *See* Charge at **Exhibit A**.

14.     The FCHR failed to conciliate or determine whether there was reasonable cause on the Charge within 180 days of Plaintiff filing the Charge. Thus, pursuant to Fla. Stat. § 760.11(8),

2

Plaintiff is entitled to file this action in court.

15.     Plaintiff has met and exhausted all prerequisites and preconditions to filing this lawsuit.

### FACTUAL ALLEGATIONS

**Relevant Background Information**

16.     Plaintiff was hired by Defendant on or about January 31, 2022 to work as an Associate attorney.

17.     During the hiring process, Plaintiff attempted to negotiate for a starting salary of $115,000 but was ultimately offered $95,000 to start, with Defendant's promise that Defendant would increase Plaintiff's compensation at her 90-day evaluation.

18.     Upon commencing employment, Plaintiff was assigned several matters at different stages. Also, Plaintiff was required to, and did, complete "side projects," such as preparing case assessments of more than 15 matters that were not assigned to Plaintiff.

19.     Plaintiff constantly expressed an interest in taking on additional projects and further developing her litigation skills.

20.     From the outset, Plaintiff exceeded expectations. Plaintiff was diligent with her cases, required little to no supervision, had a great relationship with clients, and was well ahead of deadlines in her cases and with assignments.

21.     During her employment with Defendant, Plaintiff was never disciplined, written up, or advised of any performance issues.

22.     Plaintiff worked without issue until Wednesday, May 4, 2022.

23.     That day, during an attorney meeting, it became clear to Plaintiff that a similarly situated male attorney, Jason Clark, had been privy to information concerning side projects that

3

Plaintiff had not been.

24.     This was meaningful because Defendant indicated that an attorney's compensation was impacted by the number of side projects that attorneys did.

**Plaintiff's First Complaint to Defendant**

25.     Plaintiff sent a Microsoft Teams message to Defendant's Human Resources Director, Samandha Canepa, complaining that there was an ongoing issue in which several male attorneys (for example, David Durkee, Dylan Boigris, Jason Larey, and Jason Clark) had received information about side projects that female Associate attorneys (Laura Pereira, Sara Mancini, and Plaintiff) had not.

26.     This information allowed the male attorneys to volunteer for side projects while the female attorneys were left out and as such, not able to volunteer.

27.     Ms. Canepa claimed she would investigate the issue, but never followed-up with Plaintiff.

28.     Plaintiff later learned that another female attorney, Ms. Pereira, had previously complained to Ms. Canepa about this issue, but nothing had been done to rectify the situation.

**Plaintiff was Praised by her Supervising Attorney for her Performance**

29.     On May 5, 2022, Plaintiff attended her 90-day performance evaluation meeting with her supervising attorney, Mr. Durkee. Ms. Canepa was also in attendance.

30.     During the evaluation, Mr. Durkee praised Plaintiff's performance and stated that it was "very hard to find critiques" of her.

31.     Mr. Durkee stated that Plaintiff should "keep doing exactly what she was doing" and even commented that Defendant was "happy to have" Plaintiff.

32.     The only constructive comment Mr. Durkee made was that Plaintiff should "grab

the bull by the horns more."

33.     Plaintiff informed Mr. Durkee that she wanted more hearing and deposition experience and Mr. Durkee stated that he would provide her with opportunities. In fact, the day after the performance evaluation meeting, Mr. Durkee emailed Plaintiff and asked if she was available to cover a deposition for him on May 13, 2022.

**Plaintiff's Second Complaint to Defendant**

34.     After the performance evaluation meeting, Plaintiff went to Ms. Canepa's office to discuss the salary increase she was expecting based on the representations made by Defendant during the hiring process.

35.     During the meeting with Ms. Canepa, Plaintiff presented, among other things, a list of the side projects she had completed and requested that she receive a compensation increase to $119,900, which was the market rate according to Plaintiff's research and because Mr. Clark (a junior attorney who graduated and was barred at the same time as Plaintiff) was receiving a salary of $110,000. Plaintiff had learned of Mr. Clark's salary from individuals at Defendant.

36.     During this meeting with Ms. Canepa, Plaintiff complained that Mr. Clark was earning more than she was even though they were similarly situated.

37.     Ms. Canepa indicated that she needed to review everything and would continue the discussion the following week as she was out of the office the next day (Friday).

**Plaintiff's Third Complaint About Unequal Pay**

38.     Later that same day, Plaintiff went to the office of Defendant's Founder and Principal Attorney, Craig Downs, to discuss her complaints that Mr. Clark was being paid more than she and that male attorneys were being treated more favorably than female attorneys. Plaintiff also presented Mr. Downs with the Robert Half pay scale and requested the promised salary

increase.

39.     Mr. Downs claimed that he would speak with Ms. Canepa.

40.     On Friday, May 6, 2022, Plaintiff sent an email to Mr. Downs and Ms. Canepa reiterating her complaints about, among other things, the fact that male attorneys were being made aware of side projects that female attorneys were not, and that a similarly situated male employee (Mr. Clark) was earning more money than she was even though she was equally, if not more, qualified.

41.     Specifically, Plaintiff wrote, "I do not appreciate the fact that I am earning significantly less money than my male coworker, who has objectively less litigation experience than I do, when we are the same level of attorney. I truly hope this will be recognized and corrected."

42.     During the day on May 6, Plaintiff spoke with Ms. Pereira and learned that she, a sixth-year female Associate attorney, was earning the same compensation as Mr. Clark (a significantly less experienced male attorney).

43.     Ms. Pereira also expressed her frustration and claimed that she would speak with Mr. Downs about this pay inequality.

44.     On Monday, May 9, 2022, Plaintiff learned that there was a closed-door meeting that was attended by Mr. Downs, Mr. Durkee, Ms. Canepa, and Mr. Boigris.

45.     Plaintiff was not invited to the meeting although, upon information and belief, Plaintiff's complaints were discussed.

**Plaintiff's Termination**

46.     Later that day, Plaintiff walked to Ms. Canepa's office for a scheduled meeting to address the complaints Plaintiff raised at the end of the prior week.

47.     When Plaintiff arrived, Ms. Canepa excused herself for a few minutes and then returned.

48.     Moments later, Defendant's Controller, Alfredo Mesa, joined the meeting.

49.     When Plaintiff questioned why Mr. Mesa was present, Ms. Canepa responded, "because of your review."

50.     Plaintiff was confused and said, "but he's not litigation," to which Ms. Canepa responded, "well, he's management."

51.     Ms. Canepa then proceeded to criticize Plaintiff for "creating problems" by allegedly speaking with Mr. Boigris, Mr. Clark, and Ms. Pereira about compensation and complaining about the pay disparities between male and female attorneys.

52.     Plaintiff explained that she had not spoken with Mr. Clark about this issue and her conversation with Mr. Boigris had also involved work related matters.

53.     Plaintiff acknowledged that she had spoken with Ms. Pereira about female attorneys being compensated less than male attorneys.

54.     Even though Plaintiff's discussions with Ms. Pereira were "concerted activity" for the purpose of "mutual aid or protection" under the National Labor Relations Act, Ms. Canepa nonetheless became irate.

55.     After some back-and-forth, Ms. Canepa abruptly said, "I think it is best that we part ways. Your expectations and our expectations do not match, and I think you would do better with a firm that uses a pay scale."

56.     Plaintiff was completely shocked.

57.     At that point, Mr. Mesa chimed in and said, "Sam, is there any way this can be mended?"

58.     Ms. Canepa responded that the decision was made.

59.     Plaintiff reminded Ms. Canepa that it is unlawful to terminate an employee for complaining about discrimination and for discussing compensation with another female attorney.

60.     Appearing flustered, Ms. Canepa blurted out that Plaintiff was being fired for "performance."

61.     Given that Plaintiff had never been told of any performance issues nor had she ever received a written counseling, Plaintiff was baffled by Ms. Canepa's statement.

62.     Ms. Canepa did not provide any specific information about any alleged performance issues.

63.     Plaintiff requested a copy of her recent performance review and Ms. Canepa refused and claimed, "I am not required to show you anything."

64.     Mr. Mesa asked again if there was any way to defuse the situation, and Ms. Canepa said no.

65.     Ms. Canepa's claim that Plaintiff was terminated for alleged performance reasons is pretextual and belied by the facts.

**Defendant Violated its Policies by Terminating Plaintiff's Employment**

66.     Section 5-7 of Defendant's Employee Handbook ("Whistleblower") provides that:

A whistleblower as defined by this policy is an employee of The Downs Law Group, P.A. who reports an activity that he/she considers to be illegal or dishonest to one or more of the parties specified in this policy. The whistleblower is not responsible for investigating the activity or for determining fault or corrective measures; appropriate Human Resources officials are charged with these responsibilities.

Examples of illegal or dishonest activities are violations of federal, state, or local laws; billing for services not performed or for goods not delivered; and other fraudulent financial reporting.

.     .     .

8

Whistleblower protections are provided in two important areas: (1) confidentiality and (2) against retaliation . . . The Law Firm will not retaliate against a whistleblower. This includes, but is not limited to protection from retaliation in the form of an adverse employment action, such as termination, compensation decreases, or poor work assignments and threats of physical harm. Any whistleblower who believes he/she is being retaliated against must contact Human Resources immediately.

67.     In addition, Section 5-22 of Defendant's Employee Handbook ("Involuntary Termination of Employment") provides that:

When practical, employees will be warned and counseled. However, failure to correct behavior or further violation of any policy may result in additional disciplinary action, up to and including termination. Depending upon the nature of the offense, the Law Firm reserves the right to terminate any employee without warning.

Warnings and counseling are to be documented on a Disciplinary/Counseling/Termination Report.

The Law Firm will generally terminate an employee after the employee's third offense.

68.     Here, Defendant did not comply with its own policies as Plaintiff was terminated for complaining about Defendant's violations of law.

69.     Further, Defendant did not follow its "three strike" policy as Plaintiff did not even commit one offense let alone three offenses.

70.     As there was no legitimate basis for paying Plaintiff less than similarly situated male attorneys, it is clear that Plaintiff was intentionally discriminated against because of her sex (female).

71.     Similarly, as there was no legitimate business reason for terminating Plaintiff, it is clear that Plaintiff's termination was in retaliation for her complaints of Defendant's violations of law.

72.     Any explanation proffered by Defendant for terminating Plaintiff's employment, or

for paying Plaintiff less than similarly situated male attorneys, is pretextual.

73.    Defendant's systemic practice of paying male attorneys more than similarly situated female attorneys is unlawful and violates the FCRA.

74.    Upon information and belief, there is a class of female attorneys that were paid less than similarly situated, or even less qualified, male attorneys.

**Defendant Breached an Agreement with Plaintiff to Pay Referral/Recruitment Fees**

75.    During her employment with Defendant, Plaintiff entered into an agreement with Defendant whereby Defendant agreed to pay Plaintiff a specified percentage of the annual salary for an employee she referred/recruited to Defendant and who remained employed by Defendant for at least ninety (90) days.

76.    The agreement was signed by Plaintiff and Defendant.

77.    Pursuant to their agreement, Plaintiff was first entitled to, and did receive, two- and one-half percent (2.5%) of the annual salary of Alexis Lunetta, who Plaintiff referred/recruited to Defendant and who remained employed by Defendant for at least ninety (90) days.

78.    Plaintiff and Defendant then agreed that Plaintiff would be entitled to five percent (5%) of the annual salary for anyone else that Plaintiff referred/recruited to the law firm and who remained employed for at least ninety (90) days.

79.    Plaintiff then referred/recruited to Defendant, Bella Simental (who, upon information and belief, was receiving an annual salary of $60,000) and Sheyanne Sullivan (who, upon information and belief, was receiving an annual salary of $58,000).

80.    Upon information and belief, both Ms. Simental and Ms. Sullivan were/have been employed by Defendant for over ninety (90) days.

81.    After Plaintiff was terminated, Defendant's Controller, Mr. Mesa, acknowledged

that Plaintiff was entitled to the referral/recruitment fees.

82.     Therefore, Plaintiff is owed approximately $5,900 in referral/recruitment fees.

83.     To date, Defendant has failed to pay the referral/recruitment fees owed to Plaintiff.

**Plaintiff's Damages and Retention of Counsel**

84.     Because of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages, as set forth in more detail below.

85.     Plaintiff hired the undersigned law firm to represent her in this case and has agreed to pay the firm a reasonable fee for its services.

**COUNT I**
**SEX DISCRIMINATION AGAINST DEFENDANT**
**IN VIOLATION OF THE FCRA**

86.     Plaintiff re-adopts every factual allegation as stated in paragraphs 1-74 and 84-85 above as though fully recited herein.

87.     Discrimination in the workplace on the basis of sex is prohibited under the FCRA.

88.     Fla. Stat. § 760.10(1) provides that "[i]t is an unlawful employment practice for an employer . . . [t]o otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ."

89.     Plaintiff's sex is female and as such, is within a protected group of individuals under the FCRA.

90.     Plaintiff's job functions as an Associate attorney were of equal skill, effort, and responsibility, if not greater, than that of Defendant's male Associate attorneys, and the work was performed under the same or similar working conditions.

91.     Plaintiff was intentionally discriminated against by Defendant because of her sex (female).

92.     During the relevant period, Plaintiff and other female attorneys were denied critical information about, and/or opportunities concerning, side projects that male attorneys received.

93.     Further, Plaintiff was paid less than similarly situated male attorneys, which is a form of sex discrimination that is prohibited by the FCRA.

94.     Plaintiff was qualified for and entitled to, at a minimum, wages equal to her male counterparts performing substantially the same, if not less, work than Plaintiff performed.

95.     Defendant's conduct was willful and in disregard of Plaintiff's protected rights.

96.     As a result of Defendant's actions as alleged herein, Plaintiff was deprived of rights, was exposed to ridicule and embarrassment, and suffered extreme emotional distress and damage.

97.     Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory actions.

**WHEREFORE**, Plaintiff respectfully requests that the Court:

A.     Adjudge and decree that Defendant violated the FCRA, and did so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

B.     Award Plaintiff back pay, including the discrepancy in pay between what Plaintiff was receiving and what similarly situated male attorneys were/are receiving;

C.     Require Defendant to reinstate Plaintiff to the same position at the same rate of pay and with the same benefits that Plaintiff would have had had Plaintiff not been discriminated against by Defendant, or in lieu of reinstatement, award front pay;

D.     Award Plaintiff compensatory damages, including damages for mental anguish, loss of dignity, and any other intangible injuries;

E.     Award Plaintiff punitive damages;

F.     Award Plaintiff her attorneys' fees and costs;

G.      Award Plaintiff all recoverable interest; and

H.      Award any other relief that this Court deems just and proper.

## COUNT II
## RETALIATION AGAINST DEFENDANT
## IN VIOLATION OF THE FCRA

98.     Plaintiff re-adopts every factual allegation as stated in paragraphs 1-74 and 84-85 above as though fully recited herein.

99.     Fla. Stat. § 760.10(7) provides that "[i]t is an unlawful employment practice for an employer . . . to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section."

100.    Defendant intentionally retaliated against Plaintiff for exercising rights protected under the FCRA, by, for example, terminating her employment after she complained about pay inequality/discrimination.

101.    There is a temporal proximity between Plaintiff's protected activity and her termination.

102.    Defendant's conduct was willful and in disregard of Plaintiff's protected rights.

103.    As a result of Defendant's actions as alleged herein, Plaintiff was deprived of rights, was exposed to ridicule and embarrassment, and suffered extreme emotional distress and damage.

104.    The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and Defendant's failure to take prompt remedial action to prevent retaliation against the Plaintiff, in violation of its policies, deprived Plaintiff of statutory rights under the law.

105.    The actions of Defendant and its agents were willful, wanton, and intentional, and with malice or reckless indifference to Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of economic, compensatory, and punitive damages.

106.    Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's retaliatory actions.

**WHEREFORE**, Plaintiff respectfully requests that the Court:

A.    Adjudge and decree that Defendant violated the FCRA, and did so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

B.    Award Plaintiff back pay at the rate of pay similarly situated male attorneys were/are receiving;

C.    Require Defendant to reinstate Plaintiff to the same position at the same rate of pay and with the same benefits that Plaintiff would have had had Plaintiff not been retaliated against by Defendant, or in lieu of reinstatement, award front pay;

D.    Award Plaintiff compensatory damages, including damages for mental anguish, loss of dignity, and any other intangible injuries;

E.    Award Plaintiff punitive damages;

F.    Award Plaintiff her attorneys' fees and costs;

G.    Award Plaintiff all recoverable interest; and

H.    Award any other relief that this Court deems just and proper.

<u>**COUNT III**</u>
**BREACH OF CONTRACT AGAINST DEFENDANT**

107.    Plaintiff re-adopts every factual allegation as stated in paragraphs 1-15 and 75-85 above as though fully recited herein.

108.    Plaintiff entered into an agreement with Defendant whereby Plaintiff was entitled

14

to five percent (5%) of the annual salary for anyone that Plaintiff referred/recruited to the law firm and who remained employed for at least ninety (90) days.

109.     Sufficient consideration was provided for the agreement and Plaintiff accepted Defendant's offer.

110.     Plaintiff then referred/recruited to Defendant, Bella Simental (who, upon information and belief, was receiving an annual salary of $60,000) and Sheyanne Sullivan (who, upon information and belief, was receiving an annual salary of $58,000).

111.     Defendant breached its agreement with Plaintiff by failing to pay approximately $5,900 in referral/recruitment fees owed to Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in its favor against Defendant and award damages for breach of contract and also award pre and post-judgment interest pursuant to the terms of the agreement between Plaintiff and Defendant, and grant such other relief as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a jury trial of all issues so triable.

Dated: November 28, 2022                                         Respectfully submitted,

**BT LAW GROUP, PLLC**
3050 Biscayne Blvd., Suite 205
Miami, Florida 33137
Tel: (305) 507-8506

By:  s/ Jason D. Berkowitz____
**ANISLEY TARRAGONA, ESQ.**
Florida Bar No. 51626
anisley@btattorneys.com
**JASON D. BERKOWITZ, ESQ.**
Florida Bar No. 0055414
jason@btattorneys.com
Attorneys for Plaintiff

# EXHIBIT A

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>X FEPA<br>X EEOC | Agency(ies) Charge No(s): |
|---|---|---|

U.S. Equal Employment Opportunity Commission
Florida Commission on Human Relations

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.)<br>Ms. Sabrina Boukheir | Home Phone (Incl. Area Code) | Date of Birth<br>REDACTED |
|---|---|---|
| Street Address    REDACTED    City, State and ZIP Code | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>The Downs Law Group, P.A. | No. Employees, Members<br>15+ | Phone No. (Include Area Code)<br>305.444.8226 |
|---|---|---|
| Street Address<br>3250 Mary St. #307 | City, State and ZIP Code<br>Miami, FL 33133 | |
| Name | No. Employees, Members | Phone No. (Include Area Code) |

DISCRIMINATION BASED ON (Check appropriate box(es).)

| | RACE | | COLOR | X SEX | | RELIGION | | NATIONAL ORIGIN |
| X | RETALIATION | | AGE | | DISABILITY | | GENETIC INFORMATION |
| | OTHER (Specify) | | | | | | |

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: Jan. 2022   Latest: May 2022

CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was discriminated against by my former employer, The Downs Law Group, P.A. ("DLG"), based on my gender. I was also retaliated against by DLG. I am an attorney and began my employment at DLG, a law firm, on January 31, 2022 and remained employed until I was unlawfully terminated on or about May 9, 2022.

During the hiring process, I attempted to negotiate for a starting salary of $115,000 but was ultimately offered $95,000 with a promise by DLG's Human Resources Director, Samandha Canepa, that DLG would reassess my compensation at my 90-day evaluation. At the time of hire, I was assigned several cases (both active and pre-suit). DLG also required me and other associate attorneys to complete "side projects," such as writing memos for DLG's funders about ongoing cases. Even though I was a junior attorney, I exceeded expectations. I was diligent with my cases, required little to no supervision, had a great relationship with clients, and was well ahead of deadlines in my cases.

I worked without issue until Wednesday, May 4, 2022, which was the beginning of the end. That day, during an attorney meeting, it became clear to me that a similarly situated male attorney, Jason Clark, had been privy to information concerning side projects that I had not been. This information allowed the male attorneys to volunteer for side projects while the female attorneys were left out and as such, not able to volunteer, which had an impact on compensation. Ms. Canepa claimed that she would investigate the issue, but never followed-up with me. I later learned that another female attorney had previously complained to Ms. Canepa about this issue, but nothing had been done to rectify the situation.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>5/18/2022    Sabrina Boukheir<br>Date    Charging Party Signature | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year)<br><br>Annasofia A. Roig<br>Comm.:GG 221370<br>Expires: May 23, 2022<br>Notary Public - State of Florida |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA [X] EEOC | |

**U.S. Equal Employment Opportunity Commission**
**Florida Commission on Human Relations**

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet)

On Thursday, May 5, 2022, I attended my 90-day performance evaluation meeting with my supervisor, David Durkee, Esq. Ms. Canepa was also in attendance. During the evaluation, Mr. Durkee praised my performance and stated that it was "very hard to find critiques" of me. Mr. Durkee explained that I should "keep doing exactly what [I] was doing" and even commented that DLG was "happy to have" me. The only constructive comment Mr. Durkee made was that I should "grab the bull by the horns more." I informed Mr. Durkee that I wanted more hearing and deposition experience and Mr. Durkee stated that he would provide me with opportunities. In fact, the day after the performance evaluation meeting, Mr. Durkee emailed me and asked if I was available to cover a deposition for him on May 13, 2022.

After the evaluation meeting, I went to Ms. Canepa's office to discuss the salary increase I was expecting based on the representations made by DLG at the time of hire. During the meeting with Ms. Canepa, I presented a list of the side projects I had completed and requested that I receive a compensation increase to $119,900, as this was the market rate according to my research and because Jason Clark (a junior attorney who graduated and was barred at the same time as I) was receiving a salary of $110,000. I had learned of Mr. Clark's salary from two individuals at DLG. Ms. Canepa initially nit-picked my list of side projects and commented, without any basis (and even though she has no litigation experience), that I was "not doing enough to take [my]self to the next level."

During this meeting with Ms. Canepa, I complained that Mr. Clark was earning $15,000 more than I was even though we were similarly situated. Ms. Canepa indicated that she needed to review everything and would continue the discussion the following week as she was out of the office the next day (Friday) for vacation.

Later that same day, I went to the office of Craig Downs, founder and principal attorney at DLG, to discuss my complaints that Mr. Clark was being paid more than I and that male attorneys were being treated more favorably. Mr. Downs responded that he would speak with Ms. Canepa.

On Friday, May 6, 2022, I sent an email to Mr. Downs and to Ms. Canepa, reiterating my complaints about, among other things, the fact that male attorneys were being made aware of side projects that female attorneys were not, and that a similarly situated male employee (Mr. Clark) was earning more money than I was. Specifically, I wrote, "**I do not appreciate the fact that I am earning significantly less money than my male coworker, who has objectively less litigation experience than I do, when we are the same level of attorney**. I truly hope this will be recognized and corrected."

During the day on May 6, I spoke with Laura Pereira, Esq. and learned that she, a sixth-year attorney, was earning the same compensation as Mr. Clark (a first-year attorney). Ms. Pereira expressed her frustration and claimed that she would speak with Mr. Downs about this pay inequality.

On Monday, May 9, 2022, I learned that there was a closed-door meeting that was attended by Mr. Downs, Mr. Durkee, Ms. Canepa, and Dylan Boigris, Esq. I was not invited to the meeting although, upon information and belief, my complaints were discussed.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY – When necessary for State and Local Agency Requirements |
| I declare under penalty of perjury that the above is true and correct. | SIGNATURE OF COMPLAINANT |
| 5/18/2022              *Sabrina Boukhris*  Date                    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)  Annasofia A. Roig  Comm.: GG 221370  Expires: May 23, 2022  Notary Public - State of Florida |

<table>
<tr><td colspan="2">

**CHARGE OF DISCRIMINATION**

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.
</td><td>

Charge Presented To:
    [X] FEPA
    [X] EEOC
</td><td>Agency(ies) Charge No(s):</td></tr>
</table>

**U.S. Equal Employment Opportunity Commission**
**Florida Commission on Human Relations**

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet)

Later that day, I walked to Ms. Canepa's office for our scheduled meeting to address the complaints I raised on Thursday, May 5. When I arrived, Ms. Canepa excused herself for a few minutes and then returned. Moments later, DLG's Controller, Alfredo Mesa, joined the meeting. When I questioned why Mr. Mesa was present, Ms. Canepa responded, "because of your review." I was confused and said, "but he's not litigation," to which Ms. Canepa responded, "well, he's management."

During the meeting, Ms. Canepa criticized me for "creating problems" by allegedly speaking with Mr. Boigris, Mr. Clark, and Ms. Pereira about the pay discrepancies between male and female attorneys. I explained that I had not spoken with Mr. Clark about this issue and had only spoken with Mr. Boigris about work related matters. I acknowledged that I had spoken with Ms. Pereira about female attorneys being under-compensated. Even though my discussions with Ms. Pereira were "concerted activity" for the purpose of "mutual aid or protection," Ms. Canepa nonetheless became irate.

Ms. Canepa and I then discussed the pay disparities at the firm between male and female attorneys. After some back-and-forth, Ms. Canepa abruptly said, "I think it is best that we part ways, your expectations and our expectations do not match and I think you would do better with a firm that uses a pay scale." I was completely shocked. At that point Mr. Mesa chimed in and said, "Sam, is there any way that this can be mended?" Ms. Canepa responded that the decision was made. I reminded Ms. Canepa that it is unlawful to terminate an employee for complaining about unequal pay and for discussing compensation with another female attorney. Not knowing how to respond, Ms. Canepa claimed that she was firing me for "performance." I then requested a copy of my recent performance review and Ms. Canepa refused, claiming, "I am not required to show you anything." Mr. Mesa asked again if there was any way to defuse the situation, and Ms. Canepa said no.

Ms. Canepa's claim that I was terminated for alleged performance reasons is illogical and belied by the facts. For example:

- Two business days earlier, I had received a stellar performance evaluation from Mr. Durkee (which Ms. Canepa observed);

- The day after my review, Mr. Durkee requested that I handle a deposition in one of his cases on May 13, 2022;

- I had not received any written counseling or warning for poor performance;

- Attorneys at DLG committed serious infractions (e.g., missing court deadlines) but were not terminated; and

- DLG never provided me with a termination letter or ever articulated in writing the basis for my termination.

<table>
<tr><td>

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

5/18/2022     *[signature]*
_____   _____
Date         Charging Party Signature
</td><td>

NOTARY – When necessary for State and Local Agency Requirements

*[signature]*

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

Annasofia A. Roig
Comm.: GG 221370
Expires: May 23, 2022
Notary Public - State of Florida
</td></tr>
</table>

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA [X] EEOC | |

### U.S. Equal Employment Opportunity Commission
### Florida Commission on Human Relations

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet)

In addition, Section 5-22 of DLG's Employee Handbook ("Involuntary Termination of Employment") provides that:

> When practical, employees will be warned and counseled. However, failure to correct behavior or further violation of any policy may result in additional disciplinary action, up to and including termination. Depending upon the nature of the offense, the Law Firm reserves the right to terminate any employee without warning.

> Warnings and counseling are to be documented on a Disciplinary/Counseling/Termination Report.

> The Law Firm will generally terminate an employee after the employee's third offense.

Here, DLG did not comply with its own "three strike" policy as I did not commit one offense let alone three offenses. As there was no non-discriminatory or non-retaliatory business reason for terminating my employment, coupled with the temporal proximity between my protected activity and my termination, it is clear that I was terminated in retaliation for complaining about being paid less than a male attorney, and because I attempted to discuss my compensation with other female attorneys.

I have been discriminated and retaliated against in violation of Title VII of the Civil Rights Act of 1964, the Florida Civil Rights Act, and local laws.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | |
| 5/18/2022     *Sabrina Birukhein* Date     Charging Party Signature | SIGNATURE OF COMPLAINANT SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

Annasofia A. Roig
Comm.: GG 221370
Expires: May 23, 2022
Notary Public - State of Florida

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

Case No. 2022-022571-CA-01

SABRINA BOUKHEIR,

      Plaintiff,

vs.

THE DOWNS LAW GROUP, P.A.,

      Defendant.

_____/

### FIRST AMENDED COMPLAINT

Plaintiff, Sabrina Boukheir ("Plaintiff"), sues Defendant, The Downs Law Group, P.A. ("Defendant"), and alleges as follows.

1.      This is an action by Plaintiff against Defendant, a law firm and Plaintiff's former employer, for sex discrimination and retaliation in violation of the Florida Civil Rights Act of 1992, Fla. Stat. § 760.01 *et seq.* ("FCRA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). In addition, Plaintiff brings a claim for breach of contract.

2.      Plaintiff seeks damages exceeding $50,000, exclusive of interest, attorneys' fees, and costs.

3.      Plaintiff seeks all damages provided for under the FCRA and Title VII, including attorneys' fees and costs, as well as any other available damages.

4.      In addition, Plaintiff seeks damages for Defendant's breach of its agreement with Plaintiff to pay five percent (5%) of the annual salary of two individuals Plaintiff referred/recruited to Defendant and who worked for Defendant for at least ninety (90) days.

## PARTIES, JURISDICTION, AND VENUE

5.      Plaintiff is an individual over the age of 18 and is otherwise *sui juris*.

6.      During the relevant period, Plaintiff was employed by Defendant and performed services for Defendant in Miami-Dade County, Florida.

7.      During the relevant period, Defendant conducted business in Miami-Dade County, Florida.

8.      This Court has jurisdiction over Plaintiff's claims as all events leading to the filing of this Complaint took place in Miami-Dade County, Florida.

9.      Venue is proper in Miami-Dade County because all events leading to the filing of this Complaint took place in Miami-Dade County, Florida.

10.      During the relevant period, Defendant was an "employer" as that term is defined under Title VII and the FCRA as it employed 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of Defendant.

11.      During the relevant period, Plaintiff was an employee of Defendant as she performed services for, and was under the control and direction of, Defendant, and was provided wages and other remuneration by Defendant.

## PLAINTIFF HAS EXHAUSTED ADMINISTRATIVE REMEDIES

12.      Plaintiff was terminated by Defendant on or about May 9, 2022.

13.      On May 31, 2022, Plaintiff filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"), and dual filed the Charge with the Florida Commission on Human Relations ("FCHR"). *See* Charge at **Exhibit A**.

14.      On May 24, 2023, the EEOC issued a Notice of Right to Sue (the "Notice"). *See*

**Exhibit B.**

15.     This Amended Complaint is filed in accordance with the Notice and within 90 days of Plaintiff's receipt of the Notice.

16.     In addition, the FCHR failed to conciliate or determine whether there was reasonable cause on the Charge within 180 days of Plaintiff filing the Charge. Thus, pursuant to Fla. Stat. § 760.11(8), Plaintiff is entitled to file an action under the FCRA in court.

17.     Plaintiff has met and exhausted all prerequisites and preconditions to filing this lawsuit.

## FACTUAL ALLEGATIONS

**Relevant Background Information**

18.     Plaintiff was hired by Defendant on or about January 31, 2022 to work as an Associate attorney.

19.     During the hiring process, Plaintiff attempted to negotiate for a starting salary of $115,000 but was ultimately offered $95,000 to start, with Defendant's promise that Defendant would increase Plaintiff's compensation at her 90-day evaluation.

20.     Upon commencing employment, Plaintiff was assigned several matters at different stages. Also, Plaintiff was required to, and did, complete "side projects," such as preparing case assessments of more than 15 matters that were not assigned to Plaintiff.

21.     Plaintiff constantly expressed an interest in taking on additional projects and further developing her litigation skills.

22.     From the outset, Plaintiff exceeded expectations. Plaintiff was diligent with her cases, required little to no supervision, had a great relationship with clients, and was well ahead of deadlines in her cases and with assignments.

23.      During her employment with Defendant, Plaintiff was never disciplined, written up, or advised of any performance issues.

24.      Plaintiff worked without issue until Wednesday, May 4, 2022.

25.      That day, during an attorney meeting, it became clear to Plaintiff that a similarly situated male attorney, Jason Clark, had been privy to information concerning side projects that Plaintiff had not been.

26.      This was meaningful because Defendant indicated that an attorney's compensation was impacted by the number of side projects that attorneys did.

**Plaintiff's First Complaint to Defendant**

27.      Plaintiff sent a Microsoft Teams message to Defendant's Human Resources Director, Samandha Canepa, complaining that there was an ongoing issue in which several male attorneys (for example, David Durkee, Dylan Boigris, Jason Larey, and Jason Clark) had received information about side projects that female Associate attorneys (Laura Pereira, Sara Mancini, and Plaintiff) had not.

28.      This information allowed the male attorneys to volunteer for side projects while the female attorneys were left out and as such, not able to volunteer.

29.      Ms. Canepa claimed she would investigate the issue, but never followed-up with Plaintiff.

30.      Plaintiff later learned that another female attorney, Ms. Pereira, had previously complained to Ms. Canepa about this issue, but nothing had been done to rectify the situation.

**Plaintiff was Praised by her Supervising Attorney for her Performance**

31.      On May 5, 2022, Plaintiff attended her 90-day performance evaluation meeting with her supervising attorney, Mr. Durkee. Ms. Canepa was also in attendance.

32.     During the evaluation, Mr. Durkee praised Plaintiff's performance and stated that it was "very hard to find critiques" of her.

33.     Mr. Durkee stated that Plaintiff had "stayed ahead of the curve," was a "good team player," had a "great attitude," and even commented that Defendant was "happy to have" Plaintiff.

34.     The only constructive comment Mr. Durkee made was that while Plaintiff was "currently following the plan given . . . once you really know BP – I want to see more creativity."

35.     During the meeting, Plaintiff requested additional training so she could continue growing. Mr. Durkee acknowledged that Plaintiff needed "to be trained a little more" and stated that he "hope[d] to be a good mentor" to Plaintiff.

36.     Also, Plaintiff informed Mr. Durkee that she wanted more hearing and deposition experience and Mr. Durkee stated that he would provide her with opportunities.

37.     The day after the performance evaluation meeting, Mr. Durkee emailed Plaintiff and asked if she was available to cover a deposition for him on May 13, 2022. Plaintiff responded that she was available and looked forward to covering the deposition.

**Plaintiff's Second Complaint to Defendant**

38.     After the performance evaluation meeting, Plaintiff went to Ms. Canepa's office to discuss the salary increase she was expecting based on the representations made by Defendant during the hiring process.

39.     During the meeting with Ms. Canepa, Plaintiff presented, among other things, a list of the side projects she had completed and requested that she receive a compensation increase to $119,900, which was the market rate according to Plaintiff's research and because Mr. Clark (a junior attorney who graduated and was barred at the same time as Plaintiff) was receiving a salary of $110,000. Plaintiff had learned of Mr. Clark's salary from individuals at Defendant.

40.     During this meeting with Ms. Canepa, Plaintiff complained that Mr. Clark was earning more than she was even though they were similarly situated.

41.     Ms. Canepa indicated that she needed to review everything and would continue the discussion the following week as she was out of the office the next day (Friday).

**Plaintiff's Third Complaint About Unequal Pay**

42.     Later that same day, Plaintiff went to the office of Defendant's Founder and Principal Attorney, Craig Downs, to discuss her complaints that Mr. Clark was being paid more than she and that male attorneys were being treated more favorably than female attorneys. Plaintiff also presented Mr. Downs with the Robert Half pay scale and requested the promised salary increase.

43.     Mr. Downs claimed that he would speak with Ms. Canepa.

44.     On Friday, May 6, 2022, Plaintiff sent an email to Mr. Downs and Ms. Canepa reiterating her complaints about, among other things, the fact that male attorneys were being made aware of side projects that female attorneys were not, and that a similarly situated male employee (Mr. Clark) was earning more money than she was even though she was equally, if not more, qualified.

45.     Specifically, Plaintiff wrote, "I do not appreciate the fact that I am earning significantly less money than my male coworker, who has objectively less litigation experience than I do, when we are the same level of attorney. I truly hope this will be recognized and corrected."

46.     During the day on May 6, Plaintiff spoke with Ms. Pereira and learned that she, a sixth-year female Associate attorney, was earning the same compensation as Mr. Clark (a significantly less experienced male attorney).

47.     Ms. Pereira also expressed her frustration and claimed that she would speak with Mr. Downs about this pay inequality.

48.     On Monday, May 9, 2022, Plaintiff learned that there was a closed-door meeting that was attended by Mr. Downs, Mr. Durkee, Ms. Canepa, and Mr. Boigris.

49.     Plaintiff was not invited to the meeting although, upon information and belief, Plaintiff's complaints were discussed.

**<u>Plaintiff's Termination</u>**

50.     Later that day, Plaintiff walked to Ms. Canepa's office for a scheduled meeting to address the complaints Plaintiff raised at the end of the prior week.

51.     When Plaintiff arrived, Ms. Canepa excused herself for a few minutes and then returned.

52.     Moments later, Defendant's Controller, Alfredo Mesa, joined the meeting.

53.     When Plaintiff questioned why Mr. Mesa was present, Ms. Canepa responded, "because of your review."

54.     Plaintiff was confused and said, "but he's not litigation," to which Ms. Canepa responded, "well, he's management."

55.     Ms. Canepa then proceeded to criticize Plaintiff for "creating problems" by allegedly speaking with Mr. Boigris, Mr. Clark, and Ms. Pereira about compensation and complaining about the pay disparities between male and female attorneys.

56.     Plaintiff explained that she had not spoken with Mr. Clark about this issue and her conversation with Mr. Boigris had also involved work related matters.

57.     Plaintiff acknowledged that she had spoken with Ms. Pereira about female attorneys being compensated less than male attorneys.

58.     Even though Plaintiff's discussions with Ms. Pereira were "concerted activity" for the purpose of "mutual aid or protection" under the National Labor Relations Act, Ms. Canepa nonetheless became irate.

59.     After some back-and-forth, Ms. Canepa abruptly said, "I think it is best that we part ways. Your expectations and our expectations do not match, and I think you would do better with a firm that uses a pay scale."

60.     Plaintiff was completely shocked.

61.     At that point, Mr. Mesa chimed in and said, "Sam, is there any way this can be mended?"

62.     Ms. Canepa responded that the decision was made.

63.     Plaintiff reminded Ms. Canepa that it is unlawful to terminate an employee for complaining about discrimination and for discussing compensation with another female attorney.

64.     Appearing flustered, Ms. Canepa blurted out that Plaintiff was being fired for "performance."

65.     Given that Plaintiff had never been told of any performance issues nor had she ever received a written counseling, Plaintiff was baffled by Ms. Canepa's statement.

66.     Ms. Canepa did not provide any specific information about any alleged performance issues.

67.     Plaintiff requested a copy of her recent performance review and Ms. Canepa refused and claimed, "I am not required to show you anything."

68.     Mr. Mesa asked again if there was any way to defuse the situation, and Ms. Canepa said no.

69.     Ms. Canepa's claim that Plaintiff was terminated for alleged performance reasons

is pretextual and belied by the facts.

**Defendant Violated its Policies by Terminating Plaintiff's Employment**

70.     Section 5-7 of Defendant's Employee Handbook ("Whistleblower") provides that:

A whistleblower as defined by this policy is an employee of The Downs Law Group, P.A. who reports an activity that he/she considers to be illegal or dishonest to one or more of the parties specified in this policy. The whistleblower is not responsible for investigating the activity or for determining fault or corrective measures; appropriate Human Resources officials are charged with these responsibilities.

Examples of illegal or dishonest activities are violations of federal, state, or local laws; billing for services not performed or for goods not delivered; and other fraudulent financial reporting.

.          .          .

Whistleblower protections are provided in two important areas: (1) confidentiality and (2) against retaliation . . . The Law Firm will not retaliate against a whistleblower. This includes, but is not limited to protection from retaliation in the form of an adverse employment action, such as termination, compensation decreases, or poor work assignments and threats of physical harm. Any whistleblower who believes he/she is being retaliated against must contact Human Resources immediately.

71.     In addition, Section 5-22 of Defendant's Employee Handbook ("Involuntary Termination of Employment") provides that:

When practical, employees will be warned and counseled. However, failure to correct behavior or further violation of any policy may result in additional disciplinary action, up to and including termination. Depending upon the nature of the offense, the Law Firm reserves the right to terminate any employee without warning.

Warnings and counseling are to be documented on a Disciplinary/Counseling/Termination Report.

The Law Firm will generally terminate an employee after the employee's third offense.

72.     Here, Defendant did not comply with its own policies as Plaintiff was terminated for complaining about Defendant's violations of law.

73.     Further, Defendant did not follow its "three strike" policy as Plaintiff did not even commit one offense let alone three offenses.

74.     As there was no legitimate basis for paying Plaintiff less than similarly situated male attorneys, it is clear that Plaintiff was intentionally discriminated against because of her sex (female).

75.     Similarly, as there was no legitimate business reason for terminating Plaintiff, it is clear that Plaintiff's termination was in retaliation for her complaints of Defendant's violations of law.

76.     Any explanation proffered by Defendant for terminating Plaintiff's employment, or for paying Plaintiff less than similarly situated male attorneys, is pretextual.

77.     Defendant's systemic practice of paying male attorneys more than similarly situated female attorneys is unlawful and violates the FCRA.

78.     Upon information and belief, there is a class of female attorneys that were paid less than similarly situated, or even less qualified, male attorneys.

**Defendant Breached an Agreement with Plaintiff to Pay Referral/Recruitment Fees**

79.     During her employment with Defendant, on or about March 9, 2022, Plaintiff entered into an agreement with Defendant called "Recruit Proposal" whereby Defendant agreed to pay Plaintiff a specified percentage of the first-year annual salary for an employee she referred/recruited to Defendant and who remained employed by Defendant for at least ninety (90) days. *See* **Exhibit C.**

80.     The agreement was signed by Plaintiff and Defendant.

81.     Pursuant to their agreement, Plaintiff was first entitled to, and received, a percentage of the annual salary of Alexis Lunetta, who Plaintiff referred/recruited to Defendant,

after she remained employed by Defendant for at least ninety (90) days.

82.     Plaintiff and Defendant also agreed that Plaintiff would be entitled to five percent (5%) of the first-year annual salary for anyone else that Plaintiff referred/recruited to the law firm and who remained employed for at least ninety (90) days. Plaintiff was entitled to 2.5% upon the new employee's hire and the remaining 2.5% was to be paid once the employee hit the 90-day mark.

83.     Plaintiff then referred/recruited to Defendant, Bella Simental (who, upon information and belief, was receiving an annual salary of $60,000) and Sheyanne Sullivan (who, upon information and belief, was receiving an annual salary of $58,000).

84.     Upon information and belief, both Ms. Simental and Ms. Sullivan were/have been employed by Defendant for over ninety (90) days.

85.     After Plaintiff was terminated, Defendant's Controller, Mr. Mesa, acknowledged that Plaintiff was entitled to the referral/recruitment fees.

86.     Therefore, Plaintiff is owed approximately $5,900 in referral/recruitment fees.

87.     To date, Defendant has failed to pay the referral/recruitment fees owed to Plaintiff.

**Plaintiff's Damages and Retention of Counsel**

88.     Because of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages, as set forth in more detail below.

89.     Plaintiff hired the undersigned law firm to represent her in this case and has agreed to pay the firm a reasonable fee for its services.

**COUNT I**
**SEX DISCRIMINATION AGAINST DEFENDANT**
**IN VIOLATION OF THE FCRA**

90.     Plaintiff re-adopts every factual allegation as stated in paragraphs 1-78 and 88-89

above as though fully recited herein.

91.     Discrimination in the workplace on the basis of sex is prohibited under the FCRA.

92.     Plaintiff's sex is female and as such, is within a protected group of individuals under the FCRA.

93.     Plaintiff was qualified to work as an Associate attorney.

94.     Plaintiff's job functions as an Associate attorney were of equal skill, effort, and responsibility, if not greater, than that of Defendant's male Associate attorneys, and the work was performed under the same or similar working conditions.

95.     Plaintiff was intentionally discriminated against by Defendant because of her sex (female).

96.     During the relevant period, Plaintiff and other female attorneys were denied critical information about, and/or opportunities concerning, side projects that male attorneys received.

97.     Further, Plaintiff was paid less than similarly situated male attorneys, which is a form of sex discrimination that is prohibited by the FCRA.

98.     Plaintiff was qualified for and entitled to, at a minimum, wages equal to her male counterparts performing substantially the same, if not less, work than Plaintiff performed.

99.     Plaintiff suffered adverse employment actions because of her sex.

100.    Defendant's conduct was willful and in disregard of Plaintiff's protected rights.

101.    As a result of Defendant's actions as alleged herein, Plaintiff was deprived of rights, was exposed to ridicule and embarrassment, and suffered extreme emotional distress and damage.

102.    Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory actions.

**WHEREFORE**, Plaintiff respectfully requests that the Court:

A.      Adjudge and decree that Defendant violated the FCRA, and did so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

B.      Award Plaintiff back pay, including the discrepancy in pay between what Plaintiff was receiving and what similarly situated male attorneys were/are receiving;

C.      Require Defendant to reinstate Plaintiff to the same position at the same rate of pay and with the same benefits that Plaintiff would have had had Plaintiff not been discriminated against by Defendant, or in lieu of reinstatement, award front pay;

D.      Award Plaintiff compensatory damages, including damages for mental anguish, loss of dignity, and any other intangible injuries;

E.      Award Plaintiff punitive damages;

F.      Award Plaintiff her attorneys' fees and costs;

G.      Award Plaintiff all recoverable interest; and

H.      Award any other relief that this Court deems just and proper.

## **COUNT II**
## **RETALIATION AGAINST DEFENDANT**
## **IN VIOLATION OF THE FCRA**

103.    Plaintiff re-adopts every factual allegation as stated in paragraphs 11-78 and 88-89 above as though fully recited herein.

104.    Defendant intentionally retaliated against Plaintiff for exercising rights protected under the FCRA, by, for example, terminating her employment after she complained about pay inequality/discrimination.

105.    There is a temporal proximity between Plaintiff's protected activity and her termination.

106.    Defendant's conduct was willful and in disregard of Plaintiff's protected rights.

107.     As a result of Defendant's actions as alleged herein, Plaintiff was deprived of rights, was exposed to ridicule and embarrassment, and suffered extreme emotional distress and damage.

108.     The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and Defendant's failure to take prompt remedial action to prevent retaliation against the Plaintiff, in violation of its policies, deprived Plaintiff of statutory rights under the law.

109.     The actions of Defendant and its agents were willful, wanton, and intentional, and with malice or reckless indifference to Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of economic, compensatory, and punitive damages.

110.     Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's retaliatory actions.

**WHEREFORE**, Plaintiff respectfully requests that the Court:

A.     Adjudge and decree that Defendant violated the FCRA, and did so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

B.     Award Plaintiff back pay at the rate of pay similarly situated male attorneys were/are receiving;

C.     Require Defendant to reinstate Plaintiff to the same position at the same rate of pay and with the same benefits that Plaintiff would have had had Plaintiff not been retaliated against by Defendant, or in lieu of reinstatement, award front pay;

D.     Award Plaintiff compensatory damages, including damages for mental anguish, loss of dignity, and any other intangible injuries;

E.     Award Plaintiff punitive damages;

F.     Award Plaintiff her attorneys' fees and costs;

G.      Award Plaintiff all recoverable interest; and

H.      Award any other relief that this Court deems just and proper.

### COUNT III
### SEX DISCRIMINATION AGAINST DEFENDANT
### IN VIOLATION OF TITLE VII

111.    Plaintiff re-adopts every factual allegation as stated in paragraphs 1-78 and 88-89 above as though fully recited herein.

112.    Discrimination in the workplace on the basis of sex is prohibited under Title VII.

113.    Plaintiff's sex is female and as such, is within a protected group of individuals under Title VII.

114.    Plaintiff was qualified to work as an Associate attorney.

115.    Plaintiff's job functions as an Associate attorney were of equal skill, effort, and responsibility, if not greater, than that of Defendant's male Associate attorneys, and the work was performed under the same or similar working conditions.

116.    Plaintiff was intentionally discriminated against by Defendant because of her sex (female).

117.    During the relevant period, Plaintiff and other female attorneys were denied, among other things, critical information about, and/or opportunities concerning, side projects that male attorneys received.

118.    Further, Plaintiff was paid less than similarly situated male attorneys, which is a form of sex discrimination that is prohibited by Title VII.

119.    Plaintiff was qualified for and entitled to, at a minimum, wages equal to her male counterparts performing substantially the same, if not less, work than Plaintiff performed.

120.    Plaintiff suffered adverse employment actions because of her sex.

121.     Defendant's conduct was willful and in disregard of Plaintiff's protected rights.

122.     As a result of Defendant's actions as alleged herein, Plaintiff was deprived of rights, was exposed to ridicule and embarrassment, and suffered extreme emotional distress and damage.

123.     Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory actions.

**WHEREFORE**, Plaintiff respectfully requests that the Court:

A.      Adjudge and decree that Defendant violated Title VII, and did so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

B.      Award Plaintiff back pay, including the discrepancy in pay between what Plaintiff was receiving and what similarly situated male attorneys were/are receiving;

C.      Require Defendant to reinstate Plaintiff to the same position at the same rate of pay and with the same benefits that Plaintiff would have had had Plaintiff not been discriminated against by Defendant, or in lieu of reinstatement, award front pay;

D.      Award Plaintiff compensatory damages, including damages for mental anguish, loss of dignity, and any other intangible injuries;

E.      Award Plaintiff punitive damages;

F.      Award Plaintiff her attorneys' fees and costs;

G.      Award Plaintiff all recoverable interest; and

H.      Award any other relief that this Court deems just and proper.

## COUNT IV
## RETALIATION AGAINST DEFENDANT
## IN VIOLATION OF TITLE VII

124.     Plaintiff re-adopts every factual allegation as stated in paragraphs 11-78 and 88-89 above as though fully recited herein.

125.    Defendant intentionally retaliated against Plaintiff for exercising rights protected under Title VII by, for example, terminating her employment after she complained about pay inequality/discrimination.

126.    There is a temporal proximity between Plaintiff's protected activity and her termination.

127.    Defendant's conduct was willful and in disregard of Plaintiff's protected rights.

128.    As a result of Defendant's actions as alleged herein, Plaintiff was deprived of rights, was exposed to ridicule and embarrassment, and suffered extreme emotional distress and damage.

129.    The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and Defendant's failure to take prompt remedial action to prevent retaliation against the Plaintiff, in violation of its policies, deprived Plaintiff of statutory rights under the law.

130.    The actions of Defendant and its agents were willful, wanton, and intentional, and with malice or reckless indifference to Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of economic, compensatory, and punitive damages.

131.    Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a direct result of Defendant's retaliatory actions.

**WHEREFORE**, Plaintiff respectfully requests that the Court:

A.    Adjudge and decree that Defendant violated Title VII, and did so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

B.    Award Plaintiff back pay at the rate of pay similarly situated male attorneys were/are receiving;

C.　　Require Defendant to reinstate Plaintiff to the same position at the same rate of pay and with the same benefits that Plaintiff would have had had Plaintiff not been retaliated against by Defendant, or in lieu of reinstatement, award front pay;

D.　　Award Plaintiff compensatory damages, including damages for mental anguish, loss of dignity, and any other intangible injuries;

E.　　Award Plaintiff punitive damages;

F.　　Award Plaintiff her attorneys' fees and costs;

G.　　Award Plaintiff all recoverable interest; and

H.　　Award any other relief that this Court deems just and proper.

## <u>COUNT V</u>
## BREACH OF CONTRACT AGAINST DEFENDANT

132.　　Plaintiff re-adopts every factual allegation as stated in paragraphs 1-17 and 79-89 above as though fully recited herein.

133.　　Plaintiff entered into an agreement with Defendant whereby Plaintiff was entitled to five percent (5%) of the first-year annual salary for anyone that Plaintiff referred/recruited to the law firm and who remained employed for at least ninety (90) days.

134.　　Sufficient consideration was provided for the agreement.

135.　　Both Plaintiff and Defendant signed the agreement.

136.　　Plaintiff referred/recruited to Defendant Bella Simental (who, upon information and belief, was receiving an annual salary of $60,000) and Sheyanne Sullivan (who, upon information and belief, was receiving an annual salary of $58,000).

137.　　Defendant materially breached this valid agreement with Plaintiff by failing to pay approximately $5,900 in referral/recruitment fees owed to Plaintiff for her referral/recruitment efforts.

138.    Because of Defendant's breach of the agreement, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in its favor against Defendant and award damages for breach of contract and also award pre and post-judgment interest pursuant to the terms of the agreement between Plaintiff and Defendant, and grant such other relief as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a jury trial of all issues so triable.

Dated: June 2, 2023

Respectfully submitted,

**BT LAW GROUP, PLLC**
3050 Biscayne Blvd., Suite 205
Miami, Florida 33137
Tel: (305) 507-8506

By:  <u>s/ Jason D. Berkowitz</u>
**ANISLEY TARRAGONA, ESQ.**
Florida Bar No. 51626
anisley@btattorneys.com
**JASON D. BERKOWITZ, ESQ.**
Florida Bar No. 0055414
jason@btattorneys.com

Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been served on June 2, 2023 on counsel for Defendant, Paul A. Hankin, Esq. and Jeremy D. Friedman, Esq. at *phankin@downslawgroup.com* and *jfriedman@downslawgroup.com*.

<u>s/ Anisley Tarragona</u>
Anisley Tarragona, Esq.

# EXHIBIT A

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To | Agency(ies) Charge No(s) |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form | [X] FEPA [X] EEOC | 510-2023-06462 |

**U.S. Equal Employment Opportunity Commission**
**Florida Commission on Human Relations**

_____ State or local Agency, if any _____

| Name (indicate Mr. Ms. Mrs.) | Home Phone (incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Sabrina Boukheir | | REDACTED |

| Street Address | City, State and ZIP Code |
|---|---|
| REDACTED | |

Named is the Employer, Labor Organization, Employment Agency Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| The Downs Law Group, P.A. | 15+ | 305 444 8226 |

| Street Address | City, State and ZIP Code |
|---|---|
| 3250 Mary St. #307 | Miami, FL 33133 |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| [ ] RACE [ ] COLOR [X] SEX [ ] RELIGION [ ] NATIONAL ORIGIN [X] RETALIATION [ ] AGE [ ] DISABILITY [ ] GENETIC INFORMATION [ ] OTHER (Specify) | Earliest: Jan. 2022   Latest: May 2022 [ ] CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was discriminated against by my former employer, The Downs Law Group, P.A. ("DLG"), based on my gender. I was also retaliated against by DLG. I am an attorney and began my employment at DLG, a law firm, on January 31, 2022 and remained employed until I was unlawfully terminated on or about May 9, 2022.

During the hiring process, I attempted to negotiate for a starting salary of $115,000 but was ultimately offered $95,000 with a promise by DLG's Human Resources Director, Samandha Canepa, that DLG would reassess my compensation at my 90-day evaluation. At the time of hire, I was assigned several cases (both active and pre-suit). DLG also required me and other associate attorneys to complete "side projects," such as writing memos for DLG's funders about ongoing cases. Even though I was a junior attorney, I exceeded expectations. I was diligent with my cases, required little to no supervision, had a great relationship with clients, and was well ahead of deadlines in my cases.

I worked without issue until Wednesday, May 4, 2022, which was the beginning of the end. That day, during an attorney meeting, it became clear to me that a similarly situated male attorney, Jason Clark, had been privy to information concerning side projects that I had not been. This information allowed the male attorneys to volunteer for side projects while the female attorneys were left out and as such, not able to volunteer, which had an impact on compensation. Ms Canepa claimed that she would investigate the issue, but never followed-up with me. I later learned that another female attorney had previously complained to Ms. Canepa about this issue, but nothing had been done to rectify the situation.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct | SIGNATURE OF COMPLAINANT |
| 5/18/2022 _Date_   _Charging Party Signature_ | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

Annasofia A. Roig
Comm: GG 221370
Expires: May 23, 2022
Notary Public - State of Florida

EEOC - MDO
Received 05-31-2022

**Sent by FAX**

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| [X] FEPA | |
| [X] EEOC | |

### U.S. Equal Employment Opportunity Commission
### Florida Commission on Human Relations

THE PARTICULARS ARE (if additional paper is needed, attach extra sheet):

On Thursday, May 5, 2022, I attended my 90-day performance evaluation meeting with my supervisor, David Durkee, Esq. Ms. Canepa was also in attendance. During the evaluation, Mr. Durkee praised my performance and stated that it was "very hard to find critiques" of me. Mr. Durkee explained that I should "keep doing exactly what [I] was doing" and even commented that DLG was "happy to have" me. The only constructive comment Mr. Durkee made was that I should "grab the bull by the horns more." I informed Mr. Durkee that I wanted more hearing and deposition experience and Mr. Durkee stated that he would provide me with opportunities. In fact, the day after the performance evaluation meeting, Mr. Durkee emailed me and asked if I was available to cover a deposition for him on May 13, 2022.

After the evaluation meeting, I went to Ms. Canepa's office to discuss the salary increase I was expecting based on the representations made by DLG at the time of hire. During the meeting with Ms. Canepa, I presented a list of the side projects I had completed and requested that I receive a compensation increase to $119,900, as this was the market rate according to my research and because Jason Clark (a junior attorney who graduated and was barred at the same time as I) was receiving a salary of $110,000. I had learned of Mr. Clark's salary from two individuals at DLG. Ms. Canepa initially nit-picked my list of side projects and commented, without any basis (and even though she has no litigation experience), that I was "not doing enough to take [my]self to the next level."

During this meeting with Ms. Canepa, I complained that Mr. Clark was earning $15,000 more than I was even though we were similarly situated. Ms. Canepa indicated that she needed to review everything and would continue the discussion the following week as she was out of the office the next day (Friday) for vacation.

Later that same day, I went to the office of Craig Downs, founder and principal attorney at DLG, to discuss my complaints that Mr. Clark was being paid more than I and that male attorneys were being treated more favorably. Mr. Downs responded that he would speak with Ms. Canepa.

On Friday, May 6, 2022, I sent an email to Mr. Downs and to Ms. Canepa, reiterating my complaints about, among other things, the fact that male attorneys were being made aware of side projects that female attorneys were not, and that a similarly situated male employee (Mr. Clark) was earning more money than I was. Specifically, I wrote, "I do not appreciate the fact that I am earning significantly less money than my male coworker, who has objectively less litigation experience than I do, when we are the same level of attorney. I truly hope this will be recognized and corrected."

During the day on May 6, I spoke with Laura Pereira, Esq. and learned that she, a sixth-year attorney, was earning the same compensation as Mr. Clark (a first-year attorney). Ms. Pereira expressed her frustration and claimed that she would speak with Mr. Downs about this pay inequality.

On Monday, May 9, 2022, I learned that there was a closed-door meeting that was attended by Mr. Downs, Mr. Durkee, Ms. Canepa, and Dylan Boigris, Esq. I was not invited to the meeting although, upon information and belief, my complaints were discussed.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – When necessary for State and Local Agency Requirements

I declare under penalty of perjury that the above is true and correct

Date: 5/18/2022
Charging Party Signature

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)

Annasofia A. Roig
Comm. GG221370
Expires: May 23, 2022
Notary Public - State of Florida

EEOC - MDO
Received 05-31-2022

CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| [X] FEPA | |
| [X] EEOC | |

**U.S. Equal Employment Opportunity Commission
Florida Commission on Human Relations**

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet)

Later that day, I walked to Ms. Canepa's office for our scheduled meeting to address the complaints I raised on Thursday, May 5. When I arrived, Ms. Canepa excused herself for a few minutes and then returned. Moments later, DLG's Controller, Alfredo Mesa, joined the meeting. When I questioned why Mr. Mesa was present, Ms. Canepa responded, "because of your review." I was confused and said, "but he's not litigation," to which Ms. Canepa responded, "well, he's management."

During the meeting, Ms. Canepa criticized me for "creating problems" by allegedly speaking with Mr. Borgris, Mr. Clark, and Ms. Pereira about the pay discrepancies between male and female attorneys. I explained that I had not spoken with Mr. Clark about this issue and had only spoken with Mr. Borgris about work related matters. I acknowledged that I had spoken with Ms. Pereira about female attorneys being under-compensated. Even though my discussions with Ms. Pereira were "concerted activity" for the purpose of "mutual aid or protection," Ms. Canepa nonetheless became irate.

Ms. Canepa and I then discussed the pay disparities at the firm between male and female attorneys. After some back-and-forth, Ms. Canepa abruptly said, "I think it is best that we part ways, your expectations and our expectations do not match and I think you would do better with a firm that uses a pay scale." I was completely shocked. At that point Mr. Mesa chimed in and said, "Sam, is there any way this can be mended?" Ms. Canepa responded that the decision was made. I reminded Ms. Canepa that it is unlawful to terminate an employee for complaining about unequal pay and for discussing compensation with another female attorney. Not knowing how to respond, Ms. Canepa claimed that she was firing me for "performance." I then requested a copy of my recent performance review and Ms. Canepa refused, claiming, "I am not required to show you anything." Mr. Mesa asked again if there was any way to defuse the situation, and Ms. Canepa said no.

Ms. Canepa's claim that I was terminated for alleged performance reasons is illogical and belied by the facts. For example:

- Two business days earlier, I had received a stellar performance evaluation from Mr. Durkee (which Ms. Canepa observed);

- The day after my review, Mr. Durkee requested that I handle a deposition in one of his cases on May 13, 2022.

- I had not received any written counseling or warning for poor performance;

- Attorneys at DLG committed serious infractions (e.g., missing court deadlines) but were not terminated; and

- DLG never provided me with a termination letter or ever articulated in writing the basis for my termination

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
| I declare under penalty of perjury that the above is true and correct | SIGNATURE OF COMPLAINANT |
| 5/18/2022 _____ *Sabrina Boukhris* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date          Charging Party Signature | Annasofia A. Roig
Comm GG 221370
Expires May 23, 2022
Notary Public - State of Florida |

EEOC - MDO
Received 05-31-2022

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To | Agency(ies) Charge No(s) |
|---|---|
| [X] FEPA | |
| [X] EEOC | |

### U.S. Equal Employment Opportunity Commission
### Florida Commission on Human Relations

THE PARTICULARS ARE (if additional paper is needed, attach extra sheet)

In addition, Section 5-22 of DLG's Employee Handbook ("Involuntary Termination of Employment") provides that

When practical, employees will be warned and counseled. However, failure to correct behavior or further violation of any policy may result in additional disciplinary action, up to and including termination. Depending upon the nature of the offense, the Law Firm reserves the right to terminate any employee without warning.

Warnings and counseling are to be documented on a Disciplinary/Counseling/Termination Report.

The Law Firm will generally terminate an employee after the employee's third offense

Here, DLG did not comply with its own "three strike" policy as I did not commit one offense let alone three offenses. As there was no non-discriminatory or non-retaliatory business reason for terminating my employment, coupled with the temporal proximity between my protected activity and my termination, it is clear that I was terminated in retaliation for complaining about being paid less than a male attorney, and because I attempted to discuss my compensation with other female attorneys.

I have been discriminated and retaliated against in violation of Title VII of the Civil Rights Act of 1964, the Florida Civil Rights Act, and local laws.

---

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct

Date __5/18/2022__     Charging Party Signature _Sabrina Brickhein_

NOTARY – When necessary for State and Local Agency Requirements

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

Annasofia A. Roig
Comm. GG 221370
Expires May 23, 2022
Notary Public - State of Florida

EEOC - MDO
Received 05-31-2022

# EXHIBIT B



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Miami District Office**
100 SE 2nd St, Suite 1500
Miami, FL 33131
(800) 669-4000
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 05/24/2023

**To:** Sabrina Boukheir

## REDACTED

Charge No: 510-2023-06462

EEOC Representative and email:     NILIA MARTI
Investigator
Nilia.Marti@eeoc.gov

---

### DISMISSAL OF CHARGE

The EEOC is closing this charge because you have already filed a lawsuit in a state court on this matter.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 510-2023-06462.

On behalf of the Commission,

Digitally Signed By:Evangeline Hawthorne
05/24/2023

Evangeline Hawthorne
Director

**Cc:**
David Durkee
3250 MARY ST STE 307
Miami, FL 33133

Jason D Berkowitz
BT Law Group, PLLC
3050 Biscayne Blvd. Suite 205
Miami, FL 33137

Anisley Tarragona
anisley@btattorneys.com

Please retain this notice for your records.

# EXHIBIT C

**Recruit Proposal**

Typically, legal recruiters earn approximately 15-20% of a recruit's first year salary. While I recognize I am not a legal recruiter, I am putting in the same effort to not only find myself a solid assistant, but to find the firm some legal assistants since we need support staff. In my free time and entirely separate from my attorney role, I go on LinkedIn, make connections with people who are listed as paralegals or legal assistants, and I speak to them and see what they're interested in and if they'd be interested in a new roll.

Before I joined DLG, I brought Alexis to DLG under the promise of her being my assistant. Due to several circumstances, I recognize that will not be the case, but I still brought DLG, and specifically David Durkee, a solid legal assistant. Additionally, I have been keeping an eye out for potential law clerks as I think about the firm's future. In my recent search I have found what looks to me to be two solid law clerks and a solid legal assistant. I am happy to continue searching as I believe my experience at different firms and my law school's locality makes me a valuable and trusted recruiter on both sides of the relationship.

Recruiting employees, especially in today's market and economy is not necessarily easy, especially if a firm has a high turn over rate. Regarding Alexis, I am requesting a fee equal to **3%** of her first-year salary to be paid upon her **90-day mark**. This percentage is significantly lower than any recruiter, and it is cognizant of my time, effort, and value added to this firm. Truthfully, most firms create this incentive for their employees automatically. I did not realize I would have to ask, but that is okay with me. Regarding any future employees (except for part time workers) that I may bring, I am requesting a fee equal to **5%** the employee's first year salary payable on the employee's 90-day mark. Additionally, I am requesting that if I have put in the effort to find the recruit, I would like to be able to work with the recruit once they have been trained. *Particularly, the most recent legal assistant is an assistant I found for myself, and I would like that to not only be memorialized but respected.* I recognize that other attorneys and departments may need an assistant or additional assistants, but for this recruit, I would like to be able to be included in the interview and hire her to be my assistant. I am confident that I can recruit other assistants for other departments and attorneys if they are not actively looking themselves.

I hope through my effort you can see that I am not only dedicated to this firm, but I also want to see it grow, and I want to see less people leaving so often. I believe in value, hard work, and loyalty, and I believe firms should always recognize an employee's value even if out of their typical scope of employment. I look forward to hearing back regarding the recruitment fee, and I hope I can be an asset to DLG in this manner.

_____                            _____
Samandha Canepa    (3/9/2022)                              Sabrina Boukheir   (3/9/2022)

DLG00004



# MIAMI-DADE COUNTY CLERK OF THE COURTS
## LUIS G. MONTALDO, CLERK AD INTERIM

Contact Us    My Account    

---

# CIVIL, FAMILY AND PROBATE COURTS ONLINE SYSTEM

◀◀ BACK

### SABRINA BOUKHEIR VS DOWNS LAW GROUP, P.A. (THE)

| | | | |
|---|---|---|---|
| **Local Case Number:** | 2022-022571-CA-01 | **Filing Date:** | 11/28/2022 |
| **State Case Number:** | 132022CA022571000001 | **Judicial Section:** | CA31 - Downtown Miami |
| **Consolidated Case No.:** | N/A | **Court Location:** | 73 West Flagler Street, Miami FL 33130 |
| **Case Status:** | OPEN | **Case Type:** | Discrimination - Employment or Other |

**≡ Related Cases**                                    Total Of Related Cases: 0  **+**

**👥 Parties**                                          Total Of Parties: 2  **+**

**🔧 Hearing Details**                                  Total Of Hearings: 1  **+**

**🔊 Dockets**                                          Total Of Dockets: 23  **—**

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| | | 07/27/2023 | | Special Sets | Hearing | **PLAINTIFF'S MOTION TO COMPEL BETTER RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT** |
| 📄 | 22 | 06/02/2023 | | Amended Complaint | Event | |
| 📄 | 21 | 05/31/2023 | | Mot to File Amended Complaint | Event | |
| 📄 | 20 | 05/16/2023 | | Request for Production | Event | |
| 📄 | 19 | 05/16/2023 | | Request for Production | Event | |
| 📄 | 18 | 05/08/2023 | | Order: | Event | **ON SCHEDULING** |
| 📄 | 17 | 05/08/2023 | | Notice of Hrg Special Appt | Event | **07-27-2023 AT 11:00 AM** |
| 📄 | 16 | 04/26/2023 | | Motion to Compel | Event | **BETTER RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT** |
| 📄 | 15 | 04/14/2023 | | Privilege Log | Event | |

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| 📄 | 14 | 03/27/2023 | | Notice of Answer to Interrogatories | Event | |
| 📄 | 13 | 03/27/2023 | | Response to Request for Production | Event | |
| 📄 | 12 | 02/23/2023 | | Motion for Extension of Time | Event | |
| 📄 | 11 | 01/25/2023 | | Notice of Interrogatory | Event | |
| 📄 | 10 | 01/25/2023 | | Answer and Demand for Jury Trial | Event | |
| 📄 | 9 | 12/21/2022 | | Notice of Appearance | Event | |
| 📄 | 8 | 12/06/2022 | | Service Returned | Event | |
| | | 12/01/2022 | | 20 Day Summons Issued | Service | |
| 📄 | 7 | 12/01/2022 | | ESummons 20 Day Issued | Event | **RE: INDEX # 3.**<br>Parties: Downs Law Group P.A. (The) |
| | 6 | 11/30/2022 | | Receipt: | Event | **RECEIPT#:3130298 AMT PAID:$10.00 NAME:BERKOWITZ, JASON DANIEL 2 S BISCAYNE BLVD STE 3500 MIAMI FL 33131-1802 COMMENT: ALLOCATION CODE QUANTITY UNIT AMOUNT 3139-SUMMONS ISSUE FEE 1 $10.00 $10.00 TENDER TYPE:EFILINGS TENDER AMT:$10.00 RECEIPT DATE:11/30/2022 REGISTER#:313 CASHIER:EFILINGUSER** |
| | 5 | 11/30/2022 | | Receipt: | Event | **RECEIPT#:3130201 AMT PAID:$401.00 NAME:BERKOWITZ, JASON DANIEL 2 S BISCAYNE BLVD STE 3500 MIAMI FL 33131-1802 COMMENT: ALLOCATION CODE QUANTITY UNIT AMOUNT 3100-CIRCUIT FILING FEE 1 $401.00 $401.00 TENDER TYPE:EFILINGS TENDER AMT:$401.00 RECEIPT DATE:11/30/2022 REGISTER#:313 CASHIER:EFILINGUSER** |
| 📄 | 3 | 11/29/2022 | | (M) 20 Day (C) Summons (Sub) Received | Event | |
| 📄 | 2 | 11/28/2022 | | Complaint | Event | |
| 📄 | 1 | 11/28/2022 | | Civil Cover Sheet - Claim Amount | Event | |

◀◀ BACK

**Please be advised:**

The Clerk's Office makes every effort to ensure the accuracy of the following information; however it makes no warranties or representations whatsoever regarding the completeness, accuracy, or timeliness of such information and data. Information on this website has been posted with the intent that it be readily available for personal and public non-commercial (educational) use and to provide the public with direct online access to information in the Miami-Dade Clerk's Office information systems. Other than making limited copies of this website's content, you may not reproduce, retransmit, redistribute, upload or post any part of this website, including the contents thereof, in any form or by any means, or store it in any information storage and retrieval system, without prior written permission from the Miami-Dade Clerk's Office.

If you are interested in obtaining permission to reproduce, retransmit or store any part of this website beyond that which you may use for personal use, as defined above, visit our Web API Services. You can review the complete Miami-Dade County Disclaimer.

General

Online Case Home

Civil / Family Courts Information

Login

# Help and Support

Clerk's Home

Privacy Statement

ADA Notice

Disclaimer

Contact Us

About Us



**Luis G. Montaldo**
**Clerk Ad Interim**

Miami-Dade County
Clerk of the Courts

73 W. Flagler Street
Miami, Florida 33130

305-275-1155

©2023 Clerk of the Courts. All rights reserved.



IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

Case No. 2022-022571-CA-01

SABRINA BOUKHEIR,

       Plaintiff,

vs.

THE DOWNS LAW GROUP, P.A.,

       Defendant.

_____/

## CIVIL ACTION SUMMONS

THE STATE OF FLORIDA:
To Each Sheriff of the State:

       YOU ARE COMMANDED to serve this Summons and a copy of the complaint or petition in this action on Defendant:

The Downs Law Group, P.A.
c/o Craig T. Downs – Registered Agent
3250 Mary Street, Suite 307
Coconut Grove, Florida 33133

## IMPORTANT

Each defendant is required to serve written defenses to the complaint or petition on **BT Law Group, PLLC, plaintiff's attorney, whose address is 3050 Biscayne Boulevard, Suite 205, Miami, Florida 33137**, within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

       DATED on: _____

               CLERK OF THE CIRCUIT COURT
       BY: _____
            As Deputy Clerk

## **IMPORTANT**

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

## **IMPORTANTE**

Usted ha sido demandado legalmente. Tiene 20 días, contados a partir del recibo de esta notificación, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefónica no lo protegerá. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el número del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podría ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guía telefónica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, deberá usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

## **IMPORTANT**

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecu-tifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat.

Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones). Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egale-ment, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

Plaintiff's Attorneys

**BT LAW GROUP, PLLC**
3050 Biscayne Blvd., Suite 205
Miami, Florida 33137
Tel: (305) 507-8506
**ANISLEY TARRAGONA, ESQ.**
Florida Bar No. 51626
anisley@btattorneys.com
**JASON D. BERKOWITZ, ESQ.**
Florida Bar No. 0055414
jason@btattorneys.com

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

Case No. 2022-022571-CA-01

SABRINA BOUKHEIR,

     Plaintiff,

vs.

THE DOWNS LAW GROUP, P.A.,

     Defendant.

_____/

## CIVIL ACTION SUMMONS

THE STATE OF FLORIDA:
To Each Sheriff of the State:

     YOU ARE COMMANDED to serve this Summons and a copy of the complaint or petition in this action on Defendant:

The Downs Law Group, P.A.
c/o Craig T. Downs – Registered Agent
3250 Mary Street, Suite 307
Coconut Grove, Florida 33133

## IMPORTANT

Each defendant is required to serve written defenses to the complaint or petition on **BT Law Group, PLLC, plaintiff's attorney, whose address is 3050 Biscayne Boulevard, Suite 205, Miami, Florida 33137**, within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this court either before service on plaintiff's attorney or immediately thereafter.  If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

DATED on:    12/1/2022



CLERK OF THE CIRCUIT COURT

BY: _____
    As Deputy Clerk

1

## **IMPORTANT**

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

## **IMPORTANTE**

Usted ha sido demandado legalmente. Tiene 20 días, contados a partir del recibo de esta notificación, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefónica no lo protegerá. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el número del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podría ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guía telefónica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, deberá usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

## **IMPORTANT**

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecu-tifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat.

Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones). Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egale-ment, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

Plaintiff's Attorneys

**BT LAW GROUP, PLLC**
3050 Biscayne Blvd., Suite 205
Miami, Florida 33137
Tel: (305) 507-8506
**ANISLEY TARRAGONA, ESQ.**
Florida Bar No. 51626
anisley@btattorneys.com
**JASON D. BERKOWITZ, ESQ.**
Florida Bar No. 0055414
jason@btattorneys.com

3

## RETURN OF SERVICE

State of Florida                         County of Miami-Dade                         Circuit Court

Case Number: 2022-022571-CA-01

Plaintiff:
**SABRINA BOUKHEIR,**

vs.

Defendant:
**THE DOWNS LAW GROUP, P.A.,**

For:
Jason D. Berkowitz
Bt Law Group, Pllc
3050 Bicsayne Blvd
Ste 205
Miami, FL 33137

Received by DLE Process Servers, Inc on the 2nd day of December, 2022 at 4:23 pm to be served on **The Downs Law Group, P.A. c/o: Craig T. Downs- Registered Agent, 3250 Mary Street, Suite 307, Coconut Grove, FL 33133**.

I, Rafael Perez, do hereby affirm that on the **5th day of December, 2022** at **9:28 am, I:**

served a **CORPORATION** by delivering a true copy of the **Civil Action Summons, Complaint and Exhibit A.** with the date and hour of service endorsed thereon by me, to: **Laylany Obregon** as **Employee Authorized** for **The Downs Law Group, P.A.**, at the address of: **3250 Mary Street, Suite 307, Coconut Grove, FL 33133**, and informed said person of the contents therein, in compliance with state statutes.

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served.

Under penalties of perjury, I declare that I have read the foregoing Verified Return of Service and that the facts stated are true. F.S. 92.525.  NOTARY NOT REQUIRED PURSUANT TO F.S. 92.525

_____
**Rafael Perez**
Certified P.S.10017

**DLE Process Servers, Inc**
**936 Sw 1st Avenue**
**#261**
**Miami, FL 33130**
**(786) 220-9705**

Our Job Serial Number: DLE-2022051133

Copyright © 1992-2022 Database Services, Inc. - Process Server's Toolbox V8.1u

Filing # 162005924 E-Filed 11/29/2022 01:35:06 PM

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

Case No. 2022-022571-CA-01

SABRINA BOUKHEIR.

     Plaintiff,

vs.

THE DOWNS LAW GROUP, P.A.,

     Defendant.

_____/

## CIVIL ACTION SUMMONS

THE STATE OF FLORIDA:
To Each Sheriff of the State:

     YOU ARE COMMANDED to serve this Summons and a copy of the complaint or petition in this action on Defendant:

The Downs Law Group, P.A.
c/o Craig T. Downs – Registered Agent
3250 Mary Street, Suite 307
Coconut Grove, Florida 33133

## IMPORTANT

Each defendant is required to serve written defenses to the complaint or petition on **BT Law Group, PLLC, plaintiff's attorney, whose address is 3050 Biscayne Boulevard, Suite 205, Miami, Florida 33137**, within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

DATED on:   12/1/2022

CLERK OF THE CIRCUIT COURT

BY:                   324337

     Deputy Clerk

1

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 días, contados a partir del recibo de esta notificación, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefónica no lo protegerá. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el número del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podría ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guía telefónica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, deberá usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

## IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecu-tifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat.

2

Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones). Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egale-ment, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

Plaintiff's Attorneys

**BT LAW GROUP, PLLC**
3050 Biscayne Blvd., Suite 205
Miami, Florida 33137
Tel: (305) 507-8506
**ANISLEY TARRAGONA, ESQ.**
Florida Bar No. 51626
anisley@btattorneys.com
**JASON D. BERKOWITZ, ESQ.**
Florida Bar No. 0055414
jason@btattorneys.com

3

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

SABRINA BOUKHEIR,

             Plaintiff,               CASE NO.: 2022-022571-CA-01

vs.

THE DOWNS LAW GROUP, P.A.,

             Defendant.

_____/

### NOTICE OF APPEARANCE AND EMAIL DESIGNATIONS ON BEHALF OF DEFENDANT, THE DOWNS LAW GROUP, P.A.

       Please take notice that Jeremy D. Freidman, Esq. and Paul A. Hankin, Esq., LL.M. appear now as counsel for Defendant, The Downs Law Group, P.A., in the above-captioned matter. Henceforth, all future communications, correspondences, orders, and/or any other documents related to this matter are to be sent to the undersigned, with the following email designations:

       Primary: jfriedman@downslawgroup.com
       Primary: phankin@downslawgroup.com
       Secondary: fzafe@downslawgroup.com

Dated: December 21, 2022          Respectfully submitted,

                        /s/ Paul A. Hankin
                        **The Downs Law Group, P.A.**
                        3250 Mary Street, Suite 307
                        Coconut Grove, FL 33133
                        Tel: (305) 444-8226
                        Facsimile: (305) 444-6773
                        Jeremy D. Friedman, Esq.
                        Florida Bar # 134643
                        jfriedman@downslawgroup.com
                        Paul A. Hankin, Esq., LL.M.
                        Florida Bar # 125402
                        phankin@downslawgroup.com
                        *Attorneys for Defendant*

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on the 21st day of December 2022, the foregoing was electronically filed with the Florida Courts E-Filing Portal, which will serve it via electronic mail to all counsel of record.

/s/ Paul A. Hankin
Paul A. Hankin, Esq., LL.M.

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY FLORIDA

SABRINA BOUKHEIR,

        Plaintiff,                    CASE NO.: 2022-022571-CA-01

vs.

THE DOWNS LAW GROUP, P.A.,

        Defendant.

_____/

## DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO THE COMPLAINT

**COMES NOW**, Defendant, The Downs Law Group, P.A., by and through its undersigned counsel, hereby files Defendant's Answer and Affirmative Defenses to the Complaint, and in support, states as follows:

1.      Admitted that Plaintiff, Sabrina Boukheir, was employed by Defendant and that Plaintiff is suing Defendant under the Florida Civil Rights Act of 1992, Fla. Stat. § 760.01 et seq. ("FCHR"), as well as for breach of contract, but otherwise denied.

2.      Admitted that this lawsuit contains claims for monetary damages in connection thereto, but otherwise denied.

3.      Admitted that this lawsuit contains claims under the FCHR, but otherwise denied.

4.      Admitted that this lawsuit contains a claim for breach of contract, that the agreement speaks for itself, but otherwise denied.

## PARTIES, JURISDICTION, AND VENUE

5.      Without knowledge; therefore, denied.

6.      Admitted for jurisdictional purposes and that Defendant employed Plaintiff.

7.      Admitted for jurisdictional purposes only.

8.      Admitted for jurisdictional purposes only.

9.      Admitted for jurisdictional purposes only.

10.     Admitted for jurisdictional purposes only.

11.     Admitted for jurisdictional purposes only.

### PLAINTIFF HAS EXHAUSED ADMINISTRATIVE REMEDIES

12.     Admitted.

13.     Without knowledge; therefore, denied.

14.     Without knowledge; therefore, denied.

15.     Without knowledge; therefore, denied.

### FACTUAL ALLEGATIONS

**Relevant Background Information**

16.     Admitted.

17.     Admitted that Defendant offered Plaintiff $95,000.00 as a starting salary, but otherwise denied.

18.     Admitted that Defendant assigned several matters to Plaintiff, but otherwise denied.

19.     Denied.

20.     Denied.

21.     Admitted that Plaintiff was neither disciplined nor written up, but otherwise denied.

22.     Denied.

23.     Denied.

24.     Denied.

**Plaintiff's First Complaint to Defendant**

25.     Admitted that Plaintiff contacted Defendant's Human Resources Director,

Samandha Canepa ("Ms. Canepa"), but otherwise denied.

26.    Denied.

27.    Admitted that Ms. Canepa investigated the alleged issued, but otherwise denied.

28.    Without knowledge; therefore, denied.

**Plaintiff was Praised by her Supervising Attorney for her Performance**[1]

29.    Admitted.

30.    Defendant's Evaluation Form of Plaintiff, attached hereto as **Exhibit A**, speaks for itself.

31.    Defendant's Evaluation Form of Plaintiff speaks for itself.

32.    Defendant's Evaluation Form of Plaintiff speaks for itself.

33.    Defendant's Evaluation Form of Plaintiff speaks for itself.  Plaintiff's Self-Performance Evaluation Form, attached hereto as **Exhibit B**, speaks for itself.

**Plaintiff's Second Complaint to Defendant**

34.    Admitted that Plaintiff met with Ms. Canepa after Plaintiff's ninety-day (90-day) review, but otherwise denied.

35.    Admitted that Plaintiff requested an increase in her salary, presented figures from Robert Half International Inc. ("Robert Half") as a means to justify her demand, but otherwise without knowledge; therefore, denied.

36.    Admitted that Plaintiff complained about another attorney's salary who is employed by Defendant, but otherwise denied.

37.    Admitted that Ms. Canepa indicated the need to review, but otherwise denied.

---

[1] In no way does Defendant have any opinion as to the headings and/or subheadings herein; rather, Defendant replicated same from Plaintiff's Complaint for ease of providing its Answer thereto.

**Plaintiff's Third Complaint to Defendant**

38.     Admitted that Plaintiff complained to Craig Downs ("Mr. Downs") that Plaintiff again presented the Robert Half figures as a means to justify her demand in salary, but otherwise denied.

39.     Admitted that Mr. Downs said he would speak with Ms. Canepa.

40.     Admitted that Plaintiff emailed Mr. Downs and Ms. Canepa to reiterate her complaints, but otherwise denied.

41.     The email sent on May 6, 2022, speaks for itself.

42.     Without knowledge; therefore, denied.

43.     Without knowledge; therefore, denied.

44.     Without knowledge; therefore, denied.

45.     Without knowledge; therefore, denied.

**Plaintiff's Termination**

46.     Admitted that Plaintiff met with Ms. Canepa, but otherwise denied.

47.     Admitted.

48.     Admitted.

49.     Admitted that Alfredo Mesa ("Mr. Mesa") was present, but otherwise denied.

50.     Admitted that Mr. Mesa is part of Defendant's management and not in litigation, but otherwise denied.

51.     Denied.

52.     Admitted that Plaintiff made such assertions, but otherwise without knowledge; therefore, denied.

53.     Admitted that Plaintiff made such assertions, but otherwise without knowledge;

therefore, denied.

54.     Denied.

55.     Admitted that Plaintiff's employment with Defendant was terminated during Plaintiff's and Ms. Canepa's meeting, but otherwise denied.

56.     Without knowledge; therefore, denied.

57.     Admitted that Mr. Mesa maintained decorum, but otherwise denied.

58.     Denied.

59.     Admitted that Plaintiff made such assertion, but otherwise denied.

60.     Admitted that Plaintiff was terminated based on performance, but otherwise denied.

61.     Without knowledge; therefore, denied.

62.     Denied.

63.     Denied.

64.     Admitted that Mr. Mesa maintained decorum, but otherwise denied.

65.     Denied.

**Defendant Violated its Policies by Terminating Plaintiff's Employment**

66.     Defendant's Employee Handbook speaks for itself.

67.     Defendant's Employee Handbook speaks for itself.

68.     Denied.

69.     Denied.

70.     Denied.

71.     Denied.

72.     Denied.

73.     The FCHR speaks for itself, but otherwise denied.

74. Denied.

**Defendant Breached an Agreement with Plaintiff to Pay Referral/Recruitment Fees**

75. The agreement speaks for itself.

76. The agreement speaks for itself.

77. The agreement speaks for itself.

78. The agreement speaks for itself.

79. Admitted.

80. Admitted.

81. Admitted.

82. Denied.

83. Denied.

**Plaintiff's Damages and Retention of Counsel**

84. Denied.

85. Without knowledge; therefore, denied.

### COUNT I
### SEX DISCRIMINATION AGAINST DEFENDANT IN VIOLATION OF THE FCHR

86. The responses to paragraphs 1 through 74 and 84 through 85 are reasserted and realleged as if set forth fully herein.

87. The FCHR speaks for itself.

88. Florida Statute section 760.10(1) speaks for itself.

89. The FCHR speaks for itself.

90. Denied.

91. Denied.

92. Denied.

93.    The FCHR speaks for itself, but otherwise denied.

94.    Denied.

95.    Denied.

96.    Denied.

97.    Denied.

**WHEREFORE**, Defendant moves this Court to dismiss this Complaint, to award Defendant costs, and any other such relief the Court deems appropriate.

<u>**COUNT II**</u>
**RETALIATION AGAINST DEFENDANT IN VIOLATION OF THE FCHR**

98.    The responses to paragraphs 1 through 74 and 84 through 85 are reasserted and realleged as if set forth fully herein.

99.    Florida Statute section 760.10(7) speaks for itself.

100.    Denied.

101.    Denied.

102.    Denied.

103.    Denied.

104.    Denied.

105.    Denied.

106.    Denied.

**WHEREFORE**, Defendant moves this Court to dismiss this Complaint, to award Defendant costs, and any other such relief the Court deems appropriate.

<u>**COUNT III**</u>
**BREACH OF CONTRACT AGAINST DEFENDANT**

107.    The responses to paragraphs 1 through 15 and 75 through 85 are reasserted and

realleged as if set forth fully herein.

108.   The agreement speaks for itself.

109.   The agreement speaks for itself.

110.   Admitted.

111.   Denied.

**WHEREFORE**, Defendant moves this Court to dismiss this Complaint, to award Defendant costs, and any other such relief the Court deems appropriate.

<u>**DEFENDANT'S AFFIRMATIVE DEFENSES**</u>

Defendant hereby denies all allegations that are not specifically admitted herein.  In further answer, Defendant states the following affirmative defenses:

<u>**FIRST AFFIRMATIVE DEFENSE**</u>

Plaintiff's claims under Counts I and II are barred for failure to state a cause of action because Florida is an "at-will" employment state.  "The established ruled in Florida is that when the term of employment is discretionary or indefinite, either party may terminate the employment at any time for any reason or no reason without assuming liability."  *Harley v. Ocean Reef Club, Inc.*, 476 So. 2d 1327, 1328 (Fla. 3d DCA 1985); *see also Laguerre v. Palm Beach Newspapers, Inc.*, 20 So. 3d 392, 395 (Fla. 4th DCA 2009) ("An at will employee may be discharged at any time, as long as she is not terminated for a reason prohibited by law, such as retaliation or unlawful discrimination.").  In this case, Plaintiff did not maintain any contractual agreement regarding her employment with Defendant that identified any period of time, and thus, the employment was discretionary or indefinite.  Moreover, Plaintiff was terminated by Defendant for performance based reasons, which have nothing to do with her false allegations against Defendant that Plaintiff was terminated based on sex discrimination and/or retaliation under the FCHR.  As such,

Plaintiff's claims set forth in Counts I and II must be dismissed.

**SECOND AFFIRMATIVE DEFENSE**

Plaintiff's claims set forth in Counts I and II are barred for failure to state a cause of action because Plaintiff's employment with Defendant was terminated for cause based on her failure to adequately perform her duties.  Accordingly, Plaintiff's Counts I and II must be dismissed.

**THIRD AFFIRMATIVE DEFENSE**

Plaintiff's claims set forth in Counts III are barred because Plaintiff failed to state a cause of action.  "To prevail in a breach of contract action, a plaintiff must prove: (1) a valid contract existed; (2) a material breach of the contract; and (3) damages." *Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 953 (Fla. 3d DCA 2017).  At no point does Plaintiff allege or otherwise identify a material breach within the Complaint, which is fatal to her claim.  Since Plaintiff does not allege or otherwise plead a requisite element, she failed to state a cause of action.  As such, Count III must be dismissed.

**FOURTH AFFIRMATIVE DEFENSE**

Plaintiff's claims set forth in Counts III are barred because Plaintiff committed a prior breach.  Defendant and Plaintiff entered into a referral agreement such that if Plaintiff referred someone that Defendant retained as an employee, Plaintiff would be entitled to receive a specified percentage of said employee's annual salary for the first year at said employee's ninety-day mark.  However, Defendant informed Plaintiff that the agreement was confidential.  Plaintiff did not maintain this provision and discussed the referral agreement with numerous persons employed by Defendant, thereby breaching the agreement's confidentiality.  As such, even though Plaintiff referred Bella Simental and Sheyanne Sullivan and Defendant acknowledged Plaintiff's entitlement to such fees, Plaintiff's breach of the confidentiality provision of the agreement

9

circumvents any obligations by Defendant. Thus, Count III must be dismissed.

### FIFTH AFFIRMATIVE DEFENSE

Any recovery in relation to Plaintiff's claims as to all Counts alleged in the Complaint should be reduced, in whole or in part, pursuant to the doctrine of set-off.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent she failed to mitigate damages by failing to timely obtain alternative employment.

### SEVENTH AFFIRMATIVE DEFENSE

Any damages suffered by Plaintiff are not as a result of any actions of Defendant, but were caused by an intervening cause and/or caused by third parties.

**WHEREFORE**, Defendant is entitled the recovery of its attorneys' fees and costs upon prevailing on the above-styled matter, pursuant to section 760.11 of the Florida Statutes or any other provision allowable under the FCHR.

### DEMAND FOR JURY TRIAL

Defendant demands trial by jury of all issues set forth above.

Dated: January 25, 2023                          Respectfully submitted,

/s/ Paul A. Hankin
**The Downs Law Group, P.A.**
3250 Mary Street, Suite 307
Coconut Grove, FL 33133
Tel: (305) 444-8226
Facsimile: (305) 444-6773
Jeremy D. Friedman, Esq.
Florida Bar # 134643
jfriedman@downslawgroup.com
Paul A. Hankin, Esq., LL.M.
Florida Bar # 125402
phankin@downslawgroup.com
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on the 25th day of January 2023, the foregoing was

electronically filed with the Florida Courts E-Filing Portal, which will serve it via electronic mail

to all counsel of record.

/s/ Paul A. Hankin
Paul A. Hankin, Esq., LL.M.

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

Case No. 2022-022571-CA-01

SABRINA BOUKHEIR,

      Plaintiff,

vs.

THE DOWNS LAW GROUP, P.A.,

      Defendant.

_____/

## PLAINTIFF'S NOTICE OF SERVING FIRST SET OF INTERROGATORIES TO DEFENDANT, THE DOWNS LAW GROUP, P.A.

      Plaintiff, Sabrina Boukheir ("Plaintiff"), by and through undersigned counsel, and pursuant to Fla. R. Civ. P. 1.340, hereby notifies the Court that on January 25, 2023, she served her First Set of Interrogatories to Defendant, The Downs Law Group, P.A. ("Defendant"), via electronic mail to Defendant's counsel, Paul A. Hankin, Esq. and Jeremy D. Friedman, Esq. of The Downs Law Group, P.A. at *phankin@downslawgroup.com* and *jfriedman@downslawgroup.com*.

Dated:  January 25, 2023

                                    Respectfully submitted,

                                      **BT LAW GROUP, PLLC**
                                      3050 Biscayne Blvd., Suite 205
                                      Miami, Florida 33137
                                      Tel: (305) 507-8506

                                      By:  s/ Anisley Tarragona
                                      **ANISLEY TARRAGONA, ESQ.**
                                      Florida Bar No. 51626
                                      anisley@btattorneys.com
                                      **JASON D. BERKOWITZ, ESQ.**
                                      Florida Bar No. 0055414

Case No. 2022-022571-CA-01

jason@btattorneys.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document is being served on

January 25, 2023 on all counsel of record via transmission of Notices of Electronic Filing.

By:  <u>s/ Jason D. Berkowitz</u>
Jason D. Berkowitz, Esq.

IN THE COUNTY COURT FOR THE
ELEVENTH JUDICIAL CIRCUIT, IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

SABRINA BOUKHEIR,

        Plaintiff,               CASE NO.: 2022-022571-CA-01

vs.

THE DOWNS LAW GROUP, P.A.,

        Defendant.

_____/

## **DEFENDANT'S MOTION FOR EXTENSION OF TIME TO RESPOND TO DISCOVERY REQEUSTS PROPOUNDED BY PLAINTIFF**

**COMES NOW**, Defendant, The Downs Law Group, P.A., by and through its undersigned counsel, and pursuant to the Florida Rules of Civil Procedure, hereby files this, its Motion for Extension of Time to Respond to Discovery Requests Propounded by Plaintiff, and in support, states as follows:

1.     Plaintiff, Sabrina Boukheir, propounded and served Defendant with written discovery requests—Plaintiff's First Set of Interrogatories and Plaintiff's First Request for Production—on January 25, 2023, such that Defendant's responses to same are due on or before February 24, 2023.

2.     However, the undersigned has been preparing for trial for another matter that is in position number two, and thus, expected to go to trial during the week of February 27, 2023, which has required significant time.

3.     In addition, the mere volume of requests necessitates and warrants an extension of time.  Plaintiff's First Set of Interrogatories consists of 11 requests in which several have subparts, thereby increasing the total number of interrogatories Defendant is required to respond thereto.

Moreover, Plaintiff's First Request for Production consists of 60 requests.

4.      As such, Plaintiff hereby requests an extension of time of thirty (30) days from February 24, 2023, to respond to the written discovery requests.

5.      This instant Motion was not submitted in bad faith and no party will be prejudiced by the relief sought herein.

6.      Counsel for Defendant emailed counsel for Plaintiff regarding the relief sought herein, but the undersigned has not received a response at the time of filing this instant Motion, and therefore, must assume Plaintiff opposes the relief sought herein.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter an order: (1) granting this instant Motion; (2) granting an extension of time of thirty (30) days to respond to the written discovery requests propounded by Plaintiff; and (3) granting such other and further relief that this Court deems just and proper.

Dated: February 23, 2023                    Respectfully submitted,

                                            /s/ Paul A. Hankin
                                            **The Downs Law Group, P.A.**
                                            3250 Mary Street, Suite 307
                                            Coconut Grove, FL 33133
                                            Tel: (305) 444-8226
                                            Facsimile: (305) 444-6773
                                            Jeremy D. Friedman, Esq.
                                            Florida Bar # 134643
                                            jfriedman@downslawgroup.com
                                            Paul A. Hankin, Esq., LL.M.
                                            Florida Bar # 125402
                                            phankin@downslawgroup.com
                                            *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on the 23rd day of  February 2023, the foregoing was

electronically filed with the Florida Courts E-Filing Portal, which will serve it via electronic mail

to all counsel of record.

/s/ Paul A. Hankin
Paul A. Hankin, Esq., LL.M.

IN THE COUNTY COURT FOR THE
ELEVENTH JUDICIAL CIRCUIT, IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

SABRINA BOUKHEIR,

        Plaintiff,                    CASE NO.: 2022-022571-CA-01

vs.

THE DOWNS LAW GROUP, P.A.,

        Defendant.

_____/

## DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS

Defendant, The Downs Law Group, P.A., by and through its undersigned counsel, hereby responds to Plaintiff's First Request for Production of Documents to Defendant (the "Requests"), and reserves the right to supplement, amend, and/or correct all and/or any part of the responses provided herein as follows.

## GENERAL OBJECTION

Defendant objects to the "Definitions" and "Instructions" sought to be imposed within the Requests. The Requests are governed by Rule 1.350 of the Florida Rules of Civil Procedure and the case law interpreting same, and not to by any arbitrary definitions and/or instructions sought to be imposed by Plaintiff.

## RESPONSES TO THE REQUESTS FOR PRODUCTION

1.     Plaintiff's complete personnel file.

**RESPONSE: See all documents.[1]**

---

[1] All documents response to the Requests for Production will be produced through a Dropbox electronically.

2.      Defendant's employee handbook, employee manual(s), or any documents reflecting Defendant's employment policies in effect during Plaintiff's employment with Defendant.

**RESPONSE: See all documents.**

3.      All documents reflecting Defendant's complaint or reporting procedures/mechanisms during the Relevant Period for employees who believed that they were subjected to sex discrimination or unequal pay.

**RESPONSE: Objection, vague and ambiguous, potentially seeks privileged information under work product and/or attorney-client, and is not reasonably calculated to lead to the discovery of admissible evidence.**

4.      All documents reflecting any hotline or anonymous complaint line operated or utilized by Defendant during the Relevant Period.

**RESPONSE: None.**

5.      All documents reflecting any complaints made by Plaintiff to any hotline or anonymous complaint line operated or utilized by Defendant during the Relevant Period.

**RESPONSE: None.**

6.      All agreements between Plaintiff and Defendant, including any referral/recruitment fee agreements, as well as electronically stored versions of the agreements with metadata.

**RESPONSE: See all documents.**

7.      All documents showing the recruitment, interview, and hiring process for Plaintiff, including any documents reflecting the identity of anyone involved in the decision to hire Plaintiff as well as the decision as to Plaintiff's compensation.

**RESPONSE: See all documents.**

8.      All performance evaluations or employee reviews of Plaintiff.

**RESPONSE: See all documents.**

9.      All versions of Defendant's evaluation form of Plaintiff referenced in Defendant's Answer and Affirmative Defenses to the Complaint at Paragraph 30, including drafts.

**RESPONSE: See all documents.**

10.     Plaintiff's Self Performance Evaluation Form referenced in Defendant's Answer and Affirmative Defenses to the Complaint at Paragraph 33.

**RESPONSE: See all documents.**

11.     All documents or communications regarding Plaintiff's performance evaluations or employee reviews of Plaintiff.

**RESPONSE: See all documents.**

12.     All documents that memorialize any oral or verbal reprimand issued to Plaintiff.

**RESPONSE: See all documents.**

13.     All disciplinary actions, warnings, counselings, or write-ups issued to Plaintiff.

**RESPONSE: No formal warnings and/or disciplinary actions were documented.  Subject to and without waiving any objections, see all documents.**

14.     All documents concerning or discussing the reason(s) for Plaintiff's termination.

**RESPONSE: See all documents.**

15.     All documents reflecting the identity of anyone involved in the decision to terminate Plaintiff's employment with Defendant.

**RESPONSE: See all documents.**

16.     All documents regarding, or created during, Ms. Canepa's investigation referenced in Defendant's Answer and Affirmative Defenses to the Complaint at Paragraph 27.

**RESPONSE: See all documents.**

17.  All affidavits or declarations obtained by Defendant concerning the claims or defenses in this Action.

**RESPONSE: None.**

18.  All text messages, google chat messages, Microsoft Teams messages, emails, and any other electronically stored information related to the claims or defenses in this Action. *See* **BT Law Group's ESI Memo at Exhibit A.**

**RESPONSE: See all documents.**

19.  Plaintiff's time records, payroll records, bonus records, pay stubs, and benefits records during the Relevant Period.

**RESPONSE: Objection, compound, vague and ambiguous, potentially seeks privileged information under work product and/or attorney-client, and is not reasonably calculated to lead to the discovery of admissible evidence.   In addition, Plaintiff is seeking documentation that is already in her possession.**

20.  All form W-2s or 1099s prepared for Plaintiff by Defendant during the Relevant Period.

**RESPONSE: Objection, vague and ambiguous, potentially seeks confidential information related to Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.   In addition, Plaintiff is seeking documentation that is already in her possession.**

21.  All plan documents and Summary Plan Description for benefits Plaintiff was receiving during the Relevant Period.

**RESPONSE: See all documents.**

22.     All documents reflecting all benefits Plaintiff was receiving as of Plaintiff's last day of employment with Defendant, including any cost to Defendant or Plaintiff for the benefits.

**RESPONSE: See all documents.**

23.     Job description for all positions held by Plaintiff during her employment with Defendant.

**RESPONSE: See all documents.**

24.     All documents concerning required job qualifications for all positions held by Plaintiff during her employment with Defendant.

**RESPONSE: See all documents.**

25.     All documents reflecting "side projects" made available to Associate attorneys during the Relevant Period (for example, the "Target List"), as well as the identity of the lawyer who volunteered for and/or completed the "side project."

**RESPONSE: Objection, compound, vague and ambiguous, potentially seeks privileged information under work product and/or attorney-client, and is not reasonably calculated to lead to the discovery of admissible evidence.**

26.     All documents reflecting "side projects" completed by Plaintiff during the Relevant Period.

**RESPONSE: None.**

27.     A listing of all "discovery projects and motions" that were available during the Relevant Period, including the identity of the lawyer who volunteered for and/or completed the "discovery projects and motions."

**RESPONSE: Objection, compound, vague and ambiguous, potentially seeks privileged information under work product and/or attorney-client, and is not reasonably calculated to lead to the discovery of admissible evidence.**

28.    Any complaints from Laura Pereira or Sara Mancini to Defendant during the period January 1, 2021 to present concerning side projects, discrimination, retaliation, or unequal pay.

**RESPONSE: None.**

29.    All documents reflecting a compensation grid or pay scale for Associate attorneys in 2021 and 2022.

**RESPONSE: None.**

30.    Any medical records received by Defendant concerning Plaintiff during the Relevant Period.

**RESPONSE: None.**

31.    All documents showing favorable or negative comments about Plaintiff, including emails, text messages, google chat messages, and electronically stored information during the Relevant Period.

**RESPONSE: See all documents.**

32.    All documents reflecting any complaints by employees, clients, or vendors of Defendant about the Plaintiff, including emails, text messages, google chat messages, and electronically stored information.

**RESPONSE: Objection, vague and ambiguous, potentially seeks privileged information under work product and/or attorney-client, and is not reasonably calculated to lead to**

the discovery of admissible evidence.  Subject to and without waiving any objections, see all documents.

33.     All communications, including electronically stored information, between Plaintiff and Defendant concerning a referral/recruitment fee for assisting with recruitment or hiring.

**RESPONSE: See all documents.**

34.     All documents showing the dates of employment for Bella Simental and Sheyanne Sullivan.

**RESPONSE: Objection, seeks confidential data concerning Defendant's employees. Subject to and without waiving any objections, see all documents.**

35.     All documents showing the compensation, including salary and any bonuses, for Bella Simental and Sheyanne Sullivan.

**RESPONSE: Objection, seeks confidential data concerning Defendant's employees. Subject to and without waiving any objections, see all documents.**

36.     All documents reflecting or concerning Defendant's instruction or requirement to Plaintiff that she maintain the confidentiality of the referral agreement as alleged in Defendant's Fourth Affirmative Defense in its Answer and Affirmative Defenses to the Complaint.

**RESPONSE: See all documents.**

37.     All communications, including electronically stored information, between Defendant and the law firm Lydecker regarding Plaintiff.

**RESPONSE: None.**

38.    All documents Defendant submitted to, or received from, any federal, state, county, or municipal agency, including the U.S. Equal Employment Opportunity Commission, related to this Action.

**RESPONSE: Objection, overly broad, seeks documentation that is not reasonably limited in scope, and potentially seeks privileged information under work product.**

39.    Salary and compensation information for male and female Associate attorneys at Defendant during the period January 1, 2021 to present.

**RESPONSE: Objection, compound, vague and ambiguous, seeks confidential data concerning Defendant's employees, and is not reasonably calculated to lead to the discovery of admissible evidence.**

40.    All disciplinary or corrective actions issued to all male and female Associate attorneys of Defendant during the period January 1, 2021 to present.

**RESPONSE: Objection, compound, vague and ambiguous, seeks confidential data concerning Defendant's employees, and is not reasonably calculated to lead to the discovery of admissible evidence.**

41.    The complete personnel file, excluding any medical information, of anyone who replaced Plaintiff.

**RESPONSE: Objection, seeks confidential data concerning Defendant's employees, and is not reasonably calculated to lead to the discovery of admissible evidence.**

42.    All witness statements obtained by Defendant concerning the allegations in this Action.

**RESPONSE: Objection, vague and ambiguous, overly broad, potentially seeks privileged information under work product and/or attorney-client, and not reasonably limited in time and scope.**

43.     The current resume or list of qualifications of any expert witness, advisor or consultant who has been retained by Defendant (or who Defendant anticipates retaining) in this Action.

**RESPONSE: Objection, premature as it is currently undetermined what experts will be expected to be retained, including but not limited to the subject matter as it relates to same.**

44.     All reports, studies, and other commentaries, formal or informal, of any expert witness, consultant or advisor who has been retained by Defendant (or who Defendant anticipates retaining) in this Action.

**RESPONSE: Objection, premature as it is currently undetermined what experts will be expected to be retained, including but not limited to the subject matter as it relates to same.**

45.     All documents showing a list of all individuals that were employed by Defendant or provided services to Defendant during the period January 1, 2021 through present.

**RESPONSE: Objection, vague and ambiguous, seeks confidential data concerning Defendant's employees, and is not reasonably calculated to lead to the discovery of admissible evidence.**

46.     A copy of any surveillance taken by, or requested by, Defendant of the Plaintiff.

**RESPONSE: None.**

47.     All documents reflecting Defendant's efforts to purchase Plaintiff's private/personal computer from a third-party.

**RESPONSE: None.**

48.   The results of any forensic search or examination obtained by Defendant concerning Plaintiff's private/personal computer.

**RESPONSE: None.**

49.   The results of any background, litigation, or social media searches obtained by Defendant concerning Plaintiff.

**RESPONSE: None.**

50.   All communications between Defendant and any third-party human resources consultant or Professional Employer Organization concerning Plaintiff or her claims.

**RESPONSE: None.**

51.   All documents reflecting the date(s) in which a litigation hold, or preservation of evidence notice, was issued to Defendant's employees concerning Plaintiff or her claims. *See Colonial BancGroup Inc. v. PriceWaterhouseCoopers LLP*, No. 2:11-CV-746-WKW, 2016 WL 9687001, at *4 (M.D. Ala. Jan. 22, 2016).

**RESPONSE: See all documents.**

52.   All documents reflecting the names and job titles of all employees or contractors of Defendant that were notified to preserve documents or information concerning Plaintiff or her claims. *Id.*

**RESPONSE: Objection, vague and ambiguous, seeks confidential data concerning Defendant's employees, potentially seeks privileged information under work product and/or attorney-client, and is not reasonably calculated to lead to the discovery of admissible evidence.**

53.     All documents reflecting the types of documents and files (including electronically stored information) that were subject to any litigation hold issued to Defendant's employees or contractors concerning Plaintiff or her claims.  *Id.*

**RESPONSE: See all documents.**

54.     All insurance policies which the Defendant may have insuring it against liability for any employment claims during the Relevant Period, including the claims asserted by Plaintiff in this Action.

**RESPONSE: None.**

55.     All "reservation of rights" letter and/or denial of coverage letter from the Defendant's insurer regarding this Action.

**RESPONSE: None.**

56.     All communications between Defendant and any insurance/claims adjuster or examiner concerning the claims or defenses asserted in this Action.

**RESPONSE: None.**

57.     All communications between Defendant and any client, contractor, vendor, or "Funder" concerning Plaintiff or her claims in this Action.

**RESPONSE: None.**

58.     All documents which Defendant contends support its affirmative defenses.

**RESPONSE: See all documents.**

59.     All documents identified in Defendant's answers to Plaintiff's First Set of Interrogatories.

**RESPONSE: Objection, vague and ambiguous, overly broad, and not reasonably limited in time and scope.  Subject to and without waiving any objections, see all documents.**

60.    All documents which relate to Plaintiff's claims or Defendant's defenses in this Action which have not been produced in response to another request for production.

**RESPONSE: Objection, vague and ambiguous, overly broad, and not reasonably limited in time and scope.  Subject to and without waiving any objections, see all documents.**

Dated: March 27, 2023                                Respectfully submitted,

/s/ Paul A. Hankin
**The Downs Law Group, P.A.**
3250 Mary Street, Suite 307
Coconut Grove, FL 33133
Tel: (305) 444-8226
Facsimile: (305) 444-6773
Jeremy D. Friedman, Esq.
Florida Bar # 134643
jfriedman@downslawgroup.com
Paul A. Hankin, Esq., LL.M.
Florida Bar # 125402
phankin@downslawgroup.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 27th day of March 2023, the foregoing was electronically filed with the Florida Courts E-Filing Portal, which will serve it via electronic mail to all counsel of record.

/s/ Paul A. Hankin
Paul A. Hankin, Esq., LL.M.

IN THE COUNTY COURT FOR THE ELEVENTH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

SABRINA BOUKHEIR,

        Plaintiff,

vs.

THE DOWNS LAW GROUP, P.A.,

        Defendant.

_____/

CASE NO.: 2022-022571-CA-01

## DEFENDANT'S NOTICE OF SERVING ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

        Defendant, The Downs Law Group, P.A., by and through its undersigned counsel, hereby gives notice to the Court and all parties of record that it served its Answers to Plaintiff's First Set of Interrogatories.

Dated: March 27, 2023

Respectfully submitted,

/s/ Paul A. Hankin
**The Downs Law Group, P.A.**
3250 Mary Street, Suite 307
Coconut Grove, FL 33133
Tel: (305) 444-8226
Facsimile: (305) 444-6773
Jeremy D. Friedman, Esq.
Florida Bar # 134643
jfriedman@downslawgroup.com
Paul A. Hankin, Esq., LL.M.
Florida Bar # 125402
phankin@downslawgroup.com
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on the 27th day of March 2023, the foregoing was electronically filed with the Florida Courts E-Filing Portal, which will serve it via electronic mail to all counsel of record.

/s/ Paul A. Hankin
Paul A. Hankin, Esq., LL.M.

IN THE COUNTY COURT FOR THE
ELEVENTH JUDICIAL CIRCUIT, IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

SABRINA BOUKHEIR,

        Plaintiff,                 CASE NO.: 2022-022571-CA-01

vs.

THE DOWNS LAW GROUP, P.A.,

        Defendant.

_____/

## DEFENDANT'S PRIVILEGE LOG

    **COMES NOW**, Defendant, The Downs Law Group, P.A., by and through its undersigned

counsel, and pursuant to the Florida Rules of Civil Procedure, hereby files this, its Privilege Log

of items not produced in response to Plaintiff's First Request for Production to Defendant, dated

January 25, 2023, and in support, states as follows:

| Date | Basis for Privilege | Description[1] |
|------|---------------------|----------------|
| 01/07/2022 | Attorney-client email communications | AC/WP |
| 02/05/2022 | Attorney-client email communications | AC/WP |
| 02/07/2022 | Attorney-client email communications | AC/WP |
| 04/18/2022 | Attorney-client email communications | AC/WP |
| 05/04/2022 | Attorney-client email communications | AC/WP |
| 05/06/2022 | Attorney-client email communications | AC/WP |
| 05/06/2022 | Attorney-client email communications | AC/WP |
| 05/06/2022 | Attorney-client email communications | AC/WP |
| 05/06/2022 | Attorney-client email communications | AC/WP |
| 05/06/2022 | Attorney-client email communications | AC/WP |
| 05/06/2022 | Attorney-client email communications | AC/WP |
| 05/07/2022 | Attorney-client email communications | AC/WP |
| 05/07/2022 | Attorney-client email communications | AC/WP |
| 05/26/2022 | Attorney-client email communications | AC/WP |
| 07/13/2022 | Attorney-client communications | AC/WP |
| 12/09/2022 | Attorney-client email communications | AC/WP |
| 12/09/2022 | Attorney-client email communications | AC/WP |
| 12/09/2022 | Attorney-client email communications | AC/WP |

---

[1] "AC" means Attorney-Client Privilege. "WP" means Work Product.

| 01/26/2023 | Attorney-client email communications | AC/WP |
| 01/26/2023 | Attorney-client email communications | AC/WP |
| 01/31/2023 | Attorney-client email communications | AC/WP |
| 02/02/2023 | Attorney-client email communications | AC/WP |

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on the 14th day of April 2023, the foregoing was electronically filed with the Florida Courts E-Filing Portal, which will serve it via electronic mail to all counsel of record.

/s/ Paul A. Hankin
**The Downs Law Group, P.A.**
3250 Mary Street, Suite 307
Coconut Grove, FL 33133
Tel: (305) 444-8226
Facsimile: (305) 444-6773
Jeremy D. Friedman, Esq.
Florida Bar # 134643
jfriedman@downslawgroup.com
Paul A. Hankin, Esq., LL.M.
Florida Bar # 125402
phankin@downslawgroup.com
*Attorneys for Defendant*

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

Case No. 2022-022571-CA-01

SABRINA BOUKHEIR,

      Plaintiff,

vs.

THE DOWNS LAW GROUP, P.A.,

      Defendant.

_____/

## PLAINTIFF'S MOTION TO COMPEL BETTER RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT

Plaintiff, Sabrina Boukheir ("Plaintiff"), by and through her undersigned counsel, hereby files this Motion to Compel Better Responses to Plaintiff's First Set of Interrogatories and First Request for Production of Documents to Defendant, The Downs Law Group, P.A. ("Defendant"), and in support thereof, states as follows:

### PRELIMINARY STATEMENT

This is an employment-related matter. Plaintiff, who was a junior lawyer working for Defendant, was subject to discriminatory treatment because of her sex and was terminated immediately after she complained to Defendant about being discriminated against. Plaintiff also asserts that Defendant breached a contract by failing to pay compensation that Defendant promised to Plaintiff.

On or about March 28, 2023, after requesting a 30-day extension, Defendant served unverified objections and responses to Plaintiff's First Set of Interrogatories. *See* **Exhibit A**. Therein, Defendant asserted pages of meritless and boilerplate objections. On the same day,

without producing a single responsive document, Defendant served its written objections and responses to Plaintiff's First Request for Production of Documents, which also contained numerous boilerplate objections. *See* **Exhibit B**.

Plaintiff attempted to confer with Defendant about its deficient discovery responses. On April 7, 2023, Plaintiff sent a detailed conferral letter requesting, *inter alia*, complete responses to interrogatories and requests for production, the withdrawal of Defendant's boilerplate objections, the production of documents that Defendant indicated it would produce yet never did, and a log for documents allegedly withheld on the grounds of privilege. *See* **Exhibit C**. On or about April 10, 2023, without serving amended written responses to Plaintiff's interrogatories or requests for production, Defendant belatedly produced some responsive documents.

After reviewing Defendant's document production, on April 14, 2023, Plaintiff sent a second conferral letter to Defendant again requesting amended written responses to Plaintiff's requests for production as well as the production of documents, including responsive electronically stored information ("ESI"), that Defendant indicated that it would produce. *See* **Exhibit D**.

On the same day, Defendant belatedly filed its Privilege Log with the Court. However, the Privilege Log was grossly deficient. Therefore, later that day, Plaintiff sent a third conferral correspondence requesting that Defendant comply with the Rules governing privilege logs. Defendant ignored the communication. *See* **Exhibit E**.

As set forth below, the requested discovery is relevant to the claims and defenses asserted in this case. Accordingly, the Court should overrule Defendant's objections and compel Defendant to fully respond to Plaintiff's First Set of Interrogatories and First Request for Production, to run all ESI search terms provided by Plaintiff with her First Request for Production, to produce all non-privileged and responsive documents, and to provide an amended privilege log that complies

with the Rules **within seven days** given that Defendant has already had more than two months to respond to discovery.

**ARGUMENT AND CITATION OF AUTHORITY**

### I.     Introduction

It is well settled that the Florida Rules of Civil Procedure "broadly allow parties to obtain discovery of 'any matter, not privileged, that is relevant to the subject matter of the pending action,' whether the discovery would be admissible at trial, or is merely 'reasonably calculated to lead to the discovery of admissible evidence.'" *Allstate Ins. Co. v. Boecher*, 733 So. 2d 993, 995 (Fla. 1999) (citing Fla. R. Civ. P. 1.280(b)).

Indeed, pretrial discovery attempts to simplify the issues and to achieve a balanced search for truth to ensure a fair trial, so that parties do not have to move through litigation as a game of "blind man's bluff." *Scipio v. State*, 928 So. 2d 1138, 1144 (Fla. 2006); *see also Miami v. Fraternal Order of Police*, 346 So. 2d 100, 101 (Fla. 3d DCA 1977) ("One of the primary purposes of pretrial discovery is to discover evidence that is pertinent to the triable issues"). The rules governing discovery are to be liberally construed to accomplish their purpose. *Jones v. Seaboard Coast Line R. R. Co.*, 297 So. 2d 861, 863 (Fla. 2d DCA 1974). Under Fla. R. Civ. P. 1.380(a), the discovering party may move to compel discovery based on the responding party's failure to properly respond to interrogatories and requests for production.

As the following discussion establishes, Defendant's responses to <u>all</u> of Plaintiff's interrogatories and <u>many</u> requests for production are deficient and/or inappropriate. Accordingly, the Court should compel Defendant to amend its responses as outlined below.

### II.    Defendant's Interrogatory Responses Are Incomplete and Its Boilerplate Objections Should Be Overruled

In response to <u>every</u> interrogatory, Defendant asserted boilerplate objections to Plaintiff's

3

interrogatories. Not only is this approach to discovery obstructionist and improper, but it contravenes the applicable rules and case law, particularly given that several of Plaintiff's discovery requests are form discovery that have been approved by the Florida Supreme Court. As discussed in further detail below, the Court should overrule Defendant's boilerplate objections and compel Defendant to fully answer Plaintiff's First Set of Interrogatories.

1.   **<u>Interrogatory No. 1</u>**

In **Interrogatory No. 1**, Defendant was asked to:

> Identify by name and contact information (including email address, mailing address, and telephone number) any person answering or supplying information used in answering these interrogatories. Please also provide the relationship(s) the individual(s) have (or had) with Defendant.

*See* Ex. A. Defendant responded:

> **Objection, compound, vague and ambiguous, seeks information that is not reasonably limited in time and scope, and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objection, Defendant with the assistance of counsel c/o the undersigned.**

*See id.* (emphasis in original). Defendant's boilerplate objections are improper. *See First Healthcare Corp. v. Hamilton*, 740 So. 2d 1189, 1193 n.1 (Fla. 4th DCA 1999) (overruled on other grounds) ("Each of these objections, stated baldly and without particulars, is patently without merit as the court found following the hearing on plaintiff's motion to compel. Such "stonewalling tactics," designed to delay making a timely response to valid discovery requests, constitute discovery abuse and should not be condoned.").

Further, Defendant gave a non-responsive answer by claiming that "Defendant" answered the interrogatories as opposed to identifying who specifically supplied the information used in

answering the interrogatories. This information is clearly relevant and Defendant should be ordered to respond in full.

2.     **Interrogatory No. 2**

In **Interrogatory No. 2**, Defendant was asked to:

> Please provide the name, address, telephone number, email address, place of employment and job title of <u>any</u> person who has, claims to have, or whom you believe may have knowledge or information pertaining to any claim or defense alleged in the pleadings filed in this Action, or any fact underlying the subject matter of this Action.
>
> Please also state the specific nature and substance of the knowledge that you believe <u>each</u> person may have.

*See* Ex. A. Defendant responded:

> **Objection, compound, vague and ambiguous, overly broad, seeks information that is not reasonably limited in time and scope, and is not reasonably calculated to lead to the discovery of admissible evidence.**

*Id.* (emphasis in original). Defendant's boilerplate objections are improper. *See First Healthcare Corp. v. Hamilton*, 740 So. 2d at 1193 n.1. Also, Defendant refused to provide even the most basic discovery. Further, Interrogatory No. 2 is limited to those with knowledge about the claims or defenses and therefore, it belies logic that Defendant claimed the interrogatory is "not reasonably limited in time and scope," particularly given Plaintiff's short employment history.

Also, Defendant's assertion that the interrogatory is "vague and ambiguous" is disingenuous as the interrogatory was approved by the Florida Supreme Court. Finally, despite Defendant's baseless claim, the information sought is clearly relevant. *See Surf Drugs, Inc. v. Vermette*, 236 So. 2d 108, 113 (Fla. 1970) ("We hold, therefore, that a party may be required to respond on behalf of himself, his attorney, agent, or employee and to divulge names and addresses of any person having relevant information as well as to indicate generally the type of information

held by the person listed."). Therefore, Plaintiff requests that the Court overrules Defendant's objections and orders Defendant to answer Interrogatory No. 2.

3.    **Interrogatory No. 3**

In **Interrogatory No. 3**, Defendant was asked to:

> If Defendant ever warned or disciplined Plaintiff (whether orally or in writing) concerning any of her work for Defendant, or otherwise believed that Plaintiff failed to perform her job duties, please provide the following:
>
> (a)    The name, job title, and contact information of the person(s) that issued any alleged warning or discipline to Plaintiff on behalf of Defendant;
> (b)    When any alleged warning or discipline was issued;
> (c)    The format in which the warning or discipline was issued (meaning, verbally or in writing);
> (d)    A complete description of the basis for any alleged warning or discipline; and
> (e)    Specific information about, and examples of, how Plaintiff was allegedly not performing her job duties. Please also identify those job duties Plaintiff was allegedly not performing.

*See* Ex. A. Defendant responded:

> **Objection, compound, vague and ambiguous, overly broad, seeks information that is not reasonably limited in time and scope, potentially seeks privileged information under work product and/or attorney-client, and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objections, no formal warnings and/or disciplinary actions were documented; however, days before Plaintiff's employment with Defendant terminated, Defendant intended to issue formal warnings to Plaintiff based on, among other things, her work performance, combative attitude and/or decorum within the office, refusal to accept assignments, and lack of focus.**

*See id.* (emphasis in original). Defendant's boilerplate objections are improper. *See First Healthcare Corp. v. Hamilton*, 740 So. 2d at 1193 n.1. Also, even though Defendant admitted that it did not issue any "documented" warnings to Plaintiff, it failed to indicate if Plaintiff was ever

Case No. 2022-022571-CA-01

issued any verbal warnings. Therefore, Plaintiff requests that the Court overrules Defendant's

objections and orders Defendant to answer Interrogatory No. 3 in full.

    **4.**    **<u>Interrogatory No. 4</u>**

In **Interrogatory No. 4**, Defendant was asked to:

> State whether Defendant or any attorney or representative acting on Defendant's behalf has obtained any oral or written statements, affidavits, declarations, reports, memoranda, or records from any person, which in any way concern the facts of this case or the matters alleged in the pleadings in this Action. **This interrogatory is not seeking any privileged information**. If your answer is in the affirmative, separately identify:
>
> (a)    The name, job title, and contact information of the person(s) that issued any alleged warning or discipline to Plaintiff on behalf of Defendant;
> (b)    the author of each such statement, report, memorandum or recording;
> (c)    the person or persons to whom the statement, report, memorandum or recording was issued, distributed, or otherwise provided;
> (d)    the present location and custodian of each such statement, report, memorandum or recording; and
> (e)    state the date each such statement, affidavit, declaration, report, memorandum or recording was prepared.

*See* Ex. A. Defendant responded:

> **Objection, compound, vague and ambiguous, overly broad, seeks information that is not reasonably limited in time and scope, potentially seeks privileged information under work product and/or attorney-client, and is not reasonably calculated to lead to the discovery of admissible evidence.**

*See id.* (emphasis in original). Defendant's boilerplate objections are improper. *See First*

*Healthcare Corp. v. Hamilton*, 740 So. 2d at 1193 n.1. Further, Defendant refused to respond to

this Florida Supreme Court approved interrogatory. Plaintiff is entitled to this relevant information

so that she can conduct further discovery. Therefore, Plaintiff requests that the Court overrules

Defendant's objections and orders Defendant to answer Interrogatory No. 4 in full.

5.      **Interrogatory No. 5**

In **Interrogatory No. 5**, Defendant was asked to:

> State all facts which Defendant contends support each affirmative defense asserted by Defendant in its Answer and Affirmative Defenses to the Complaint.

*See* Ex. A. Defendant responded:

> **Objection, overly broad, seeks information that is not reasonably limited in time and scope. Subject to and without waiving any objections, each affirmative defense raised by Defendant speaks for itself.**

*See id.* (emphasis in original). Defendant's boilerplate objections are improper. *See First Healthcare Corp. v. Hamilton*, 740 So. 2d at 1193 n.1. Further, courts routinely require defendants to provide factual support for affirmative defenses. *See, e.g. Henderson v. Holiday CVS, L.L.C.*, No. 09-80909-CIV-MARRA/JOHNSON, 2010 U.S. Dist. LEXIS 149450 at *13-14 (S.D. Fla. July 13, 2010) (compelling defendant to respond to affirmative defense interrogatories); s*ee also Incardone v. Royal Carribean Cruises, Ltd.*, No. 16-20924-CIV-MARTINEZ/GOODMAN, 2019 U.S. Dist. LEXIS 108778 at *3-5 (S.D. Fla. June 28, 2019) (striking affirmative defenses for failure to provide facts in answers to interrogatories that support the affirmative defenses). Unless Defendant is willing to withdraw all affirmative defenses, it must respond to the interrogatory and provide any factual support for each affirmative defense. Therefore, Plaintiff requests that this Court overrules Defendant's objections and orders Defendant to answer Interrogatory No. 5 in full.

6.      **Interrogatory No. 7**

In **Interrogatory No. 7**, Defendant was asked to:

> Identify the name, job title, and compensation of any person who took over or handled Plaintiff's job duties after her termination, along with his/her compensation information (including, but not limited to, salary and any bonuses) and a description of his/her employment responsibilities.

*See* Ex. A. Defendant responded:

> **Objection, compound, duplicative requested information within same request, vague and ambiguous, overly broad, seeks information that is not reasonably limited in time and scope, seeks confidential data concerning Defendant's employees, and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objections, Plaintiff had approximately twelve (12) cases that were distributed among seven (7) attorneys.**

*See id.* (emphasis in original). Defendant's boilerplate objections are improper. *See First Healthcare Corp. v. Hamilton*, 740 So. 2d at 1193 n.1. Further, Defendant provided an incomplete response by claiming that it distributed Plaintiff's 12 cases to 7 attorneys, yet failed to provide all the requested information, including the attorneys' names, compensation information, and a description of his/her employment responsibilities. This information is relevant to the claims and defenses in this case. Therefore, Plaintiff requests that the Court overrules Defendant's objections and orders Defendant to answer Interrogatory No. 7 in full.

7. **Interrogatory No. 8**

In **Interrogatory No. 8**, Defendant was asked to:

> Please provide the name, job title, and contact information of all individuals that participated in the decision to terminate Plaintiff's employment and the date(s) of such participation. Please also identify what role he/she played in the decision-making process.
>
> In addition, please identify the reason(s) Plaintiff was terminated and the date the decision to terminate Plaintiff's employment was made.

*See* Ex. A. Defendant responded:

> **Objection, compound, vague and ambiguous, overly broad, seeks information that is not reasonably limited in time and scope, and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any**

9

> **objections, Defendant employed Plaintiff—who was employed at will—and terminated for cause on or about May 9, 2022.**

*See id.* (emphasis in original). Defendant's boilerplate objections are improper. *See First Healthcare Corp. v. Hamilton*, 740 So. 2d at 1193 n.1. Further, Defendant failed to provide a complete response to the interrogatory as Defendant did not identify "all individuals that participated in the decision to terminate Plaintiff's employment and the date(s) of such participation. Please also identify what role he/she played in the decision-making process" which is clearly relevant to the claims and defenses in this case. Therefore, Plaintiff requests that the Court overrules Defendant's objections and orders Defendant to answer Interrogatory No. 8 in full.

    **8.**    **<u>Interrogatory No. 9</u>**

In **Interrogatory No. 9**, Defendant was asked to:

> Please identify all steps taken by Defendant in response to Plaintiff's complaints to management and/or Human Resources about sex discrimination and/or unequal pay. With the response, please <u>also</u> include:
>
> (a)    The date(s) Defendant received complaints from Plaintiff, as well as the form of the complaints (verbally or in writing);
> (b)    Who received the complaints from Plaintiff; and
> (c)    What specifically Plaintiff complained about.

*See* Ex. A. Defendant responded:

> **Objection, compound, vague and ambiguous, overly broad, seeks information that is not reasonably limited in time and scope, potentially seeks privileged information under work product and/or attorney-client, and is not reasonably calculated to lead to the discovery of admissible evidence.**

*See id.* (emphasis in original). Defendant's boilerplate objections are improper. *See First Healthcare Corp. v. Hamilton*, 740 So. 2d at 1193 n.1. Further, Defendant failed to provide any of the requested information which is relevant to the claims and defenses at issue in this case.

Therefore, Plaintiff requests that this Court overrules Defendant's objections and orders Defendant to answer Interrogatory No. 9 in full.

9.   **Interrogatory No. 10**

In **Interrogatory No. 10**, Defendant was asked to:

> Please provide the following information for all male and female Associate attorneys during the period January 1, 2021 to present:
>
> (a)   Attorney's name and sex;
> (b)   Year the attorney became licensed to practice law;
> (c)   Number of years of relevant experience; and
> (d)   Compensation information (including, but not limited to, salary and any bonuses)

*See* Ex. A. Defendant responded:

> **Objection, compound, vague and ambiguous, overly broad, seeks information that is not reasonably limited in time and scope, seeks confidential data concerning Defendant's employees, and is not reasonably calculated to lead to the discovery of admissible evidence.**

*See id.* (emphasis in original). Defendant's boilerplate objections are improper. *See First Healthcare Corp. v. Hamilton*, 740 So. 2d at 1193 n.1. Further, Defendant failed to provide any of the requested information which is clearly relevant to the claims and defenses at issue in this case and is limited in time and scope, despite. Further, the information sought in this interrogatory is commonly sought in employment matters, and the requested information is not confidential.

Therefore, Plaintiff requests that this Court overrules Defendant's objections and orders Defendant to answer Interrogatory No. 10 in full.

10.   **Defendant Failed to Verify Its Interrogatory Responses**

Defendant failed to verify its responses to Plaintiff's First Set of Interrogatories as required by the Florida Rules of Civil Procedure. *See* Fla. R. Civ. P. 1.340(a) ("Each interrogatory must be answered separately and fully in writing **under oath** unless it is objected to  . . . .") Therefore,

Defendant should be ordered to sign its interrogatory responses under oath and in a form that complies with the law.

**III.    The Court Should Overrule Defendant's Objections and Order Defendant to Produce Responsive Documents and Amend Its Responses to Plaintiff's First Request for Production**

    1.    <u>**Request Nos. 1–2, 6–15, 18, 24, 31–33, 36, 58–60**</u>

In **Request No. 1**, Defendant was asked to produce:

> Plaintiff's complete personnel file.

In **Request No. 2**, Defendant was asked to produce:

> Defendant's employee handbook, employee manual(s), or any documents reflecting Defendant's employment policies in effect during Plaintiff's employment with Defendant.

In **Request No. 6**, Defendant was asked to produce:

> All agreements between Plaintiff and Defendant, including any referral/recruitment fee agreements, as well as electronically stored versions of the agreements with metadata.

In **Request No. 7**, Defendant was asked to produce:

> All documents showing the recruitment, interview, and hiring process for Plaintiff, including any documents reflecting the identity of anyone involved in the decision to hire Plaintiff as well as the decision as to Plaintiff's compensation.

In **Request No. 8**, Defendant was asked to produce:

> All performance evaluations or employee reviews of Plaintiff.

In **Request No. 9**, Defendant was asked to produce:

> All versions of Defendant's evaluation form of Plaintiff referenced in Defendant's Answer and Affirmative Defenses to the Complaint at Paragraph 30, including drafts.

In **Request No. 10**, Defendant was asked to produce:

Plaintiff's Self Performance Evaluation Form referenced in Defendant's Answer and Affirmative Defenses to the Complaint at Paragraph 33.

In **Request No. 11**, Defendant was asked to produce:

All documents or communications regarding Plaintiff's performance evaluations or employee reviews of Plaintiff.

In **Request No. 12**, Defendant was asked to produce:

All documents that memorialize any oral or verbal reprimand issued to Plaintiff.

In **Request No. 13**, Defendant was asked to produce:

All disciplinary actions, warnings, counselings, or write-ups issued to Plaintiff.

In **Request No. 14**, Defendant was asked to produce:

All documents concerning or discussing the reason(s) for Plaintiff's termination.

In **Request No. 15**, Defendant was asked to produce:

All documents reflecting the identity of anyone involved in the decision to terminate Plaintiff's employment with Defendant.

In **Request No. 18**, Defendant was asked to produce:

All text messages, google chat messages, Microsoft Teams messages, emails, and any other electronically stored information related to the claims or defenses in this Action.

In **Request No. 24**, Defendant was asked to produce:

All documents concerning required job qualifications for all positions held by Plaintiff during her employment with Defendant.

In **Request No. 31**, Defendant was asked to produce:

All documents showing favorable or negative comments about Plaintiff, including emails, text messages, google chat messages, and electronically stored information during the Relevant Period.

In **Request No. 32**, Defendant was asked to produce:

> All documents reflecting any complaints by employees, clients, or vendors of Defendant about the Plaintiff, including emails, text messages, google chat messages, and electronically stored information.

In **Request No. 33**, Defendant was asked to produce:

> All communications, including electronically stored information, between Plaintiff and Defendant concerning a referral/recruitment fee for assisting with recruitment or hiring.

In **Request No. 36**, Defendant was asked to produce:

> All documents reflecting or concerning Defendant's instruction or requirement to Plaintiff that she maintain the confidentiality of the referral agreement as alleged in Defendant's Fourth Affirmative Defense in its Answer and Affirmative Defenses to the Complaint.

In **Request No. 58**, Defendant was asked to produce:

> All documents which Defendant contends support its affirmative defenses.

In **Request No. 59**, Defendant was asked to produce:

> All documents identified in Defendant's answers to Plaintiff's First Set of Interrogatories.

In **Request No. 60**, Defendant was asked to produce:

> All documents which relate to Plaintiff's claims or Defendant's defenses in this Action which have not been produced in response to another request for production.

*See* Ex. B. In response to these requests, Defendant stated, "see all documents." *See id.*

While Defendant produced some documents, Defendant failed to indicate which documents are responsive to which request(s). Not only does this not comply with the Rules, but as written, the responses leave Plaintiff guessing as to whether Defendant

produced all responsive documents or whether it will be producing additional documents in the future.

Fla. R. Civ. P. 1.350(b) provides, in pertinent part, "[w]hen producing documents, the producing party shall either produce them as they are kept in the usual course of business or shall identify them to correspond with the categories in the request." As such, Defendant's responses are not compliant with the Rules. Accordingly, Defendant should be compelled to identify which documents are responsive to which requests.

2.    <u>**Request Nos. 16, 21–23, 51, 53**</u>

In **Request No. 16**, Defendant was asked to produce:

> All documents regarding, or created during, Ms. Canepa's investigation referenced in Defendant's Answer and Affirmative Defenses to the Complaint at Paragraph 27.

In **Request No. 21**, Defendant was asked to produce:

> All plan documents and Summary Plan Description for benefits Plaintiff was receiving during the Relevant Period.

In **Request No. 22**, Defendant was asked to produce:

> All documents reflecting all benefits Plaintiff was receiving as of Plaintiff's last day of employment with Defendant, including any cost to Defendant or Plaintiff for the benefits.

In **Request No. 23**, Defendant was asked to produce:

> Job description for all positions held by Plaintiff during her employment with Defendant.

In **Request No. 51**, Defendant was asked to produce:

> All documents reflecting the date(s) in which a litigation hold, or preservation of evidence notice, was issued to Defendant's employees concerning Plaintiff or her claims. *See Colonial BancGroup Inc. v. PriceWaterhouseCoopers LLP*, No. 2:11-CV-746-WKW, 2016 WL 9687001, at *4 (M.D. Ala. Jan. 22, 2016).

In **Request No. 53**, Defendant was asked to produce:

> All documents reflecting the types of documents and files (including electronically stored information) that were subject to any litigation hold issued to Defendant's employees or contractors concerning Plaintiff or her claims. *Id.*

*See* Ex. B. Defendant claimed that it produced documents in response to these requests, however, no such documents were produced. Defendant should be compelled to produce all responsive documents in its possession and/or identify which documents produced are responsive to these requests.

### 3.   <u>Request Nos. 34–35</u>

In Request No. 34, Defendant was asked to produce:

> All documents showing the dates of employment for Bella Simental and Sheyanne Sullivan.

In Request No. 35, Defendant was asked to produce:

> All documents showing the compensation, including salary and any bonuses, for Bella Simental and Sheyanne Sullivan.

*See* Ex. B. In response to these requests, Defendant responded: "Objection, seeks confidential data concerning Defendant's employees. Subject to and without waiving any objections, see all documents." *See id.* Defendant's boilerplate objection, without explanation, is improper. *See First Healthcare Corp. d/b/a Boca Raton Rehabilitation Ctr. v. McClamma*, 740 So. 2d 1189, 1193 n. 1 (Fla. 4th DCA 1999) ("Each of these objections, stated baldly without particulars, is patently without merit . . . Such 'stonewalling tactics,' designed to delay making a timely response to valid discovery requests, constitute discovery abuse and should not be condoned.") (overruled on other grounds).

Further, despite its asserted objections, Defendant stated that it produced documents in response to these requests. *See id*. However, no such documents were produced. Accordingly,

Defendant should be compelled to produce all responsive documents in its possession and/or identify which documents produced are responsive to which requests.

    4.    **<u>Request Nos. 3, 19–20, 25, 27, 39–42, 45, 52</u>**

In **Request No. 3**, Defendant was asked to produce:

> All documents reflecting Defendant's complaint or reporting procedures/mechanisms during the Relevant Period for employees who believed that they were subjected to sex discrimination or unequal pay.

In **Request No. 19**, Defendant was asked to produce:

> Plaintiff's time records, payroll records, bonus records, pay stubs, and benefits records during the Relevant Period.

In **Request No. 20**, Defendant was asked to produce:

> All form W-2s or 1099s prepared for Plaintiff by Defendant during the Relevant Period.

In **Request No. 25**, Defendant was asked to produce:

> All documents reflecting "side projects" made available to Associate attorneys during the Relevant Period (for example, the "Target List"), as well as the identity of the lawyer who volunteered for and/or completed the "side project."

In **Request No. 27**, Defendant was asked to produce:

> A listing of all "discovery projects and motions" that were available during the Relevant Period, including the identity of the lawyer who volunteered for and/or completed the "discovery projects and motions."

In **Request No. 39**, Defendant was asked to produce:

> Salary and compensation information for male and female Associate attorneys at Defendant during the period January 1, 2021 to present.

In **Request No. 40**, Defendant was asked to produce:

All disciplinary or corrective actions issued to all male and female Associate attorneys of Defendant during the period January 1, 2021 to present.

In **Request No. 41**, Defendant was asked to produce:

The complete personnel file, excluding any medical information, of anyone who replaced Plaintiff.

In **Request No. 42**, Defendant was asked to produce:

All witness statements obtained by Defendant concerning the allegations in this Action.

In **Request No. 45**, Defendant was asked to produce:

All reports, studies, and other commentaries, formal or informal, of any expert witness, consultant or advisor who has been retained by Defendant (or who Defendant anticipates retaining) in this Action.

In **Request No. 52**, Defendant was asked to produce:

All documents reflecting the names and job titles of all employees or contractors of Defendant that were notified to preserve documents or information concerning Plaintiff or her claims.

*See* Ex. B. Defendant responded:

> **Objection, vague and ambiguous, seeks confidential data concerning Defendant's employees, potentially seeks privileged information under work product and/or attorney-client, and is not reasonably calculated to lead to the discovery of admissible evidence.**

*See id.* (emphasis in original). Defendant's boilerplate objections are improper. *See First Healthcare Corp. v. Hamilton*, 740 So. 2d at 1193 n.1. Further, Defendant's objection that the requests are "vague and ambiguous" is disingenuous as the requests are clearly worded. To the extent Defendant genuinely had difficulty understanding any of these requests, it was incumbent upon Defendant to contact Plaintiff's counsel and seek clarification – not simply assert boilerplate objections.

Furthermore, on two occasions (Request Nos. 19–20), Defendant objected to these requests on the grounds that Plaintiff is "seeking documentation already in her possession." *See id.* This objection is improper as courts have rejected this very argument and confirmed that "the fact that [a party's counsel] may already possess . . . some of the documents and information included in [his] discovery requests   . . . does not excuse the [responding party's] failure to fully respond to the discovery requests." *Puccio v. Sclafani*, No. 12-61840-CIV, 2013 WL 4068782, at *2 (S.D. Fla. Aug. 12, 2013) (citing *Rivers v. Asplundh Tree Expert Co.*, No. 5:08cv61/RS/EMT, 2008 WL 5111300, at *4 (N.D. Fla. Dec. 3, 2008)).

As for Defendant's bald objection that Request Nos. 20, 39, 40, 41, 45, 52 seek confidential data or information, Defendant's objections should be overruled because Defendant failed to articulate or explain how these requests seek confidential information. Moreover, to the extent Defendant genuinely believed the requested documents are confidential, it should have provided a draft Confidentiality Stipulation.

Finally, Defendant's objection that the requests are "not reasonably calculated to lead to the discovery of admissible evidence" are baseless. Each of these requests relate directly to the claims and defenses at issue in this case. As such, Defendant's objections should be overruled and Defendant should be compelled to produce all responsive documents.

### 5.   Electronically Stored Information (Request Nos. 6, 18, 31, 33, 53)

To facilitate the production of ESI, Plaintiff sent Defendant a detailed ESI Memorandum with her First Request for Production, which contained search terms, proposed a relevant time period, and identified key custodians. *See* **Exhibit F**. Defendant, however, appears to have ignored this ESI Memorandum altogether and cherry-picked emails it wanted to produce. Defendant did not produce a single text message nor did Defendant produce all relevant emails.

In its responses to these requests, Defendant did not assert any particularized objection to the ESI Memorandum. To the contrary, in responding to several requests for ESI, Defendant simply responded, "[s]ee all documents" without any indication that Defendant ran a single search to identify potentially responsive ESI. *See* Ex. B. Despite Plaintiff's efforts to confer with Defendant regarding ESI discovery, Defendant has ignored Plaintiff and apparently refused to run any searches contained in the ESI Memorandum.

The rules governing discovery are to be liberally construed to accomplish their purpose. *Jones v. Seaboard Coast Line R. R. Co.*, 297 So. 2d 861, 863 (Fla. 2d DCA 1974). In terms of e-discovery, "basic keyword searching techniques have been widely accepted by both courts and parties as sufficient to define the scope of their obligation to perform a search for responsive documents…." *L-3 Communs. Corp. v. Sparton Corp.*, 313 F.R.D. 661, 666 (M.D. Fla. 2015) (citing *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 261 (D. Md. 2008)); *see also In re Lorazepam & Clorazepate*, 300 F. Supp. 2d 43, 46 (D.D.C. 2004) ("The glory of electronic information is not merely that it saves space but that it permits the computer to search for words or 'strings' of text in seconds.").

Defendant's refusal to run any of the searches contained in the ESI Memorandum, or to even confer with Plaintiff regarding the searches, is obstructionist and is a clear attempt to prevent Plaintiff from obtaining relevant discovery, which should not be permitted by the Court. *See* Fla. R. Civ. P. 1.350(a)–(b); *see also In re Seroquel Prods. Liab. Litig.*, 244 F.R.D. 650, 662 (M.D. Fla. 2007) (recommending sanctions against defendant for its "purposely sluggish" production to plaintiffs and confirming that "key word searching is a recognized method to winnow relevant documents from large repositories," and also that the "use of this technique must be a cooperative and informed process."); *Cmty. Bank of Fla. v. Vilarino*, No. 10-11257 CA 09, 2013 Fla. Cir.

LEXIS 14234 (11th Jud. Cir. Dec. 24, 2013) (ordering defendant to perform a search for responsive documents using agreed upon search terms for an agreed upon period). Accordingly, the Court should compel Defendant to run searches and produce all relevant ESI.

**6.** **Defendant's Privilege Log is Deficient**

As noted above, Defendant failed to provide a privilege log at the time it served its responses and objections to Plaintiff's First Set of Interrogatories and First Request for Production. Therefore, to the extent that Defendant maintains any privilege objections, the Court should overrule Defendant's objections and find that Defendant waived any privilege. *See Kaye Scholer LLP v. Zalis*, 878 So. 2d 447, 449 (Fla. 3d DCA 2004) ("Failure to comply with the requirements of Rule 1.280(b)(6) results in the waiver of any attorney-client and work-product privileges.").

Further, although Defendant *eventually* filed a privilege log, the privilege log is wholly deficient. *See* **Exhibit G**. Pursuant to Fla. R. Civ. P 1.280(b)(6), any party that withholds information or documents that is otherwise discoverable by claiming that it is privileged "shall make the claim expressly and **shall describe the nature of the documents, communications, or things not produced** or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." (emphasis added).

Not only did Defendant fail to describe the nature of the information or documents not produced, but the privilege log is so vague that neither Plaintiff nor the Court can assess the validity of Defendant's claimed privileges. This is improper. Therefore, to the extent that the Court finds that Defendant did not waive any claim of privilege, the Court should order Defendant to comply with the Rules and provide Plaintiff with an amended Privilege Log that contains all of the required information.

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order: (a) compelling Defendant to amend its answers to Interrogatory Nos. 1–5 and 7-10 of Plaintiff's First Set of Interrogatories within seven calendar days; (b) compelling Defendant to amend its responses to Request Nos. 1–3, 6–16, 18–25, 27, 31–36, 39–42, 45, 51–53, and 58–60 of Plaintiff's First Request for Production within seven calendar days; (c) compelling Defendant to run the search terms provided by Plaintiff for all of the identified custodians, and produce all responsive ESI, including metadata, within seven calendar days; (d) compelling Defendant to amend its Privilege Log within seven calendar days; (e) awarding Plaintiff her fees incurred in having to bring this motion pursuant to Fla. R. Civ. P. 1.380(a)(4) as Defendant's discovery responses and objections were not "substantially justified;" and (f) providing all other relief that the Court deems just and proper.

## <u>CERTIFICATE OF CONFERRAL</u>

Pursuant to Fla. R. Civ. P. 1.380, the undersigned conferred with counsel for Defendant on April 7, 2023 and April 14, 2023. Despite Plaintiff's conferral efforts, the parties were not able to resolve the discovery disputes.

Dated: April 26, 2023

Respectfully submitted,

**BT LAW GROUP, PLLC**
3050 Biscayne Blvd., Suite 205
Miami, Florida 33137
Tel: (305) 507-8506

By: <u>s/ Anisley Tarragona</u>
**ANISLEY TARRAGONA, ESQ.**
Florida Bar No. 51626
anisley@btattorneys.com
**JASON D. BERKOWITZ, ESQ.**
Florida Bar No. 0055414
jason@btattorneys.com
*Attorneys for Plaintiff*

22

Case No. 2022-022571-CA-01

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been served on

April 26, 2023 on counsel for Defendant, Paul A. Hankin, Esq. and Jeremy D. Friedman, Esq. at

*phankin@downslawgroup.com* and *jfriedman@downslawgroup.com*.

<u>s/ Jason Berkowitz</u>
Jason Berkowitz, Esq.

# EXHIBIT A

IN THE COUNTY COURT FOR THE
ELEVENTH JUDICIAL CIRCUIT, IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

SABRINA BOUKHEIR,

        Plaintiff,               CASE NO.: 2022-022571-CA-01

vs.

THE DOWNS LAW GROUP, P.A.,

        Defendant.

_____/

## DEFENDANT'S ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

        Defendant, The Downs Law Group, P.A., by and through its undersigned counsel, hereby answers Plaintiff's First Set of Interrogatories to Defendant (the "Interrogatories"), and reserves the right to supplement, amend, and/or correct all and/or any part of the responses provided herein as follows:

## GENERAL OBJECTION

        Defendant objects to the "Definitions" and "Instructions" sought to be imposed within the Interrogatories.  The Interrogatories are governed by Rule 1.340 of the Florida Rules of Civil Procedure and the case law interpreting same, and not to by any arbitrary definitions and/or instructions sought to be imposed by Plaintiff.

## ANSWERS TO THE INTERROGATORIES

        1.      Identify by name and contact information (including email address, mailing address, and telephone number) any person answering or supplying information used in answering these interrogatories.  Please also provide the relationship(s) the individual(s) have (or had) with Defendant.

**ANSWER: Objection, compound, vague and ambiguous, seeks information that is not**

1

**reasonably limited in time and scope, and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving any objection, Defendant with the assistance of counsel c/o the undersigned.**

2.      Please provide the name, address, telephone number, email address, place of employment and job title of any person who has, claims to have, or whom you believe may have knowledge or information pertaining to any claim or defense alleged in the pleadings filed in this Action, or any fact underlying the subject matter of this Action.

Please also state the specific nature and substance of the knowledge that you believe each person may have.

**ANSWER: Objection, compound, vague and ambiguous, overly broad, seeks information that is not reasonably limited in time and scope, and is not reasonably calculated to lead to the discovery of admissible evidence.**

3.      If Defendant ever warned or disciplined Plaintiff (whether orally or in writing) concerning any of her work for Defendant, or otherwise believed that Plaintiff failed to perform her job duties, please provide the following:

a.      The name, job title, and contact information of the person(s) that issued any alleged warning or discipline to Plaintiff on behalf of Defendant;

b.      When any alleged warning or discipline was issued;

c.      The format in which the warning or discipline was issued (meaning, verbally or in writing);

d.      A complete description of the basis for any alleged warning or discipline; and

e.      Specific information about, and examples of, how Plaintiff was allegedly not performing her job duties.  Please also identify those job duties Plaintiff was allegedly not performing.

**ANSWER: Objection, compound, vague and ambiguous, overly broad, seeks information that is not reasonably limited in time and scope, potentially seeks privileged information under work product and/or attorney-client, and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving any objections, no formal warnings and/or disciplinary actions were documented; however, days before Plaintiff's employment with Defendant terminated, Defendant intended to issue formal warnings to Plaintiff based on, among other things, her work performance, combative attitude and/or decorum within the office, refusal to accept assignments, and lack of focus.**

4.      State whether Defendant or any attorney or representative acting on Defendant's behalf has obtained any oral or written statements, affidavits, declarations, reports, memoranda, or records from any person, which in any way concern the facts of this case or the matters alleged in the pleadings in this Action.  **This interrogatory is not seeking any privileged information.**  If your answer is in the affirmative, separately identify:

a.      the author of each such statement, report, memorandum or recording;

b.      the person or persons to whom the statement, report, memorandum or recording was issued, distributed, or otherwise provided;

c.      the present location and custodian of each such statement, report, memorandum or recording; and

d.      state the date each such statement, affidavit, declaration, report, memorandum or recording was prepared.

**ANSWER: Objection, compound, vague and ambiguous, overly broad, seeks information that is not reasonably limited in time and scope, potentially seeks privileged information under work product and/or attorney-client, and is not reasonably calculated to lead to the discovery of admissible evidence.**

5.      State all facts which Defendant contends support each affirmative defense asserted by Defendant in its Answer and Affirmative Defenses to the Complaint.

**ANSWER: Objection, overly broad, seeks information that is not reasonably limited in time and scope.  Subject to and without waiving any objections, each affirmative defense raised by Defendant speaks for itself.**

6.      Identify every legal action or claim filed (such as a lawsuit, charge of discrimination, administrative complaint, or internal grievance/complaint to Defendant's Human Resources Department, management, or a complaint/ethics hotline) against or concerning Defendant by any employee, consultant, contractor, or intern of Defendant, from January 2021 to present, concerning claims of retaliation, sex discrimination, or unequal pay.  Please also provide the name of the complainant, the case or charge number (if applicable), the result/disposition of the legal action or claim, and describe in detail the factual basis of the legal action or claim.

**ANSWER: Objection, compound, vague and ambiguous, overly broad, seeks information that is not reasonably limited in time and scope, potentially seeks privileged information under work product and/or attorney-client, and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving any objection, no legal actions or claims have been filed against Defendant between January 2021 to present concerning claims of retaliation, sex discrimination, or unequal pay.**

7.      Identify the name, job title, and compensation of any person who took over or handled Plaintiff's job duties after her termination, along with his/her compensation information (including, but not limited to, salary and any bonuses) and a description of his/her employment responsibilities.

**ANSWER: Objection, compound, duplicative requested information within same request, vague and ambiguous, overly broad, seeks information that is not reasonably limited in time and scope, seeks confidential data concerning Defendant's employees, and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving any objections, Plaintiff had approximately twelve (12) cases that were distributed among seven (7) attorneys.**

8.      Please provide the name, job title, and contact information of all individuals that participated in the decision to terminate Plaintiff's employment and the date(s) of such participation.  Please also identify what role he/she played in the decision-making process.

In addition, please identify the reason(s) Plaintiff was terminated and the date the decision to terminate Plaintiff's employment was made.

**ANSWER: Objection, compound, vague and ambiguous, overly broad, seeks information that is not reasonably limited in time and scope, and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving any objections, Defendant employed Plaintiff—who was employed at will—and terminated for cause on or about May 9, 2022.**

9.      Please identify all steps taken by Defendant in response to Plaintiff's complaints to management and/or Human Resources about sex discrimination and/or unequal pay.  With the response, please also include:

     a.     The date(s) Defendant received complaints from Plaintiff, as well as the form of the complaints (verbally or in writing);

     b.     Who received the complaints from Plaintiff; and

     c.     What specifically Plaintiff complained about.

**ANSWER: Objection, compound, vague and ambiguous, overly broad, seeks information that is not reasonably limited in time and scope, potentially seeks privileged information under work product and/or attorney-client, and is not reasonably calculated to lead to the discovery of admissible evidence.**

10.    Please provide the following information for all male and female Associate attorneys during the period January 1, 2021 to present:

     a.     Attorney's name and sex;

     b.     Year the attorney became licensed to practice law;

     c.     Number of years of relevant experience; and

     d.     Compensation information (including, but not limited to, salary and any bonuses).

**ANSWER: Objection, compound, vague and ambiguous, overly broad, seeks information that is not reasonably limited in time and scope, seeks confidential data concerning Defendant's employees, and is not reasonably calculated to lead to the discovery of admissible evidence.**

11.    Please state whether Defendant employed 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.  If Defendant did not employ 15 or more employees, please identify the names of all employees and independent contractors who provided services to Defendant in the current or preceding calendar year.

**ANSWER: Objection, compound, vague and ambiguous, and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving any objections, Defendant employed fifteen (15) or more employees in each working day from January 2022 through the present.**

Dated: March 27, 2023                             Respectfully submitted,

/s/ Paul A. Hankin
**The Downs Law Group, P.A.**
3250 Mary Street, Suite 307
Coconut Grove, FL 33133
Tel: (305) 444-8226
Facsimile: (305) 444-6773
Jeremy D. Friedman, Esq.
Florida Bar # 134643
jfriedman@downslawgroup.com
Paul A. Hankin, Esq., LL.M.
Florida Bar # 125402
phankin@downslawgroup.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 27th day of March 2023, the foregoing was electronically filed with the Florida Courts E-Filing Portal, which will serve it via electronic mail to all counsel of record.

/s/ Paul A. Hankin
Paul A. Hankin, Esq., LL.M.

# EXHIBIT B

IN THE COUNTY COURT FOR THE ELEVENTH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

SABRINA BOUKHEIR,

        Plaintiff,                 CASE NO.: 2022-022571-CA-01

vs.

THE DOWNS LAW GROUP, P.A.,

        Defendant.

_____/

## DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS

      Defendant, The Downs Law Group, P.A., by and through its undersigned counsel, hereby responds to Plaintiff's First Request for Production of Documents to Defendant (the "Requests"), and reserves the right to supplement, amend, and/or correct all and/or any part of the responses provided herein as follows.

## GENERAL OBJECTION

      Defendant objects to the "Definitions" and "Instructions" sought to be imposed within the Requests.  The Requests are governed by Rule 1.350 of the Florida Rules of Civil Procedure and the case law interpreting same, and not to by any arbitrary definitions and/or instructions sought to be imposed by Plaintiff.

## RESPONSES TO THE REQUESTS FOR PRODUCTION

1.      Plaintiff's complete personnel file.

**RESPONSE: See all documents.[1]**

---

[1] All documents response to the Requests for Production will be produced through a Dropbox electronically.

1

2.      Defendant's employee handbook, employee manual(s), or any documents reflecting Defendant's employment policies in effect during Plaintiff's employment with Defendant.

**RESPONSE: See all documents.**

3.      All documents reflecting Defendant's complaint or reporting procedures/mechanisms during the Relevant Period for employees who believed that they were subjected to sex discrimination or unequal pay.

**RESPONSE: Objection, vague and ambiguous, potentially seeks privileged information under work product and/or attorney-client, and is not reasonably calculated to lead to the discovery of admissible evidence.**

4.      All documents reflecting any hotline or anonymous complaint line operated or utilized by Defendant during the Relevant Period.

**RESPONSE: None.**

5.      All documents reflecting any complaints made by Plaintiff to any hotline or anonymous complaint line operated or utilized by Defendant during the Relevant Period.

**RESPONSE: None.**

6.      All agreements between Plaintiff and Defendant, including any referral/recruitment fee agreements, as well as electronically stored versions of the agreements with metadata.

**RESPONSE: See all documents.**

7.      All documents showing the recruitment, interview, and hiring process for Plaintiff, including any documents reflecting the identity of anyone involved in the decision to hire Plaintiff as well as the decision as to Plaintiff's compensation.

**RESPONSE: See all documents.**

8.      All performance evaluations or employee reviews of Plaintiff.

**RESPONSE: See all documents.**

9.      All versions of Defendant's evaluation form of Plaintiff referenced in Defendant's Answer and Affirmative Defenses to the Complaint at Paragraph 30, including drafts.

**RESPONSE: See all documents.**

10.     Plaintiff's Self Performance Evaluation Form referenced in Defendant's Answer and Affirmative Defenses to the Complaint at Paragraph 33.

**RESPONSE: See all documents.**

11.     All documents or communications regarding Plaintiff's performance evaluations or employee reviews of Plaintiff.

**RESPONSE: See all documents.**

12.     All documents that memorialize any oral or verbal reprimand issued to Plaintiff.

**RESPONSE: See all documents.**

13.     All disciplinary actions, warnings, counselings, or write-ups issued to Plaintiff.

**RESPONSE: No formal warnings and/or disciplinary actions were documented.  Subject to and without waiving any objections, see all documents.**

14.     All documents concerning or discussing the reason(s) for Plaintiff's termination.

**RESPONSE: See all documents.**

15.     All documents reflecting the identity of anyone involved in the decision to terminate Plaintiff's employment with Defendant.

**RESPONSE: See all documents.**

16.     All documents regarding, or created during, Ms. Canepa's investigation referenced in Defendant's Answer and Affirmative Defenses to the Complaint at Paragraph 27.

**RESPONSE: See all documents.**

17.　All affidavits or declarations obtained by Defendant concerning the claims or defenses in this Action.

**RESPONSE: None.**

18.　All text messages, google chat messages, Microsoft Teams messages, emails, and any other electronically stored information related to the claims or defenses in this Action. *See* **BT Law Group's ESI Memo at Exhibit A.**

**RESPONSE: See all documents.**

19.　Plaintiff's time records, payroll records, bonus records, pay stubs, and benefits records during the Relevant Period.

**RESPONSE: Objection, compound, vague and ambiguous, potentially seeks privileged information under work product and/or attorney-client, and is not reasonably calculated to lead to the discovery of admissible evidence.　In addition, Plaintiff is seeking documentation that is already in her possession.**

20.　All form W-2s or 1099s prepared for Plaintiff by Defendant during the Relevant Period.

**RESPONSE: Objection, vague and ambiguous, potentially seeks confidential information related to Defendant, and is not reasonably calculated to lead to the discovery of admissible evidence.　In addition, Plaintiff is seeking documentation that is already in her possession.**

21.　All plan documents and Summary Plan Description for benefits Plaintiff was receiving during the Relevant Period.

**RESPONSE: See all documents.**

22.    All documents reflecting all benefits Plaintiff was receiving as of Plaintiff's last day of employment with Defendant, including any cost to Defendant or Plaintiff for the benefits.

**RESPONSE: See all documents.**

23.    Job description for all positions held by Plaintiff during her employment with Defendant.

**RESPONSE: See all documents.**

24.    All documents concerning required job qualifications for all positions held by Plaintiff during her employment with Defendant.

**RESPONSE: See all documents.**

25.    All documents reflecting "side projects" made available to Associate attorneys during the Relevant Period (for example, the "Target List"), as well as the identity of the lawyer who volunteered for and/or completed the "side project."

**RESPONSE: Objection, compound, vague and ambiguous, potentially seeks privileged information under work product and/or attorney-client, and is not reasonably calculated to lead to the discovery of admissible evidence.**

26.    All documents reflecting "side projects" completed by Plaintiff during the Relevant Period.

**RESPONSE: None.**

27.    A listing of all "discovery projects and motions" that were available during the Relevant Period, including the identity of the lawyer who volunteered for and/or completed the "discovery projects and motions."

**RESPONSE: Objection, compound, vague and ambiguous, potentially seeks privileged information under work product and/or attorney-client, and is not reasonably calculated to lead to the discovery of admissible evidence.**

28.    Any complaints from Laura Pereira or Sara Mancini to Defendant during the period January 1, 2021 to present concerning side projects, discrimination, retaliation, or unequal pay.

**RESPONSE: None.**

29.    All documents reflecting a compensation grid or pay scale for Associate attorneys in 2021 and 2022.

**RESPONSE: None.**

30.    Any medical records received by Defendant concerning Plaintiff during the Relevant Period.

**RESPONSE: None.**

31.    All documents showing favorable or negative comments about Plaintiff, including emails, text messages, google chat messages, and electronically stored information during the Relevant Period.

**RESPONSE: See all documents.**

32.    All documents reflecting any complaints by employees, clients, or vendors of Defendant about the Plaintiff, including emails, text messages, google chat messages, and electronically stored information.

**RESPONSE: Objection, vague and ambiguous, potentially seeks privileged information under work product and/or attorney-client, and is not reasonably calculated to lead to**

the discovery of admissible evidence. **Subject to and without waiving any objections, see all documents.**

33.     All communications, including electronically stored information, between Plaintiff and Defendant concerning a referral/recruitment fee for assisting with recruitment or hiring.

**RESPONSE: See all documents.**

34.     All documents showing the dates of employment for Bella Simental and Sheyanne Sullivan.

**RESPONSE: Objection, seeks confidential data concerning Defendant's employees. Subject to and without waiving any objections, see all documents.**

35.     All documents showing the compensation, including salary and any bonuses, for Bella Simental and Sheyanne Sullivan.

**RESPONSE: Objection, seeks confidential data concerning Defendant's employees. Subject to and without waiving any objections, see all documents.**

36.     All documents reflecting or concerning Defendant's instruction or requirement to Plaintiff that she maintain the confidentiality of the referral agreement as alleged in Defendant's Fourth Affirmative Defense in its Answer and Affirmative Defenses to the Complaint.

**RESPONSE: See all documents.**

37.     All communications, including electronically stored information, between Defendant and the law firm Lydecker regarding Plaintiff.

**RESPONSE: None.**

38.     All documents Defendant submitted to, or received from, any federal, state, county, or municipal agency, including the U.S. Equal Employment Opportunity Commission, related to this Action.

**RESPONSE: Objection, overly broad, seeks documentation that is not reasonably limited in scope, and potentially seeks privileged information under work product.**

39.     Salary and compensation information for male and female Associate attorneys at Defendant during the period January 1, 2021 to present.

**RESPONSE: Objection, compound, vague and ambiguous, seeks confidential data concerning Defendant's employees, and is not reasonably calculated to lead to the discovery of admissible evidence.**

40.     All disciplinary or corrective actions issued to all male and female Associate attorneys of Defendant during the period January 1, 2021 to present.

**RESPONSE: Objection, compound, vague and ambiguous, seeks confidential data concerning Defendant's employees, and is not reasonably calculated to lead to the discovery of admissible evidence.**

41.     The complete personnel file, excluding any medical information, of anyone who replaced Plaintiff.

**RESPONSE: Objection, seeks confidential data concerning Defendant's employees, and is not reasonably calculated to lead to the discovery of admissible evidence.**

42.     All witness statements obtained by Defendant concerning the allegations in this Action.

**RESPONSE: Objection, vague and ambiguous, overly broad, potentially seeks privileged information under work product and/or attorney-client, and not reasonably limited in time and scope.**

43.     The current resume or list of qualifications of any expert witness, advisor or consultant who has been retained by Defendant (or who Defendant anticipates retaining) in this Action.

**RESPONSE: Objection, premature as it is currently undetermined what experts will be expected to be retained, including but not limited to the subject matter as it relates to same.**

44.     All reports, studies, and other commentaries, formal or informal, of any expert witness, consultant or advisor who has been retained by Defendant (or who Defendant anticipates retaining) in this Action.

**RESPONSE: Objection, premature as it is currently undetermined what experts will be expected to be retained, including but not limited to the subject matter as it relates to same.**

45.     All documents showing a list of all individuals that were employed by Defendant or provided services to Defendant during the period January 1, 2021 through present.

**RESPONSE: Objection, vague and ambiguous, seeks confidential data concerning Defendant's employees, and is not reasonably calculated to lead to the discovery of admissible evidence.**

46.     A copy of any surveillance taken by, or requested by, Defendant of the Plaintiff.

**RESPONSE: None.**

47.     All documents reflecting Defendant's efforts to purchase Plaintiff's private/personal computer from a third-party.

**RESPONSE: None.**

48.     The results of any forensic search or examination obtained by Defendant concerning Plaintiff's private/personal computer.

**RESPONSE: None.**

49.     The results of any background, litigation, or social media searches obtained by Defendant concerning Plaintiff.

**RESPONSE: None.**

50.     All communications between Defendant and any third-party human resources consultant or Professional Employer Organization concerning Plaintiff or her claims.

**RESPONSE: None.**

51.     All documents reflecting the date(s) in which a litigation hold, or preservation of evidence notice, was issued to Defendant's employees concerning Plaintiff or her claims. *See Colonial BancGroup Inc. v. PriceWaterhouseCoopers LLP*, No. 2:11-CV-746-WKW, 2016 WL 9687001, at *4 (M.D. Ala. Jan. 22, 2016).

**RESPONSE: See all documents.**

52.     All documents reflecting the names and job titles of all employees or contractors of Defendant that were notified to preserve documents or information concerning Plaintiff or her claims. *Id.*

**RESPONSE: Objection, vague and ambiguous, seeks confidential data concerning Defendant's employees, potentially seeks privileged information under work product and/or attorney-client, and is not reasonably calculated to lead to the discovery of admissible evidence.**

53.     All documents reflecting the types of documents and files (including electronically stored information) that were subject to any litigation hold issued to Defendant's employees or contractors concerning Plaintiff or her claims.  *Id.*

**RESPONSE: See all documents.**

54.     All insurance policies which the Defendant may have insuring it against liability for any employment claims during the Relevant Period, including the claims asserted by Plaintiff in this Action.

**RESPONSE: None.**

55.     All "reservation of rights" letter and/or denial of coverage letter from the Defendant's insurer regarding this Action.

**RESPONSE: None.**

56.     All communications between Defendant and any insurance/claims adjuster or examiner concerning the claims or defenses asserted in this Action.

**RESPONSE: None.**

57.     All communications between Defendant and any client, contractor, vendor, or "Funder" concerning Plaintiff or her claims in this Action.

**RESPONSE: None.**

58.     All documents which Defendant contends support its affirmative defenses.

**RESPONSE: See all documents.**

59.     All documents identified in Defendant's answers to Plaintiff's First Set of Interrogatories.

**RESPONSE: Objection, vague and ambiguous, overly broad, and not reasonably limited in time and scope.  Subject to and without waiving any objections, see all documents.**

60.     All documents which relate to Plaintiff's claims or Defendant's defenses in this Action which have not been produced in response to another request for production.

**RESPONSE: Objection, vague and ambiguous, overly broad, and not reasonably limited in time and scope.  Subject to and without waiving any objections, see all documents.**

Dated: March 27, 2023                              Respectfully submitted,

                                                   /s/ Paul A. Hankin
                                                   **The Downs Law Group, P.A.**
                                                   3250 Mary Street, Suite 307
                                                   Coconut Grove, FL 33133
                                                   Tel: (305) 444-8226
                                                   Facsimile: (305) 444-6773
                                                   Jeremy D. Friedman, Esq.
                                                   Florida Bar # 134643
                                                   jfriedman@downslawgroup.com
                                                   Paul A. Hankin, Esq., LL.M.
                                                   Florida Bar # 125402
                                                   phankin@downslawgroup.com
                                                   *Attorneys for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on the 27th day of March 2023, the foregoing was electronically filed with the Florida Courts E-Filing Portal, which will serve it via electronic mail to all counsel of record.

                                                   /s/ Paul A. Hankin
                                                   Paul A. Hankin, Esq., LL.M.

12

# EXHIBIT C



April 7, 2023

**VIA ELECTRONIC MAIL**
Paul A. Hankin, Esq.
Jeremy D. Friedman, Esq.
The Downs Law Group, P.A.
3250 Mar Street, Suite 307
Coconut Grove, Florida 33133
Email: *phankin@downslawgroup.com*
Email: *jfriedman@downslawgroup.com*

Re:    **Conferral Regarding Defendant's Deficient Discovery Responses**
**Sabrina Boukheir v. The Downs Law Group, P.A.**
**Case No. 2022-022571-CA-01**

Dear Paul and Jeremy,

    This letter constitutes Plaintiff, Sabrina Boukheir's ("Plaintiff"), good faith attempt to confer regarding Defendant, The Downs Law Group, P.A.'s ("Defendant"), deficient responses to Plaintiff's First Set of Interrogatories and First Request for Production of Documents. Plaintiff requests that Defendant serve amended responses to Plaintiff's interrogatories and requests for production, as well as produce all responsive documents in Defendant's custody, possession, or control, on or before **April 14, 2023**, to obviate the need for motion practice.

## I.    Defendant's Boilerplate Objections

    In response to **every** interrogatory and to **many** requests for production, Defendant asserted boilerplate, and oftentimes nonsensical, objections to Plaintiff's discovery. Not only is this approach to discovery obstructionist and improper, but it contravenes the applicable rules and case law, particularly given that several of Plaintiff's discovery requests are form discovery that has been approved by the Florida Supreme Court. *See, e.g., First Healthcare Corp. d/b/a Boca Raton Rehabilitation Ctr. v. McClamma*, 740 So. 2d 1189, 1193 n. 1 (Fla. 4th DCA 1999) ("Each of these objections, stated baldly without particulars, is patently without merit . . . Such 'stonewalling tactics,' designed to delay making a timely response to valid discovery requests, constitute discovery abuse and should not be condoned.") (overruled on other grounds). This discovery tactic by Defendant is particularly shocking given that it is a law firm which, according to its website, has experienced civil litigators.

1



The Fourth District Court of Appeal further discussed the assertion by a party of boilerplate objections by using words such as "overly broad" and "burdensome":

> [S]uch words of art have little meaning without substantive support. Is this objection raised because petitioners would be required to produce a railroad boxcar full of documents, or are they merely objecting to the production of a half-inch thick file folder? Since the trial court has to consider petitioners' other objections, it is incumbent upon petitioners to quantify for the trial court the manner in which such discovery might be overly broad or burdensome. They must be able to show the volume of documents, or the number of man-hours required in their production, or some other quantitative factor that would make it so.

*First City Developments of Florida v. Hallmark of Hollywood Condo. Assoc.*, 545 So. 2d 502, 503 (Fla. 4th DCA 1989) (overruled on other grounds); *see also Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 695 (S.D. Fla. 2007) (holding that objections which state that a discovery request is vague or over broad are, by themselves, meaningless, and are deemed without merit). Here, Defendant failed to provide any detailed or particularized explanation as to how an interrogatory or request for production is allegedly overly broad, vague and ambiguous, or not reasonably calculated to lead to the discovery of admissible evidence.

Furthermore, on several occasions, Defendant objected to providing discovery responses on the grounds that Plaintiff is allegedly "seeking documentation that is already in her possession." Courts have expressly rejected this argument and found that "the fact that [a party's counsel] may already possess . . . some of the documents and information included in [his] discovery requests . . . does not excuse the [responding party's] failure to fully respond to the discovery requests." *Puccio v. Sclafani*, No. 12-61840-CIV, 2013 WL 4068782, at *2 (S.D. Fla. Aug. 12, 2013) (citing *Rivers v. Asplundh Tree Expert Co.*, No. 5:08cv61/RS/EMT, 2008 WL 5111300, at *4 (N.D. Fla. Dec. 3, 2008)).

Moreover, Defendant's objections that any of Plaintiff's discovery requests are unduly burdensome are improper absent a particularized explanation and/or given Defendant's failure to show any purported burden through an affidavit or declaration. *See Allstate Ins. Co. v. Boecher*, 733 So. 2d 993, 994 (Fla. 1999) (noting that the plaintiff provided no affidavit or declaration to support the claim for undue burden); *see also Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 695 (S.D. Fla. 2007) (holding that objections which state that a discovery request is vague, over broad, or unduly burdensome are, by themselves, meaningless, and are deemed without merit). Absent a particularized explanation and/or declaration or affidavit, Plaintiff's undue burden objections are meritless.

2



As for Defendant's confidentiality objections, Defendant appears to be using this naked objection to stonewall the discovery process. While Plaintiff understands the potential need to protect confidential information, Defendant has generally failed to provide any detailed or particularized explanation as to how an interrogatory or request for document is seeking any such confidential information. Thus, Defendant's objections are improper. To that end, to the extent Defendant genuinely believes various documents and information are confidential, please send a proposed Confidentiality Stipulation for review.

Moreover, many of Defendant's objections are nonsensical and flatly improper. For example, an objection that an interrogatory is a "compound" is not a proper objection and quite frankly, it is shocking that it was asserted by a defendant, especially a law firm.

Finally, on several occasions, Defendant asserted an attorney-client privilege or work-product objection. The Florida Rules are clear that in order to assert such an objection, a log must be produced with the responses. Because Defendant failed to provide a privilege log, it has waived the privilege. *See Kaye Scholer LLP v. Zalis*, 878 So. 2d 447, 449 (Fla. 3d DCA 2004) ("Failure to comply with the requirements of Rule 1.280(b)(5) results in the waiver of any attorney-client and work-product privileges.").

Therefore, Plaintiff requests that Defendant immediately withdraw its objections and serve amended discovery responses without objections.

## II.     Defendant's Improper Responses to Plaintiff's First Set of Interrogatories to Defendant

### 1.     Interrogatory Nos. 1, 3, 6–8, 11

In addition to Defendant's boilerplate objections, Defendant provided incomplete responses to these interrogatories. As discussed above, this practice is improper and leaves Plaintiff guessing as to what information is actually being withheld. Furthermore, the information requested in these interrogatories is clearly relevant to the claims or defenses at issue in this case and is reasonably limited in time and scope. Please amend the responses accordingly.

### 2.     Interrogatory 1

In addition to Defendant's boilerplate objections, noted above, Defendant's limited response is incomplete in that it does not identify who supplied the information used in answering the interrogatories nor does it identify their relationship to Defendant. Defendant's intentionally vague answer that "Defendant" provided the information is clearly intended to hide information. Please amend the response accordingly.

Office: 305.507.8506 | Fax: 305.760.4722 | www.btattorneys.com
3050 Biscayne Blvd., Suite 205, Miami, Florida 33137



**3. Interrogatory Nos. 2, 4**

Defendant's assertion of boilerplate objections to these interrogatories are particularly troubling given that they are Form interrogatories and candidly, the most basic type of interrogatory. For Defendant to claim that the name and relevant information possessed by individuals "is not reasonably calculated to lead to the discovery of admissible evidence" is baseless as even the Florida Supreme Court acknowledges that these interrogatories seek relevant information in a litigation. Further, Interrogatory No. 2 is limited to those with knowledge about the claims or defenses and therefore, it belies logic that Defendant claimed the interrogatory is "not reasonably limited in time and scope," particularly given Plaintiff's short employment history. Further, the assertion that the interrogatory is "vague and ambiguous" is disingenuous as the interrogatory was approved by the Florida Supreme Court.

Defendant failed to provide any information in response to these Florida Supreme Court approved interrogatories. Plaintiff is entitled to this clearly relevant information so that she can conduct further discovery. *See Surf Drugs, Inc. v. Vermette*, 236 So. 2d I 08, 113 (Fla. 1970) ("We hold, therefore, that a party may be required to . . . divulge names and addresses of any person having relevant information as well as to indicate generally the type of information held by the person listed"); *Cunningham v. Anchor Hocking Corp.*, 558 So. 2d 93, 100 (Fla. 1st DCA 1990) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party, including the . . . identity and location of persons having knowledge of any discoverable matter").

Further, as to Interrogatory No. 4, to the extent signed statements, affidavits, or declarations exist, even if "obtained" by counsel, they would not be privileged and must be identified. This is a basic legal principle. Please amend the responses accordingly.

**4. Interrogatory No. 5**

Defendant did not provide the factual basis for any of its asserted affirmative defenses. Rather, Defendant improperly responded to this form interrogatory that "each affirmative defense raised by Defendant speaks for itself." Courts routinely require defendants to provide factual support for affirmative defenses. Please amend accordingly.

**5. Interrogatory No. 7**

In response to Interrogatory No. 7, Defendant claimed that it distributed Plaintiff's 12 cases to 7 attorneys, yet failed to provide all the requested information, including his/her name,

4



compensation information, and a description of his/her employment responsibilities. Please amend accordingly.

6. <u>**Interrogatory No. 8**</u>

In response to Interrogatory No. 8, Defendant failed to respond to nearly all the information requested and chose to write whatever it wanted. The information sought is clearly relevant and Defendant cannot refuse to answer an interrogatory because, for example, the individuals who made the termination decision did so for discriminatory and retaliatory reasons. Please amend accordingly.

7. <u>**Interrogatory No. 9**</u>

Other than boilerplate objections, Defendant failed to provide any responsive information sought in this interrogatory. The information sought is clearly relevant to the claims and defenses at issue in this case. Further, Defendant's complaint about a lack of temporal scope is not well founded given that Plaintiff had a limited employment period and any complaints made by Plaintiff concerning the identified topics would be relevant regardless of when they were made during her employment, particularly during the time periods identified in the Complaint.

8 <u>**Interrogatory No. 10**</u>

Again, the information sought in this interrogatory is clearly relevant to the claims and defenses at issue in this case and is limited in time and scope, despite Defendant's boilerplate objections. Further, the information sought in this interrogatory is commonly sought in employment matters, and the requested information is not confidential. As such, Defendant's objections should be withdrawn and a clear answer should be provided.

9. <u>**Verification Page**</u>

Defendant failed to verify its responses to Plaintiff's First Set of Interrogatories. Defendant's representative is required to swear to the truth of the answers under penalty of perjury. Again, a basic legal principle which Defendant, as a law firm, should be clearly aware of.  Defendant must properly certify its responses under oath and then send the verification page to us.

5



### III.   Defendant's Failure to Respond to Plaintiff's First Request for Production of Documents to Defendant and Deficient Document Production

#### 1.     Defendant's Document Production

Even though Defendant had 60 days to respond to Plaintiff's discovery requests and produce responsive documents, Defendant has still failed to produce a single sheet of paper. In a footnote, Defendant claimed that "[a]ll documents response [*sic*] to the Requests for Production will be produced through a Dropbox electronically." This was an inaccurate statement. Plaintiff followed up and still has not received Defendant's document production which must include electronically stored information. Defendant must produce all responsive documents without further delay.

#### 2.     Request Nos. 1–2, 6–16, 18, 21–24, 31–36, 51, 53, 58–60

In response to these requests, Defendant stated, "see all documents." However, not only did Defendant not produce any responsive documents (as noted above), Defendant failed to indicate what documents are responsive to which requests. Please amend and clarify the responses accordingly.

#### 3.     Request Nos. 3, 19–20, 25, 27, 39–42, 45, 52

In addition to Defendant's boilerplate objections, Defendant's failure to produce documents in response to these requests is improper as each of these requests relates to the claims or defenses at issue in this case. Defendant must produce documents within its custody, possession, or control. Please amend the responses accordingly.

### IV.   Plaintiff's Request for Deposition Dates – 2ND Conferral Attempt

On January 31, 2023, Plaintiff requested dates to take the following depositions in the following order: (1) Samandha Canepa; (2) Alfredo Mesa; (3) David Durkee; and (4) Craig Downs. Plaintiff proposed specific dates for these depositions and on February 9, you (Jeremy) wrote that "I will get back to you on this as I need to see if another matter is going forward during this time." We have yet to hear from your office about deposition dates. Given your prior comments about trial calendars, we ask that you please provide dates in May 2023 when your office and the witnesses are available for these depositions.

6



\*       \*       \*

We look forward to receiving Defendant's amended responses and document production as outlined herein. Thank you.

Very truly yours,
BT Law Group, PLLC

*Jason D. Berkowitz*

Anisley Tarragona, Esq.
Jason D. Berkowitz, Esq.

7

# EXHIBIT D



April 14, 2023

**VIA ELECTRONIC MAIL**
Paul A. Hankin, Esq.
Jeremy D. Friedman, Esq.
The Downs Law Group, P.A.
3250 Mary Street, Suite 307
Coconut Grove, Florida 33133
Email: *phankin@downslawgroup.com*
Email: *jfriedman@downslawgroup.com*

Re:     **Second    Conferral    Regarding    Defendant's
Deficient Discovery Responses
Sabrina Boukheir v. The Downs Law Group, P.A.
Case No. 2022-022571-CA-01**

Dear Paul and Jeremy,

This letter constitutes Plaintiff, Sabrina Boukheir's ("Plaintiff"), <u>second</u> good faith attempt to confer regarding Defendant, The Downs Law Group, P.A.'s ("Defendant"), deficient document production to Plaintiff's First Request for Production of Documents. Plaintiff requests that Defendant serve amended responses to Plaintiff's requests for production, as well as produce all responsive <u>and</u> complete documents in Defendant's custody, possession, or control, on or before **April 21, 2023**, to obviate the need for motion practice.

**I.      Defendant's Deficient Document Production**

**1.      Defendant Failed to Comply With the Rules**

In the instances where Defendant produced responsive documents, Defendant failed to comply with the Florida Rules of Civil Procedure in that it did not "identify them to correspond with the categories in the request" as required by the Rules. *See* Fla. R. Civ. P. 1.350(b). Not only did Defendant not indicate what documents are responsive to which request, but as written, the responses leave Plaintiff guessing as to whether Defendant produced all responsive documents or whether it will be producing additional documents in the future. Please amend the responses accordingly.

**2.      Defendant Ignored BT Law Group's ESI Memorandum**

To facilitate the production of electronically stored information ("ESI"), Plaintiff sent

1



Defendant a detailed ESI Memorandum with her First Requests for Production, which contained search terms, proposed a relevant time period, and identified key custodians. Defendant, however, appears to have ignored this ESI Memorandum altogether and cherry-picked ESI it wanted to produce. That is not proper. In its responses to Plaintiff's First Requests for Production, Defendant did not raise any particularized objection to the ESI Memorandum or its contents. Rather, in responding to several requests for ESI, Defendant simply responded, "[s]ee all documents" without any indication that Defendant ran a single search to identify potentially responsive ESI. *See, e.g.*, Requests Nos. 6, 18, 31, 33, 53.

As Defendant well knows, discovery of relevant, non-privileged ESI is common and broadly permitted under the Florida Rules of Civil Procedure. *See* Fla. R. Civ. P. 1.350(a)–(b); *see also In re Seroquel Prods. Liab. Litig.*, 244 F.R.D. 650, 662 (M.D. Fla. 2007) (recommending sanctions against defendant for its "purposely sluggish" production to plaintiffs and confirming that "key word searching is a recognized method to winnow relevant documents from large repositories," and also that the "use of this technique must be a cooperative and informed process."); *Cmty. Bank of Fla. v. Vilarino*, No. 10-11257 CA 09, 2013 Fla. Cir. LEXIS 14234 (11th Jud. Cir. Dec. 24, 2013) (ordering defendant to perform a search for responsive documents using agreed upon search terms for an agreed upon period). Plaintiff's requests seek ESI that is clearly relevant to the claims and defenses at issue in this case. Thus, to ensure that all relevant and responsive ESI is gathered, Plaintiff requests that Defendant run all searches set forth in the ESI Memorandum and produce all responsive ESI without further delay.

### 3. <u>Defendant's Production of Emails</u>

In Defendant's document production, Defendant produced select emails. *See, e.g.*, DLG00006–DLG00020, DLG00035, DLG00102–DLG00107, DLG00171–DLG00174. However, the emails included in Defendant's production were not organized in a way that Plaintiff can determine with any certainty whether complete email threads, including attachments, have been fully produced and/or whether portions have been withheld. Defendant is required to produce all relevant and responsive emails, including complete email threads and attachments, in native format in Defendant's custody, possession, or control.

### 4. <u>Request Nos. 16, 21–23, 34–35, 51, 53</u>

Defendant indicated in its written responses that it produced documents responsive to these requests. However, no such documents were produced. Specifically, Plaintiff requested documents regarding Ms. Canepa's investigation referenced in Defendant's Answer and Affirmative Defenses to the Complaint at Paragraph 27 (Request No. 16), all plan documents for benefits and actual benefits that Plaintiff was receiving during the relevant period (Request Nos. 21–22), job description(s) for positions held by Plaintiff during her employment with Defendant (Request No.

2



23), documents reflecting dates of employment and compensation for Bella Simental and Sheyanne Sullivan (Request Nos. 34–35), and documents reflecting Defendant's issuance of any litigation hold and/or preservation notice in this case (Request Nos. 51, 53). Defendant must produce all responsive documents in its care, custody, or control, especially those that it claimed were produced. To the extent Defendant believes it produced documents responsive to these requests, Defendant should identify which documents are responsive to which requests as indicated in Fla. R. Civ. P. 1.350(b).

*     *     *

We look forward to receiving Defendant's amended responses and document production as outlined herein. Thank you.

Very truly yours,
BT Law Group, PLLC

*Jason D. Berkowitz*

Jason D. Berkowitz, Esq.
Anisley Tarragona, Esq.

3

# EXHIBIT E

**Subject:**   Boukheir v. DLG - Third Conferral

**Date:**   Friday, April 14, 2023 at 6:09:27 PM Eastern Daylight Time

**From:**   Jason Berkowitz

**To:**   Paul A. Hankin, ESQ., LL.M., Jeremy D. Friedman

**CC:**   Anisley Tarragona

**Attachments:**  image001.png, DLG's Privilege Log.pdf

Good afternoon, Paul and Jeremy,

Plaintiff is in receipt of DLG's privilege log which was filed by DLG today. The attached privilege log does not comply with Fla. R. Civ. P. 1.280 ((b)(6) ("When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and **shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection**.") (emphasis added). DLG did not provide all of the required information for any of the items listed on the log. Please provide an amended log by **Friday, April 21, 2023**.

Regards,

**Jason D. Berkowitz**

Attorney at Law

Address:  3050 Biscayne Blvd., Suite 205
         Miami, FL 33137
Direct:   (305) 507-8516
Main:     (305) 507-8506
Fax:      (305) 760-4722
Email:    jason@btattorneys.com
Website:  www.btattorneys.com

The information contained in this email, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and/or privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient and have received this communication in error, please contact the sender by reply email and destroy all copies of the email. Thank you.

# EXHIBIT F

**MEMORANDUM**

| | |
|---|---|
| **TO:** | The Downs Law Group, P.A. ("Defendant") |
| **FROM:** | BT Law Group, PLLC |
| **DATE:** | January 25, 2023 |
| **RE:** | Search Terms and Custodians |

---

**Proposed Time Period and Searches**[1]

Time Period: January 1, 2022 to June 30, 2022

1.  (Sabrina OR Boukheir OR SB) **AND** (terminat! OR discharg! OR fir! OR separat! OR perform! OR qualif! OR complain! OR report! OR discrim! OR retal! OR unequal OR pay OR comp! OR disciplin! OR counsel! OR write up OR correct! OR side OR special OR project! OR eval! OR rais! OR comparab! OR recruit! OR refer! OR camera OR increas! OR salary OR bonus OR 90-day! OR boys club OR dep! OR imac OR mac! OR desktop OR "target list" OR tracker OR volunteer! OR attendance)

2.  All text messages, WhatsApp messages, Microsoft Teams Messages, and Google Hangouts between Plaintiff and Samandha Canepa

3.  All text messages, WhatsApp messages, Microsoft Teams Messages, and Google Hangouts between Plaintiff and David Durkee

4.  All text messages, WhatsApp messages, Microsoft Teams Messages, and Google Hangouts between Plaintiff and Craig Downs

5.  All text messages, WhatsApp messages, Microsoft Teams Messages, and Google Hangouts between Plaintiff and Alfredo Mesa

---

[1]   Plaintiff reserves her right to amend the search terms if she learns any new information in discovery. Recognizing the objective is for Defendant to produce all non-privileged and responsive documents in its possession, custody, and control, Plaintiff expects Defendant to participate in this process and include search terms that it knows to be appropriate. The proposed terms are not case-sensitive and Plaintiff is operating under the assumption that Defendant's searches will return hits regardless of capitalized terms. In addition, Plaintiff specifically excludes any privileged communications from her request.



**Proposed Custodians**

Sabrina Boukheir
Samandha Canepa
Craig Downs
Jason Clark
David Durkee
Dylan Boigris
Jason Larey
Laura Pereira
Sara Mancini
Alfredo Mesa

**Accounts to Search**

Business email accounts
Text messages on cell phones used for business, including any messaging apps such as WhatsApp or Slack
Microsoft Teams accounts

# EXHIBIT G

IN THE COUNTY COURT FOR THE ELEVENTH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

SABRINA BOUKHEIR,

        Plaintiff,

CASE NO.: 2022-022571-CA-01

vs.

THE DOWNS LAW GROUP, P.A.,

        Defendant.

_____/

## **DEFENDANT'S PRIVILEGE LOG**

    **COMES NOW**, Defendant, The Downs Law Group, P.A., by and through its undersigned counsel, and pursuant to the Florida Rules of Civil Procedure, hereby files this, its Privilege Log of items not produced in response to Plaintiff's First Request for Production to Defendant, dated January 25, 2023, and in support, states as follows:

| Date | Basis for Privilege | Description[1] |
|------|---------------------|---------------|
| 01/07/2022 | Attorney-client email communications | AC/WP |
| 02/05/2022 | Attorney-client email communications | AC/WP |
| 02/07/2022 | Attorney-client email communications | AC/WP |
| 04/18/2022 | Attorney-client email communications | AC/WP |
| 05/04/2022 | Attorney-client email communications | AC/WP |
| 05/06/2022 | Attorney-client email communications | AC/WP |
| 05/06/2022 | Attorney-client email communications | AC/WP |
| 05/06/2022 | Attorney-client email communications | AC/WP |
| 05/06/2022 | Attorney-client email communications | AC/WP |
| 05/06/2022 | Attorney-client email communications | AC/WP |
| 05/06/2022 | Attorney-client email communications | AC/WP |
| 05/07/2022 | Attorney-client email communications | AC/WP |
| 05/07/2022 | Attorney-client email communications | AC/WP |
| 05/26/2022 | Attorney-client email communications | AC/WP |
| 07/13/2022 | Attorney-client communications | AC/WP |
| 12/09/2022 | Attorney-client email communications | AC/WP |
| 12/09/2022 | Attorney-client email communications | AC/WP |
| 12/09/2022 | Attorney-client email communications | AC/WP |

[1] "AC" means Attorney-Client Privilege.  "WP" means Work Product.

| | | |
|---|---|---|
| 01/26/2023 | Attorney-client email communications | AC/WP |
| 01/26/2023 | Attorney-client email communications | AC/WP |
| 01/31/2023 | Attorney-client email communications | AC/WP |
| 02/02/2023 | Attorney-client email communications | AC/WP |

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on the 14th day of April 2023, the foregoing was electronically

filed with the Florida Courts E-Filing Portal, which will serve it via electronic mail to all counsel

of record.

/s/ Paul A. Hankin
**The Downs Law Group, P.A.**
3250 Mary Street, Suite 307
Coconut Grove, FL 33133
Tel: (305) 444-8226
Facsimile: (305) 444-6773
Jeremy D. Friedman, Esq.
Florida Bar # 134643
jfriedman@downslawgroup.com
Paul A. Hankin, Esq., LL.M.
Florida Bar # 125402
phankin@downslawgroup.com
*Attorneys for Defendant*

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

**CIRCUIT CIVIL DIVISION**

**CASE NO.: 2022-022571-CA-01**

**SECTION:**          **CA31**

**Sabrina Boukheir**
**Plaintiff(s),**

**vs.**

**Downs Law Group, P.A. (The)**
**Defendant(s)**

_____/

**ZOOM/VIRTUAL**
**NOTICE OF SPECIAL SET HEARING**

**Plaintiff's Motion to Compel Better Responses to Plaintiff's First Set of Interrogatories
and First Request for Production of Documents to Defendant**

      **YOU ARE HEREBY NOTIFIED** that, a Special Set hearing on the above cause is scheduled for _____**30 min**_____ on _____**07-27-2023 at 11:00 AM**_____ in Room   Virtual courtroom.

Virtual Court is held remotely on the Zoom platform. You will receive an email from the Court with the information you need to connect to your event by video or phone if you are on the E-Filing Portal service list.  If you do not receive an email, check the judge's webpage for the Zoom link to their virtual courtroom or further instructions. You may also register for text notification via link https://cmap.jud11.flcourts.org/ebench/textNotificationsRegistration.jsp.

IT IS THE RESPONSIBILITY OF THE SCHEDULER TO PROVIDE TIMELY NOTICE OF THE ZOOM MEETING DETAILS TO ANY PARTY NOT REGISTERED ON THE E-FILING SERVICE PORTAL.

CERTIFICATE OF SERVICE

A true and correct copy of the above notice was delivered to the parties below on _____**05-08-2023**_____.

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174, Fax (305) 349-7355, Email: ADA@jud11.flcourts.org at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711.**

Copies Furnished to:
Electronically Served

Paul Hankin, phankin@downslawgroup.com
Paul Hankin, fzafe@downslawgroup.com
Jason D Berkowitz, jason@btattorneys.com
Jason D Berkowitz, anisley@btattorneys.com
Jeremy D. Friedman, jfriedman@downslawgroup.com
Jeremy D. Friedman, fzafe@downslawgroup.com
Jeremy D. Friedman, phankin@downslawgroup.com
Anisley Tarragona, anisley@btattorneys.com
Anisley Tarragona, jason@btattorneys.com

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: <u>2022-022571-CA-01</u>
SECTION: <u>CA31</u>
JUDGE: <u>Migna Sanchez-Llorens</u>

**Sabrina Boukheir**

Plaintiff(s)

vs.

**Downs Law Group, P.A. (The)**

Defendant(s)

_____ /

<u>**SCHEDULING ORDER**</u>

**THIS CAUSE** came before the Court on case management review.  Based on the review of the file, and pursuant to Rule 2.545, Fla. R. Jud. Admin., the Court has established an initial case management plan, it is hereby,

     **ORDERED** and **ADJUDGED** as follows:

1. **The dates on this Scheduling Order shall supersede dates generated by the trial order.**

2. **UPON THE COURT'S SIGNING OF THE SCHEDULING ORDER, COUNSEL SHALL ADD THE CASE TO THE AGREED UPON CALENDAR CALL DATE ON COURTMAP.**

3. **Case Management Plan:** The parties shall comply with the Case Management Plan (Plan) attached, until further order of court.  The parties shall strictly comply with the Plan and should expect that the case will be tried during the trial period specified therein, without continuances.  The parties cannot agree to extend the deadlines in the Plan and cannot agree to waive any portion of the Plan provisions.

4. **Procedural Requirements:** In addition to strict adherence to the Florida Rules of Civil Procedure and the Administrative Orders of the Court, the parties shall comply with the Case Management Procedures attached to this order.   The parties may not unilaterally extend any of the deadlines contained in the Case Management Procedures.  Deadlines may be altered by the Court where the interests of justice so requires, upon prompt motion, notice and hearing.

**CASE MANAGEMENT PLAN**

**Calendar Call Date: September 27, 2024**

**Number of Trial Days Requested:** 4

**Deadline for Propounding Requests for Production,**

**Requests to Admit and Interrogatories:**

December 22, 2023

**Deadline for Scheduling and Setting**

**Depositions for Fact Witnesses:**

February 23, 2024

**Deadline for Scheduling and Setting Depositions**

**for Expert Witnesses:  March 15, 2024**

**Deadline for Witness and Exhibit List:**   July 26, 2024

**Deadline for Expert Disclosure: (Parties shall furnish**

**opposing counsel with the names and addresses**

**of all expert witnesses under Rule 1.390(a) to be called**

**at trial and all information regarding expert testimony**

**that is required by Rule 1.280(b)(5). Each party is limited**

**to one expert per specialty. No other expert testimony**

**shall be permitted at trial. Information furnished pursuant**

**to this paragraph shall be timely filed with the Clerk of Courts):  FEBRUARY 19, 2024**

**Plaintiff Expert Witnesses (with reports) Designated by**: April 19, 2024

**Defendant Expert Witnesses (with reports) Designated by**: May 3, 2024

**Third Party Defendant Expert Witnesses (with reports) Designated by**: May 10, 2024

**Rebuttal Reports Due:** May 24, 2024

**Expert Depos shall be completed by:** March 15, 2024

**Dispositive & Daubert Motions shall be filed by**: May 24, 2024

**Motions in Limine shall be filed by:** June 7, 2024

**Deadline for Inspections/Examinations:** December 22, 2023

**Deadline for Discovery Completion (Including Depositions):** March 1, 2024

**Deadline for Dispositive Motions**: May 24, 2024

**Deadline for Jury Instructions**: August 30, 2024

**Deadline for ADR/Mediation**: March 15, 2024

**Deadline for Submitting Trial Readiness Certification with**

**Proposed Jury Instructions on CourtMAP with a copy to Chambers**: August 30, 2024

**Pre-Trial Conference**: The Court will provide dates at the Calendar Call

**Notice of Trial Date; Week Period Week Period**: three week tiral period commencing Trial period beginning **September 30, 2024- OCTOBER  18, 2024**


## CASE MANAGEMENT PROCEDURE

## MOTION PRACTICE

1. **Duty to Communicate:**  Prior to filing any motion, counsel have a duty to confer with each other directly in good faith, *not through staff*, to attempt to narrow or resolve issues. "In good faith" means you are professional and temperate in your communications, you return phone calls and emails in a timely manner, and you do not set unreasonable deadlines for responses.

2. **Scheduling of Hearings:**  Motions filed (other than dispositive motions or those requiring testimony) must be noticed for hearing on the first available motion calendar.  Motions not promptly set for hearing may be ruled upon by the Court on the papers.

3. **Compelling Discovery:**  The parties are to comply with Administrative Order 06-09 when moving to compel production of propounded discovery.  These motions shall be submitted via the e-portal to the "proposed order" folder and are not be placed on calendar.

4. **Motions for Protective Order:**  Motions for protective order must be filed as soon as the grounds are known.  Counsel should be coordinating deposition dates for specific parties/witnesses and have a duty to confer regarding any issues that would be the subject of

a motion for protective order prior to scheduling the deposition.   The filing of the motion must not be delayed until immediately prior to the scheduled deposition.  A motion for protective order does not automatically stay the deposition and the deposition shall proceed unless an order granting the motion is entered by the Court.

5. **Dispositive Motions:** Motions which may dispose of specific issues, portions of the case or the entire case should be filed and set for hearing as soon as possible.  Parties wishing to pursue a dispositive motion should target the essential discovery promptly.  Parties should confer to assure necessary discovery is scheduled to be completed and will be completed prior to a special set hearing date.  Last minute cancellations are disfavored.   **ALL MOTIONS MUST BE FILED 60 DAYS PRIOR TO CALENDAR CALL AND ATTORNEYS MUST ENSURE THAT ALL MOTIONS ARE SET ON THE COURT'S CALENDAR AT LEAST THREE (3) WEEKS PRIOR TO TRIAL.**

6. **Amendment of Pleadings:** Motions to amend should be filed so as not to affect the date of trial.  Although the Court recognizes the rule of liberality with regard to amendment of pleadings, liberality declines with an approaching trial date unless the amendment involves newly discovered information not previously available. Review your pleadings for necessary amendment(s) early, not as part of last minute trial preparation.

## DISCOVERY

7. **Written Discovery shall be propounded promptly:**

a. **Objections:** If objections to written discovery involve the phrasing of the request or time frame of any discovery request, these objections may not be extended (even if the parties agree) and are due at the time the initial response is due.  Failure to timely make these objections, constitutes a waiver.   Parties shall comply with the "Duty to Communicate" above, prior to setting timely made objections for hearing.

b. **Documents made available for inspection and copying:** If discovery responses provide that the documents are available for inspection and copying at a mutually convenient time and place, the responding party shall immediately (within 48 hours) provide three alternative dates and times that the documents are available for inspection and copying.  All of the dates shall be within ten (10) days.  Failure to provide the dates and times shall constitute a failure to respond to discovery.  Review shall occur within fifteen (15) days of the response, absent extraordinary circumstances. Examples of "extraordinary circumstances" include a sole practitioner in trial on another case, a medical emergency, prepaid vacation, and a death in the family.

c. **Privilege Logs:** Privilege logs are due at the time of the response, and may not be reserved to be provided later.  Privilege logs must specifically identify the document in accordance

with Rule 1.280(b)(6), Fla.R.Civ.P.

Failure to timely provide the privilege log may result in the waiver of the privilege. This procedure requires preparation of a privilege log with respect to all documents, electronically stored information, things and oral communications withheld on the basis of a claim of privilege or work product except the following: written and oral communications between a party and their counsel after commencement of the action and work product material created after commencement of the action.

Parties are instructed that where they believe that the divulgence of the logging information would necessarily cause disclosure of the allegedly privileged information, they must identify that the item exists and that in *in camera* review by the court will be sought. The item may be described generically. However, if the Court determines that there is nothing inherent in the divulgence of the existence of the document or the logging information required that would violate privilege, the Court will impose sanctions for any *in camera* request determined to be frivolous. *In camera* requests by the party claiming the privilege must be signed by both the requesting attorney and the client, so as to assure that all are aware of the request and the consequences.

8. **Depositions:** The parties are ordered to block time now for necessary depositions to be set in this case. Depositions may commence at any time. Refer to paragraph 4 above regarding motions for protective order.

## WITNESS AND EXHIBIT LISTS

9. **Witness and Exhibit Lists:** The parties shall timely exchange their witness and exhibit lists. The lists shall include complete proper names and addresses. If counsel chooses to list their bar address as the witness' address, counsel is deemed to have agreed to produce the witness voluntarily as they have withheld the information necessary for a witness subpoena, and counsel will be responsible for assuring that witness' presence at trial.

## MEDIATION

10. **Mediation:** Parties must mediate by the Court's deadline. The parties are responsible for assuring that they have all the necessary information to value their position prior to mediation. If the parties fail to mediate before the mediation deadline, sanctions shall be imposed by the Court. Failure to timely mediate shall not constitute just cause for a trial continuance.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>8th day of May, 2023</u>.

<u>2022-022571-CA-01 05-08-2023 6:34 PM</u>
Hon. Migna Sanchez-Llorens

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
Anisley Tarragona, anisley@btattorneys.com
Anisley Tarragona, jason@btattorneys.com
Jason D Berkowitz, jason@btattorneys.com
Jason D Berkowitz, anisley@btattorneys.com
Jeremy D. Friedman, jfriedman@downslawgroup.com
Jeremy D. Friedman, fzafe@downslawgroup.com
Jeremy D. Friedman, phankin@downslawgroup.com
Paul Hankin, phankin@downslawgroup.com
Paul Hankin, fzafe@downslawgroup.com


**Physically Served:**

IN THE COUNTY COURT FOR THE ELEVENTH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

SABRINA BOUKHEIR,

           Plaintiff,                   CASE NO.: 2022-022571-CA-01

vs.

THE DOWNS LAW GROUP, P.A.,

           Defendant.

_____/

## **DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF**

COMES NOW, Defendant, The Downs Law Group, P.A., by and through its undersigned counsel, pursuant to Florida Rule of Civil Procedure 1.350, and the definitions and instructions below, hereby requests Plaintiff, Sabrina Boukheir, to produce at the office of the undersigned, for inspection and/or copying, within thirty (30) days of service of this Request, the following:

## **DEFINITIONS AND INSTRUCTIONS**

A.      The term "Plaintiff" as used herein shall mean Plaintiff, Sabrina Boukheir, including but not limited to any affiliates, agents, children, employees, and all other persons acting or purporting to act on behalf of Plaintiff, Sabrina Boukheir.

B.      The term "Defendant" as used herein shall mean Defendant, The Downs Law Group, P.A., including but not limited to any affiliates, agents, employees, and all other persons acting or purporting to act on behalf of Defendant, The Downs Law Group, P.A.

C.      The word "document" or "documents" as used herein shall mean documents, including electronically stored information, writings, drawings, graphs, charts, photographs, phono-records, and other data compilations from which information can be obtained, translated, if

1

necessary, by the party to whom the request is directed through detection devices into reasonably usable form.

D.     Electronically stored information: (1) all text messages shall be produced in PDF format; and (2) all emails shall be produced in native format.

E.     If any form of privilege and/or other protection from disclosure is claimed as a ground for withholding documents responsive and/or information contained within a document and/or communication, You must identify such information, document, and/or communication with sufficient particularity to allow such matter to be brought before this Court, including but not limited to the date, title, identity of the author, subject matter (without revealing the information for which such the privileged is claimed), all facts upon which Your claim of privilege is based, as well as the nature of the privilege(s) asserted.  Moreover, the documents required to be submitted in response hereto shall be segregated and identified as to the request(s) to which it is primarily responsive.  If any portion of a document is responsive, the entire document must be remitted. Documents supplied in response to one request need not also be supplied in response to any subsequent request, provided the request to which the document is primarily responsive is identified,

F.     You must produce all documents within your care, custody, or control that are responsive to any of these requests.

G.     All documents produced pursuant hereto are to be produced so as to correspond with the categories of each numbered request below.

H.     Unless otherwise specified herein, the time frame for each request is from and including January 1, 2021 to the present.

I.      These discovery requests are continuing in nature and require You to provide supplemental documents and/or information promptly in the event that You obtain and/or find documents responsive and/or information that was not previously produced.

## **REQUEST FOR PRODUCTION OF DOCUMENTS**

1.      Copies of all charges filed by Plaintiff with the U.S. Equal Employment Opportunity Commission related to any of the allegations set forth in the Complaint.

2.      Any and all documents Plaintiff received from the U.S. Equal Employment Opportunity Commission concerning Defendant between January 1, 2021 through the present.

3.      Copies of all charges filed by Plaintiff with the Florida Commission on Human Relations related to any of the allegations set forth in the Complaint.

4.      Any and all documents Plaintiff received from the Florida Commission on Human Relations concerning Defendant between January 1, 2021 through the present.

Dated: May 16, 2023                     Respectfully submitted,

/s/ Paul A. Hankin
**The Downs Law Group, P.A.**
3250 Mary Street, Suite 307
Coconut Grove, FL 33133
Tel: (305) 444-8226
Facsimile: (305) 444-6773
Jeremy D. Friedman, Esq.
Florida Bar # 134643
jfriedman@downslawgroup.com
Paul A. Hankin, Esq., LL.M.
Florida Bar # 125402
phankin@downslawgroup.com
*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on the 16th day of May 2023, the foregoing was electronically

filed with the Florida Courts E-Filing Portal, which will serve it via electronic mail to all counsel

of record.

/s/ Paul A. Hankin
Paul A. Hankin, Esq., LL.M.

IN THE COUNTY COURT FOR THE ELEVENTH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

SABRINA BOUKHEIR,

        Plaintiff,               CASE NO.: 2022-022571-CA-01

vs.

THE DOWNS LAW GROUP, P.A.,

        Defendant.

_____/

## DEFENDANT'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF

COMES NOW, Defendant, The Downs Law Group, P.A., by and through its undersigned counsel, pursuant to Florida Rule of Civil Procedure 1.350, and the definitions and instructions below, hereby requests Plaintiff, Sabrina Boukheir, to produce at the office of the undersigned, for inspection and/or copying, within thirty (30) days of service of this Request, the following:

## DEFINITIONS AND INSTRUCTIONS

A. The term "Plaintiff" as used herein shall mean Plaintiff, Sabrina Boukheir, including but not limited to any affiliates, agents, children, employees, and all other persons acting or purporting to act on behalf of Plaintiff, Sabrina Boukheir.

B. The term "Defendant" as used herein shall mean Defendant, The Downs Law Group, P.A., including but not limited to any affiliates, agents, employees, and all other persons acting or purporting to act on behalf of Defendant, The Downs Law Group, P.A.

C. The word "document" or "documents" as used herein shall mean documents, including electronically stored information, writings, drawings, graphs, charts, photographs, phono-records, and other data compilations from which information can be obtained, translated, if

1

necessary, by the party to whom the request is directed through detection devices into reasonably usable form.

D.      Electronically stored information: (1) all text messages shall be produced in PDF format; and (2) all emails shall be produced in native format.

E.      If any form of privilege and/or other protection from disclosure is claimed as a ground for withholding documents responsive and/or information contained within a document and/or communication, You must identify such information, document, and/or communication with sufficient particularity to allow such matter to be brought before this Court, including but not limited to the date, title, identity of the author, subject matter (without revealing the information for which such the privileged is claimed), all facts upon which Your claim of privilege is based, as well as the nature of the privilege(s) asserted. Moreover, the documents required to be submitted in response hereto shall be segregated and identified as to the request(s) to which it is primarily responsive. If any portion of a document is responsive, the entire document must be remitted. Documents supplied in response to one request need not also be supplied in response to any subsequent request, provided the request to which the document is primarily responsive is identified,

F.      You must produce all documents within your care, custody, or control that are responsive to any of these requests.

G.      All documents produced pursuant hereto are to be produced so as to correspond with the categories of each numbered request below.

H.      Unless otherwise specified herein, the time frame for each request is from and including January 1, 2021 to the present.

I.      These discovery requests are continuing in nature and require You to provide supplemental documents and/or information promptly in the event that You obtain and/or find documents responsive and/or information that was not previously produced.

### REQUEST FOR PRODUCTION OF DOCUMENTS

1.      Any and all communications and/or correspondence, including but not limited to letters, electronic mail, and text messages, between Plaintiff and Defendant related to any of the allegations set forth in the Complaint between January 1, 2021 through the present.

2.      Any and all documents between Plaintiff and Defendant between January 1, 2021 through the present.

3.      Any and all contracts, agreements, and/or understandings between Plaintiff and Defendant between January 1, 2021 through the present.

4.      Any and all documents showing Plaintiff was discriminated against by Defendant, based on sex and/or any other characteristic, between January 1, 2021 through the present.

5.      Any and all documents showing Plaintiff was retaliated against by Defendant, in any manner and/or by any means, between January 1, 2021 through the present.

6.      Any and all documents evidencing Defendant promised to increase Plaintiff's compensation at her 90-day evaluation between January 1, 2021 through the present.

7.      Any and all documents evidencing Plaintiff's interest to take on additional projects while employed by Defendant between January 1, 2021 through the present.

8.      Any and all documents evidencing any "side projects" Plaintiff completed while employed by Defendant between January 1, 2021 through the present.

9.      Any and all documents evidencing Plaintiff volunteering for any projected while employed by Defendant between January 1, 2021 through the present.

10.     Any and all documents evidencing Plaintiff exceeded Defendant's expectations between January 1, 2021 through the present.

11.     Any and all documents evidencing Plaintiff's research regarding industry standards as to first-year associate attorney salaries to justify her compensation between January 1, 2021 through the present.

Dated: May 16, 2023                                        Respectfully submitted,

                                                           /s/ Paul A. Hankin
                                                           **The Downs Law Group, P.A.**
                                                           3250 Mary Street, Suite 307
                                                           Coconut Grove, FL 33133
                                                           Tel: (305) 444-8226
                                                           Facsimile: (305) 444-6773
                                                           Jeremy D. Friedman, Esq.
                                                           Florida Bar # 134643
                                                           jfriedman@downslawgroup.com
                                                           Paul A. Hankin, Esq., LL.M.
                                                           Florida Bar # 125402
                                                           phankin@downslawgroup.com
                                                           *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 16th day of May 2023, the foregoing was electronically filed with the Florida Courts E-Filing Portal, which will serve it via electronic mail to all counsel of record.

                                                           /s/ Paul A. Hankin
                                                           Paul A. Hankin, Esq., LL.M.

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

Case No. 2022-022571-CA-01

SABRINA BOUKHEIR,

     Plaintiff,

vs.

THE DOWNS LAW GROUP, P.A.,

     Defendant.

_____/

## PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT

     Plaintiff, Sabrina Boukheir ("Plaintiff"), by and through undersigned counsel and pursuant to Fla. R. Civ. P. 1.190, hereby files this Motion for Leave to Amend the Complaint and states the following.

     1.    On November 28, 2022, Plaintiff filed a three-count Complaint alleging sex discrimination and retaliation in violation of the Florida Civil Rights Act of 1992 ("FCRA"), along with breach of contract.

     2.    On or about May 31, 2022, before Plaintiff filed her Complaint, Plaintiff filed timely a Charge of Discrimination (the "Charge") with the U.S. Equal Employment Opportunity Commission (the "EEOC"), which was automatically dual filed with the Florida Commission on Human Relations (the "FCHR"). The FCHR failed to conciliate or determine whether there was reasonable cause on the Charge within 180 days of Plaintiff filing the Charge.

     3.    In the Charge, Plaintiff asserted that she was discriminated and retaliated against by Defendant in violation of the FCRA as well as Title VII of the Civil Rights Act of 1964 ("Title VII").

     4.    On May 24, 2023, the EEOC issued a Notice of Right to Sue (the "Notice") which

gave Plaintiff 90 days to file her discrimination and retaliation claims under federal law in court.

5.      Plaintiff moves this Court for leave to amend the Complaint for the purpose of adding discrimination and retaliation claims under Title VII. Attached at **Exhibit 1** is a copy of Plaintiff's proposed First Amended Complaint.

6.      This amendment is timely as it is within the 90-day period provided for by the EEOC in the Notice.

7.      The Florida Rules of Civil Procedure provide that "[l]eave of court ***shall*** be given freely when justice so requires." Fla. R. Civ. P. 1.190(a) (emphasis added). "The primary consideration in determining whether a motion for leave to amend should be granted is a test of prejudice, and such leave should not be denied unless the privilege has been abused or the complaint is clearly not amendable. An amendment should be allowed unless it clearly appears that allowing the amendment would prejudice the opposing party; the privilege to amend has been abused; or amendment would be futile." *Griffin v. Palm Beach Cnty. Bd. of Cnty. Commissioners,* 296 So. 3d 918, 920 (Fla. 4th DCA  2020) (reversing the denial of a motion for leave to amend).

8.      "It is well settled that leave to amend should be freely granted when justice requires, and public policy favors resolving cases on their merits. The Florida Rules of Civil Procedure encourage a policy of liberality in allowing litigants to amend their pleadings, especially prior to trial . . . **Absent exceptional circumstances, motions for leave to amend should be granted**, and refusal to do so constitutes an abuse of discretion. **Courts should be especially liberal when leave to amend is sought at or before a hearing on a motion for summary judgment**." *Drish v. Bos*, 298 So. 3d 722, 724 (Fla. 2d DCA 2020) (emphasis added) (internal citations omitted).

9.      Here, Plaintiff has not previously sought to amend her pleading, Defendant will not be prejudiced by this amendment, the privilege to amend has not been abused, and this amendment would not be futile as Plaintiff can clearly state a claim for discrimination and retaliation under Title VII. *See* Ex. 1; *see also Taylor v. Fla. State Fair Auth.*, 875 F. Supp. 812, 815 (M.D. Fla. 1995) ("leave to amend should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face").

10.     Further, no motion for summary judgment has been filed and this matter is not set for trial until the three-week period commencing September 30, 2024. Therefore, Plaintiff should be permitted to amend her pleading.

11.     Accordingly, Plaintiff's Motion for Leave to Amend the Complaint should be granted and the proposed First Amended Complaint, which is attached at Exhibit 1, should be adopted as the applicable pleading in this action.

## <u>CERTIFICATE OF CONFERRAL</u>

The undersigned counsel conferred with Defendant's counsel, Jeremy D. Friedman, Esq., via email on May 30, 2023, and requested his consent to file an amendment to the Complaint to assert federal claims. In response, Mr. Friedman wrote, "[w]e would have to see the proposed motion and amended complaint prior to consenting to the Motion. Please provide a copy." Mr. Friedman further explained that "I have never agreed to a Motion to Amend a pleading before I even saw the proposed amendment.  Similarly, as a Plaintiff, I have never had a defense counsel agree to a proposed amendment either without reviewing it first."

Dated: May 31, 2023

Respectfully submitted,

**BT LAW GROUP, PLLC**
3050 Biscayne Blvd., Suite 205
Miami, Florida 33137
Tel: (305) 507-8506

3

By: s/ Jason D. Berkowitz
**ANISLEY TARRAGONA, ESQ.**
Florida Bar No. 51626
anisley@btattorneys.com
**JASON D. BERKOWITZ, ESQ.**
Florida Bar No. 0055414
jason@btattorneys.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on May 31, 2023 on counsel for Defendant, Paul A. Hankin, Esq. and Jeremy D. Friedman, Esq., at *phankin@downslawgroup.com* and *jfriedman@downslawgroup.com*.

s/ Anisley Tarragona
Anisley Tarragona, Esq.

# EXHIBIT 1

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

Case No. 2022-022571-CA-01

SABRINA BOUKHEIR,

      Plaintiff,

vs.

THE DOWNS LAW GROUP, P.A.,

      Defendant.

_____/

## **FIRST AMENDED COMPLAINT**

      Plaintiff, Sabrina Boukheir ("Plaintiff"), sues Defendant, The Downs Law Group, P.A. ("Defendant"), and alleges as follows.

      1.     This is an action by Plaintiff against Defendant, a law firm and Plaintiff's former employer, for sex discrimination and retaliation in violation of the Florida Civil Rights Act of 1992, Fla. Stat. § 760.01 *et seq.* ("FCRA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). In addition, Plaintiff brings a claim for breach of contract.

      2.     Plaintiff seeks damages exceeding $50,000, exclusive of interest, attorneys' fees, and costs.

      3.     Plaintiff seeks all damages provided for under the FCRA and Title VII, including attorneys' fees and costs, as well as any other available damages.

      4.     In addition, Plaintiff seeks damages for Defendant's breach of its agreement with Plaintiff to pay five percent (5%) of the annual salary of two individuals Plaintiff referred/recruited to Defendant and who worked for Defendant for at least ninety (90) days.

## PARTIES, JURISDICTION, AND VENUE

5.      Plaintiff is an individual over the age of 18 and is otherwise *sui juris*.

6.      During the relevant period, Plaintiff was employed by Defendant and performed services for Defendant in Miami-Dade County, Florida.

7.      During the relevant period, Defendant conducted business in Miami-Dade County, Florida.

8.      This Court has jurisdiction over Plaintiff's claims as all events leading to the filing of this Complaint took place in Miami-Dade County, Florida.

9.      Venue is proper in Miami-Dade County because all events leading to the filing of this Complaint took place in Miami-Dade County, Florida.

10.     During the relevant period, Defendant was an "employer" as that term is defined under Title VII and the FCRA as it employed 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of Defendant.

11.     During the relevant period, Plaintiff was an employee of Defendant as she performed services for, and was under the control and direction of, Defendant, and was provided wages and other remuneration by Defendant.

## PLAINTIFF HAS EXHAUSTED ADMINISTRATIVE REMEDIES

12.     Plaintiff was terminated by Defendant on or about May 9, 2022.

13.     On May 31, 2022, Plaintiff filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"), and dual filed the Charge with the Florida Commission on Human Relations ("FCHR"). *See* Charge at **Exhibit A**.

14.     On May 24, 2023, the EEOC issued a Notice of Right to Sue (the "Notice"). *See*

**Exhibit B.**

15.     This Amended Complaint is filed in accordance with the Notice and within 90 days of Plaintiff's receipt of the Notice.

16.     In addition, the FCHR failed to conciliate or determine whether there was reasonable cause on the Charge within 180 days of Plaintiff filing the Charge. Thus, pursuant to Fla. Stat. § 760.11(8), Plaintiff is entitled to file an action under the FCRA in court.

17.     Plaintiff has met and exhausted all prerequisites and preconditions to filing this lawsuit.

## FACTUAL ALLEGATIONS

**Relevant Background Information**

18.     Plaintiff was hired by Defendant on or about January 31, 2022 to work as an Associate attorney.

19.     During the hiring process, Plaintiff attempted to negotiate for a starting salary of $115,000 but was ultimately offered $95,000 to start, with Defendant's promise that Defendant would increase Plaintiff's compensation at her 90-day evaluation.

20.     Upon commencing employment, Plaintiff was assigned several matters at different stages. Also, Plaintiff was required to, and did, complete "side projects," such as preparing case assessments of more than 15 matters that were not assigned to Plaintiff.

21.     Plaintiff constantly expressed an interest in taking on additional projects and further developing her litigation skills.

22.     From the outset, Plaintiff exceeded expectations. Plaintiff was diligent with her cases, required little to no supervision, had a great relationship with clients, and was well ahead of deadlines in her cases and with assignments.

23.     During her employment with Defendant, Plaintiff was never disciplined, written up, or advised of any performance issues.

24.     Plaintiff worked without issue until Wednesday, May 4, 2022.

25.     That day, during an attorney meeting, it became clear to Plaintiff that a similarly situated male attorney, Jason Clark, had been privy to information concerning side projects that Plaintiff had not been.

26.     This was meaningful because Defendant indicated that an attorney's compensation was impacted by the number of side projects that attorneys did.

**Plaintiff's First Complaint to Defendant**

27.     Plaintiff sent a Microsoft Teams message to Defendant's Human Resources Director, Samandha Canepa, complaining that there was an ongoing issue in which several male attorneys (for example, David Durkee, Dylan Boigris, Jason Larey, and Jason Clark) had received information about side projects that female Associate attorneys (Laura Pereira, Sara Mancini, and Plaintiff) had not.

28.     This information allowed the male attorneys to volunteer for side projects while the female attorneys were left out and as such, not able to volunteer.

29.     Ms. Canepa claimed she would investigate the issue, but never followed-up with Plaintiff.

30.     Plaintiff later learned that another female attorney, Ms. Pereira, had previously complained to Ms. Canepa about this issue, but nothing had been done to rectify the situation.

**Plaintiff was Praised by her Supervising Attorney for her Performance**

31.     On May 5, 2022, Plaintiff attended her 90-day performance evaluation meeting with her supervising attorney, Mr. Durkee. Ms. Canepa was also in attendance.

4

32.     During the evaluation, Mr. Durkee praised Plaintiff's performance and stated that it was "very hard to find critiques" of her.

33.     Mr. Durkee stated that Plaintiff had "stayed ahead of the curve," was a "good team player," had a "great attitude," and even commented that Defendant was "happy to have" Plaintiff.

34.     The only constructive comment Mr. Durkee made was that while Plaintiff was "currently following the plan given . . . once you really know BP – I want to see more creativity."

35.     During the meeting, Plaintiff requested additional training so she could continue growing. Mr. Durkee acknowledged that Plaintiff needed "to be trained a little more" and stated that he "hope[d] to be a good mentor" to Plaintiff.

36.     Also, Plaintiff informed Mr. Durkee that she wanted more hearing and deposition experience and Mr. Durkee stated that he would provide her with opportunities.

37.     The day after the performance evaluation meeting, Mr. Durkee emailed Plaintiff and asked if she was available to cover a deposition for him on May 13, 2022. Plaintiff responded that she was available and looked forward to covering the deposition.

**Plaintiff's Second Complaint to Defendant**

38.     After the performance evaluation meeting, Plaintiff went to Ms. Canepa's office to discuss the salary increase she was expecting based on the representations made by Defendant during the hiring process.

39.     During the meeting with Ms. Canepa, Plaintiff presented, among other things, a list of the side projects she had completed and requested that she receive a compensation increase to $119,900, which was the market rate according to Plaintiff's research and because Mr. Clark (a junior attorney who graduated and was barred at the same time as Plaintiff) was receiving a salary of $110,000. Plaintiff had learned of Mr. Clark's salary from individuals at Defendant.

40.     During this meeting with Ms. Canepa, Plaintiff complained that Mr. Clark was earning more than she was even though they were similarly situated.

41.     Ms. Canepa indicated that she needed to review everything and would continue the discussion the following week as she was out of the office the next day (Friday).

**Plaintiff's Third Complaint About Unequal Pay**

42.     Later that same day, Plaintiff went to the office of Defendant's Founder and Principal Attorney, Craig Downs, to discuss her complaints that Mr. Clark was being paid more than she and that male attorneys were being treated more favorably than female attorneys. Plaintiff also presented Mr. Downs with the Robert Half pay scale and requested the promised salary increase.

43.     Mr. Downs claimed that he would speak with Ms. Canepa.

44.     On Friday, May 6, 2022, Plaintiff sent an email to Mr. Downs and Ms. Canepa reiterating her complaints about, among other things, the fact that male attorneys were being made aware of side projects that female attorneys were not, and that a similarly situated male employee (Mr. Clark) was earning more money than she was even though she was equally, if not more, qualified.

45.     Specifically, Plaintiff wrote, "I do not appreciate the fact that I am earning significantly less money than my male coworker, who has objectively less litigation experience than I do, when we are the same level of attorney. I truly hope this will be recognized and corrected."

46.     During the day on May 6, Plaintiff spoke with Ms. Pereira and learned that she, a sixth-year female Associate attorney, was earning the same compensation as Mr. Clark (a significantly less experienced male attorney).

47.      Ms. Pereira also expressed her frustration and claimed that she would speak with Mr. Downs about this pay inequality.

48.      On Monday, May 9, 2022, Plaintiff learned that there was a closed-door meeting that was attended by Mr. Downs, Mr. Durkee, Ms. Canepa, and Mr. Boigris.

49.      Plaintiff was not invited to the meeting although, upon information and belief, Plaintiff's complaints were discussed.

**<u>Plaintiff's Termination</u>**

50.      Later that day, Plaintiff walked to Ms. Canepa's office for a scheduled meeting to address the complaints Plaintiff raised at the end of the prior week.

51.      When Plaintiff arrived, Ms. Canepa excused herself for a few minutes and then returned.

52.      Moments later, Defendant's Controller, Alfredo Mesa, joined the meeting.

53.      When Plaintiff questioned why Mr. Mesa was present, Ms. Canepa responded, "because of your review."

54.      Plaintiff was confused and said, "but he's not litigation," to which Ms. Canepa responded, "well, he's management."

55.      Ms. Canepa then proceeded to criticize Plaintiff for "creating problems" by allegedly speaking with Mr. Boigris, Mr. Clark, and Ms. Pereira about compensation and complaining about the pay disparities between male and female attorneys.

56.      Plaintiff explained that she had not spoken with Mr. Clark about this issue and her conversation with Mr. Boigris had also involved work related matters.

57.      Plaintiff acknowledged that she had spoken with Ms. Pereira about female attorneys being compensated less than male attorneys.

58.     Even though Plaintiff's discussions with Ms. Pereira were "concerted activity" for the purpose of "mutual aid or protection" under the National Labor Relations Act, Ms. Canepa nonetheless became irate.

59.     After some back-and-forth, Ms. Canepa abruptly said, "I think it is best that we part ways. Your expectations and our expectations do not match, and I think you would do better with a firm that uses a pay scale."

60.     Plaintiff was completely shocked.

61.     At that point, Mr. Mesa chimed in and said, "Sam, is there any way this can be mended?"

62.     Ms. Canepa responded that the decision was made.

63.     Plaintiff reminded Ms. Canepa that it is unlawful to terminate an employee for complaining about discrimination and for discussing compensation with another female attorney.

64.     Appearing flustered, Ms. Canepa blurted out that Plaintiff was being fired for "performance."

65.     Given that Plaintiff had never been told of any performance issues nor had she ever received a written counseling, Plaintiff was baffled by Ms. Canepa's statement.

66.     Ms. Canepa did not provide any specific information about any alleged performance issues.

67.     Plaintiff requested a copy of her recent performance review and Ms. Canepa refused and claimed, "I am not required to show you anything."

68.     Mr. Mesa asked again if there was any way to defuse the situation, and Ms. Canepa said no.

69.     Ms. Canepa's claim that Plaintiff was terminated for alleged performance reasons

Case No. 2022-022571-CA-01

is pretextual and belied by the facts.

**Defendant Violated its Policies by Terminating Plaintiff's Employment**

70.     Section 5-7 of Defendant's Employee Handbook ("Whistleblower") provides that:

A whistleblower as defined by this policy is an employee of The Downs Law Group, P.A. who reports an activity that he/she considers to be illegal or dishonest to one or more of the parties specified in this policy. The whistleblower is not responsible for investigating the activity or for determining fault or corrective measures; appropriate Human Resources officials are charged with these responsibilities.

Examples of illegal or dishonest activities are violations of federal, state, or local laws; billing for services not performed or for goods not delivered; and other fraudulent financial reporting.

.          .          .

Whistleblower protections are provided in two important areas: (1) confidentiality and (2) against retaliation . . . The Law Firm will not retaliate against a whistleblower. This includes, but is not limited to protection from retaliation in the form of an adverse employment action, such as termination, compensation decreases, or poor work assignments and threats of physical harm. Any whistleblower who believes he/she is being retaliated against must contact Human Resources immediately.

71.     In addition, Section 5-22 of Defendant's Employee Handbook ("Involuntary Termination of Employment") provides that:

When practical, employees will be warned and counseled. However, failure to correct behavior or further violation of any policy may result in additional disciplinary action, up to and including termination. Depending upon the nature of the offense, the Law Firm reserves the right to terminate any employee without warning.

Warnings     and     counseling     are     to     be     documented     on     a Disciplinary/Counseling/Termination Report.

The Law Firm will generally terminate an employee after the employee's third offense.

72.     Here, Defendant did not comply with its own policies as Plaintiff was terminated

for complaining about Defendant's violations of law.

73.     Further, Defendant did not follow its "three strike" policy as Plaintiff did not even commit one offense let alone three offenses.

74.     As there was no legitimate basis for paying Plaintiff less than similarly situated male attorneys, it is clear that Plaintiff was intentionally discriminated against because of her sex (female).

75.     Similarly, as there was no legitimate business reason for terminating Plaintiff, it is clear that Plaintiff's termination was in retaliation for her complaints of Defendant's violations of law.

76.     Any explanation proffered by Defendant for terminating Plaintiff's employment, or for paying Plaintiff less than similarly situated male attorneys, is pretextual.

77.     Defendant's systemic practice of paying male attorneys more than similarly situated female attorneys is unlawful and violates the FCRA.

78.     Upon information and belief, there is a class of female attorneys that were paid less than similarly situated, or even less qualified, male attorneys.

**Defendant Breached an Agreement with Plaintiff to Pay Referral/Recruitment Fees**

79.     During her employment with Defendant, on or about March 9, 2022, Plaintiff entered into an agreement with Defendant called "Recruit Proposal" whereby Defendant agreed to pay Plaintiff a specified percentage of the first-year annual salary for an employee she referred/recruited to Defendant and who remained employed by Defendant for at least ninety (90) days. *See* **Exhibit C.**

80.     The agreement was signed by Plaintiff and Defendant.

81.     Pursuant to their agreement, Plaintiff was first entitled to, and received, a percentage of the annual salary of Alexis Lunetta, who Plaintiff referred/recruited to Defendant,

after she remained employed by Defendant for at least ninety (90) days.

82.     Plaintiff and Defendant also agreed that Plaintiff would be entitled to five percent (5%) of the first-year annual salary for anyone else that Plaintiff referred/recruited to the law firm and who remained employed for at least ninety (90) days. Plaintiff was entitled to 2.5% upon the new employee's hire and the remaining 2.5% was to be paid once the employee hit the 90-day mark.

83.     Plaintiff then referred/recruited to Defendant, Bella Simental (who, upon information and belief, was receiving an annual salary of $60,000) and Sheyanne Sullivan (who, upon information and belief, was receiving an annual salary of $58,000).

84.     Upon information and belief, both Ms. Simental and Ms. Sullivan were/have been employed by Defendant for over ninety (90) days.

85.     After Plaintiff was terminated, Defendant's Controller, Mr. Mesa, acknowledged that Plaintiff was entitled to the referral/recruitment fees.

86.     Therefore, Plaintiff is owed approximately $5,900 in referral/recruitment fees.

87.     To date, Defendant has failed to pay the referral/recruitment fees owed to Plaintiff.

**Plaintiff's Damages and Retention of Counsel**

88.     Because of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages, as set forth in more detail below.

89.     Plaintiff hired the undersigned law firm to represent her in this case and has agreed to pay the firm a reasonable fee for its services.

**COUNT I**
**SEX DISCRIMINATION AGAINST DEFENDANT**
**IN VIOLATION OF THE FCRA**

90.     Plaintiff re-adopts every factual allegation as stated in paragraphs 1-78 and 88-89

above as though fully recited herein.

91.    Discrimination in the workplace on the basis of sex is prohibited under the FCRA.

92.    Plaintiff's sex is female and as such, is within a protected group of individuals under the FCRA.

93.    Plaintiff was qualified to work as an Associate attorney.

94.    Plaintiff's job functions as an Associate attorney were of equal skill, effort, and responsibility, if not greater, than that of Defendant's male Associate attorneys, and the work was performed under the same or similar working conditions.

95.    Plaintiff was intentionally discriminated against by Defendant because of her sex (female).

96.    During the relevant period, Plaintiff and other female attorneys were denied critical information about, and/or opportunities concerning, side projects that male attorneys received.

97.    Further, Plaintiff was paid less than similarly situated male attorneys, which is a form of sex discrimination that is prohibited by the FCRA.

98.    Plaintiff was qualified for and entitled to, at a minimum, wages equal to her male counterparts performing substantially the same, if not less, work than Plaintiff performed.

99.    Plaintiff suffered adverse employment actions because of her sex.

100.    Defendant's conduct was willful and in disregard of Plaintiff's protected rights.

101.    As a result of Defendant's actions as alleged herein, Plaintiff was deprived of rights, was exposed to ridicule and embarrassment, and suffered extreme emotional distress and damage.

102.    Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory actions.

**WHEREFORE**, Plaintiff respectfully requests that the Court:

A.     Adjudge and decree that Defendant violated the FCRA, and did so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

B.     Award Plaintiff back pay, including the discrepancy in pay between what Plaintiff was receiving and what similarly situated male attorneys were/are receiving;

C.     Require Defendant to reinstate Plaintiff to the same position at the same rate of pay and with the same benefits that Plaintiff would have had had Plaintiff not been discriminated against by Defendant, or in lieu of reinstatement, award front pay;

D.     Award Plaintiff compensatory damages, including damages for mental anguish, loss of dignity, and any other intangible injuries;

E.     Award Plaintiff punitive damages;

F.     Award Plaintiff her attorneys' fees and costs;

G.     Award Plaintiff all recoverable interest; and

H.     Award any other relief that this Court deems just and proper.

## **COUNT II**
## **RETALIATION AGAINST DEFENDANT**
## **IN VIOLATION OF THE FCRA**

103.   Plaintiff re-adopts every factual allegation as stated in paragraphs 11-78 and 88-89 above as though fully recited herein.

104.   Defendant intentionally retaliated against Plaintiff for exercising rights protected under the FCRA, by, for example, terminating her employment after she complained about pay inequality/discrimination.

105.   There is a temporal proximity between Plaintiff's protected activity and her termination.

106.   Defendant's conduct was willful and in disregard of Plaintiff's protected rights.

13

107.    As a result of Defendant's actions as alleged herein, Plaintiff was deprived of rights, was exposed to ridicule and embarrassment, and suffered extreme emotional distress and damage.

108.    The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and Defendant's failure to take prompt remedial action to prevent retaliation against the Plaintiff, in violation of its policies, deprived Plaintiff of statutory rights under the law.

109.    The actions of Defendant and its agents were willful, wanton, and intentional, and with malice or reckless indifference to Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of economic, compensatory, and punitive damages.

110.    Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's retaliatory actions.

**WHEREFORE**, Plaintiff respectfully requests that the Court:

A.      Adjudge and decree that Defendant violated the FCRA, and did so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

B.      Award Plaintiff back pay at the rate of pay similarly situated male attorneys were/are receiving;

C.      Require Defendant to reinstate Plaintiff to the same position at the same rate of pay and with the same benefits that Plaintiff would have had had Plaintiff not been retaliated against by Defendant, or in lieu of reinstatement, award front pay;

D.      Award Plaintiff compensatory damages, including damages for mental anguish, loss of dignity, and any other intangible injuries;

E.      Award Plaintiff punitive damages;

F.      Award Plaintiff her attorneys' fees and costs;

14

G.      Award Plaintiff all recoverable interest; and

H.      Award any other relief that this Court deems just and proper.

## COUNT III
## SEX DISCRIMINATION AGAINST DEFENDANT
## IN VIOLATION OF TITLE VII

111.    Plaintiff re-adopts every factual allegation as stated in paragraphs 1-78 and 88-89 above as though fully recited herein.

112.    Discrimination in the workplace on the basis of sex is prohibited under Title VII.

113.    Plaintiff's sex is female and as such, is within a protected group of individuals under Title VII.

114.    Plaintiff was qualified to work as an Associate attorney.

115.    Plaintiff's job functions as an Associate attorney were of equal skill, effort, and responsibility, if not greater, than that of Defendant's male Associate attorneys, and the work was performed under the same or similar working conditions.

116.    Plaintiff was intentionally discriminated against by Defendant because of her sex (female).

117.    During the relevant period, Plaintiff and other female attorneys were denied, among other things, critical information about, and/or opportunities concerning, side projects that male attorneys received.

118.    Further, Plaintiff was paid less than similarly situated male attorneys, which is a form of sex discrimination that is prohibited by Title VII.

119.    Plaintiff was qualified for and entitled to, at a minimum, wages equal to her male counterparts performing substantially the same, if not less, work than Plaintiff performed.

120.    Plaintiff suffered adverse employment actions because of her sex.

121.    Defendant's conduct was willful and in disregard of Plaintiff's protected rights.

122.    As a result of Defendant's actions as alleged herein, Plaintiff was deprived of rights, was exposed to ridicule and embarrassment, and suffered extreme emotional distress and damage.

123.    Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory actions.

**WHEREFORE**, Plaintiff respectfully requests that the Court:

A.    Adjudge and decree that Defendant violated Title VII, and did so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

B.    Award Plaintiff back pay, including the discrepancy in pay between what Plaintiff was receiving and what similarly situated male attorneys were/are receiving;

C.    Require Defendant to reinstate Plaintiff to the same position at the same rate of pay and with the same benefits that Plaintiff would have had had Plaintiff not been discriminated against by Defendant, or in lieu of reinstatement, award front pay;

D.    Award Plaintiff compensatory damages, including damages for mental anguish, loss of dignity, and any other intangible injuries;

E.    Award Plaintiff punitive damages;

F.    Award Plaintiff her attorneys' fees and costs;

G.    Award Plaintiff all recoverable interest; and

H.    Award any other relief that this Court deems just and proper.

## COUNT IV
## RETALIATION AGAINST DEFENDANT
## IN VIOLATION OF TITLE VII

124.    Plaintiff re-adopts every factual allegation as stated in paragraphs 11-78 and 88-89 above as though fully recited herein.

125.    Defendant intentionally retaliated against Plaintiff for exercising rights protected under Title VII by, for example, terminating her employment after she complained about pay inequality/discrimination.

126.    There is a temporal proximity between Plaintiff's protected activity and her termination.

127.    Defendant's conduct was willful and in disregard of Plaintiff's protected rights.

128.    As a result of Defendant's actions as alleged herein, Plaintiff was deprived of rights, was exposed to ridicule and embarrassment, and suffered extreme emotional distress and damage.

129.    The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and Defendant's failure to take prompt remedial action to prevent retaliation against the Plaintiff, in violation of its policies, deprived Plaintiff of statutory rights under the law.

130.    The actions of Defendant and its agents were willful, wanton, and intentional, and with malice or reckless indifference to Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of economic, compensatory, and punitive damages.

131.    Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a direct result of Defendant's retaliatory actions.

**WHEREFORE**, Plaintiff respectfully requests that the Court:

A.    Adjudge and decree that Defendant violated Title VII, and did so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

B.    Award Plaintiff back pay at the rate of pay similarly situated male attorneys were/are receiving;

C.      Require Defendant to reinstate Plaintiff to the same position at the same rate of pay and with the same benefits that Plaintiff would have had had Plaintiff not been retaliated against by Defendant, or in lieu of reinstatement, award front pay;

D.      Award Plaintiff compensatory damages, including damages for mental anguish, loss of dignity, and any other intangible injuries;

E.      Award Plaintiff punitive damages;

F.      Award Plaintiff her attorneys' fees and costs;

G.      Award Plaintiff all recoverable interest; and

H.      Award any other relief that this Court deems just and proper.

## <u>COUNT V</u>
## BREACH OF CONTRACT AGAINST DEFENDANT

132.    Plaintiff re-adopts every factual allegation as stated in paragraphs 1-17 and 79-89 above as though fully recited herein.

133.    Plaintiff entered into an agreement with Defendant whereby Plaintiff was entitled to five percent (5%) of the first-year annual salary for anyone that Plaintiff referred/recruited to the law firm and who remained employed for at least ninety (90) days.

134.    Sufficient consideration was provided for the agreement.

135.    Both Plaintiff and Defendant signed the agreement.

136.    Plaintiff referred/recruited to Defendant Bella Simental (who, upon information and belief, was receiving an annual salary of $60,000) and Sheyanne Sullivan (who, upon information and belief, was receiving an annual salary of $58,000).

137.    Defendant materially breached this valid agreement with Plaintiff by failing to pay approximately $5,900 in referral/recruitment fees owed to Plaintiff for her referral/recruitment efforts.

Case No. 2022-022571-CA-01

138.   Because of Defendant's breach of the agreement, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in its favor against Defendant and award damages for breach of contract and also award pre and post-judgment interest pursuant to the terms of the agreement between Plaintiff and Defendant, and grant such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial of all issues so triable.

Dated: May 31, 2023                                        Respectfully submitted,

**BT LAW GROUP, PLLC**
3050 Biscayne Blvd., Suite 205
Miami, Florida 33137
Tel: (305) 507-8506

By:  s/ Jason D. Berkowitz
**ANISLEY TARRAGONA, ESQ.**
Florida Bar No. 51626
anisley@btattorneys.com
**JASON D. BERKOWITZ, ESQ.**
Florida Bar No. 0055414
jason@btattorneys.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on May 31, 2023 on counsel for Defendant, Paul A. Hankin, Esq. and Jeremy D. Friedman, Esq. at *phankin@downslawgroup.com* and *jfriedman@downslawgroup.com*.

s/ Anisley Tarragona
Anisley Tarragona, Esq.

# EXHIBIT A

EEOC Form 5 (11/09)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To | Agency(ies) Charge No(s) |
|---|---|
| [X] FEPA | |
| [X] EEOC | 510-2023-06462 |

### U.S. Equal Employment Opportunity Commission
### Florida Commission on Human Relations

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Sabrina Boukheir | | July 1996 |

| Street Address | City, State and ZIP Code |
|---|---|
| 223 Menores Ave., Apt. 3 | Coral Gables, FL 33134 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe
Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| The Downs Law Group, P.A. | 15+ | 305 444 8226 |

| Street Address | City, State and ZIP Code |
|---|---|
| 3250 Mary St. #307 | Miami, FL 33133 |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| [ ] RACE   [ ] COLOR   [X] SEX   [ ] RELIGION   [ ] NATIONAL ORIGIN | Earliest: Jan. 2022   Latest: May 2022 |
| [X] RETALIATION   [ ] AGE   [ ] DISABILITY   [ ] GENETIC INFORMATION | |
| [ ] OTHER (Specify) | [ ] CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was discriminated against by my former employer, The Downs Law Group, P.A. ("DLG"), based on my gender. I was also retaliated against by DLG. I am an attorney and began my employment at DLG, a law firm, on January 31, 2022 and remained employed until I was unlawfully terminated on or about May 9, 2022.

During the hiring process, I attempted to negotiate for a starting salary of $115,000 but was ultimately offered $95,000 with a promise by DLG's Human Resources Director, Samandha Canepa, that DLG would reassess my compensation at my 90-day evaluation. At the time of hire, I was assigned several cases (both active and pre-suit). DLG also required me and other associate attorneys to complete "side projects," such as writing memos for DLG's funders about ongoing cases. Even though I was a junior attorney, I exceeded expectations. I was diligent with my cases, required little to no supervision, had a great relationship with clients, and was well ahead of deadlines in my cases.

I worked without issue until Wednesday, May 4, 2022, which was the beginning of the end. That day, during an attorney meeting, it became clear to me that a similarly situated male attorney, Jason Clark, had been privy to information concerning side projects that I had not been. This information allowed the male attorneys to volunteer for side projects while the female attorneys were left out and as such, not able to volunteer, which had an impact on compensation. Ms. Canepa claimed that she would investigate the issue, but never followed-up with me. I later learned that another female attorney had previously complained to Ms. Canepa about this issue, but nothing had been done to rectify the situation.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| | |
| I declare under penalty of perjury that the above is true and correct | SIGNATURE OF COMPLAINANT |
| | |
| 5/18/2022 _Sabrina Boukheir_ | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date   Charging Party Signature | |

Annasofia A. Roig
Comm.: GG 221370
Expires: May 23, 2022
Notary Public - State of Florida

EEOC - MDO
Received 05-31-2022

**Sent by FAX**

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To | Agency(ies) Charge No(s): |
|---|---|
| [X] FEPA | |
| [X] EEOC | |

**U.S. Equal Employment Opportunity Commission**
**Florida Commission on Human Relations**

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet):

On Thursday, May 5, 2022, I attended my 90-day performance evaluation meeting with my supervisor, David Durkee, Esq. Ms. Canepa was also in attendance. During the evaluation, Mr. Durkee praised my performance and stated that it was "very hard to find critiques" of me. Mr. Durkee explained that I should "keep doing exactly what [I] was doing" and even commented that DLG was "happy to have" me. The only constructive comment Mr. Durkee made was that I should "grab the bull by the horns more." I informed Mr. Durkee that I wanted more hearing and deposition experience and Mr. Durkee stated that he would provide me with opportunities. In fact, the day after the performance evaluation meeting, Mr. Durkee emailed me and asked if I was available to cover a deposition for him on May 13, 2022.

After the evaluation meeting, I went to Ms. Canepa's office to discuss the salary increase I was expecting based on the representations made by DLG at the time of hire. During the meeting with Ms. Canepa, I presented a list of the side projects I had completed and requested that I receive a compensation increase to $119,900, as this was the market rate according to my research and because Jason Clark (a junior attorney who graduated and was barred at the same time as I) was receiving a salary of $110,000. I had learned of Mr. Clark's salary from two individuals at DLG. Ms. Canepa initially nit-picked my list of side projects and commented, without any basis (and even though she has no litigation experience), that I was "not doing enough to take [my]self to the next level."

During this meeting with Ms. Canepa, I complained that Mr. Clark was earning $15,000 more than I was even though we were similarly situated. Ms. Canepa indicated that she needed to review everything and would continue the discussion the following week as she was out of the office the next day (Friday) for vacation.

Later that same day, I went to the office of Craig Downs, founder and principal attorney at DLG, to discuss my complaints that Mr. Clark was being paid more than I and that male attorneys were being treated more favorably. Mr. Downs responded that he would speak with Ms. Canepa.

On Friday, May 6, 2022, I sent an email to Mr. Downs and to Ms. Canepa, reiterating my complaints about, among other things, the fact that male attorneys were being made aware of side projects that female attorneys were not, and that a similarly situated male employee (Mr. Clark) was earning more money than I was. Specifically, I wrote, "I do not appreciate the fact that I am earning significantly less money than my male coworker, who has objectively less litigation experience than I do, when we are the same level of attorney. I truly hope this will be recognized and corrected."

During the day on May 6, I spoke with Laura Pereira, Esq. and learned that she, a sixth-year attorney, was earning the same compensation as Mr. Clark (a first-year attorney). Ms. Pereira expressed her frustration and claimed that she would speak with Mr. Downs about this pay inequality.

On Monday, May 9, 2022, I learned that there was a closed-door meeting that was attended by Mr. Downs, Mr. Durkee, Ms. Canepa, and Dylan Boigris, Esq. I was not invited to the meeting although, upon information and belief, my complaints were discussed.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct

Date: 5/18/2022

Charging Party Signature: _Sabrina Puckhein_

NOTARY – When necessary for State and Local Agency Requirements

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)

Annasofia A. Roig
Comm. GG221370
Expires May 23, 2022
Notary Public - State of Florida

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To | Agency(ies) Charge No(s) |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☒ FEPA | |
| | ☒ EEOC | |

**U.S. Equal Employment Opportunity Commission**
**Florida Commission on Human Relations**

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet)

Later that day, I walked to Ms. Canepa's office for our scheduled meeting to address the complaints I raised on Thursday, May 5. When I arrived, Ms. Canepa excused herself for a few minutes and then returned. Moments later, DLG's Controller, Alfredo Mesa, joined the meeting. When I questioned why Mr. Mesa was present, Ms. Canepa responded, "because of your review." I was confused and said, "but he's not litigation," to which Ms. Canepa responded, "well, he's management."

During the meeting, Ms. Canepa criticized me for "creating problems" by allegedly speaking with Mr. Borgris, Mr. Clark, and Ms. Pereira about the pay discrepancies between male and female attorneys. I explained that I had not spoken with Mr. Clark about this issue and had only spoken with Mr. Borgris about work related matters. I acknowledged that I had spoken with Ms. Pereira about female attorneys being under-compensated. Even though my discussions with Ms. Pereira were "concerted activity" for the purpose of "mutual aid or protection," Ms. Canepa nonetheless became irate.

Ms. Canepa and I then discussed the pay disparities at the firm between male and female attorneys. After some back-and-forth, Ms. Canepa abruptly said, "I think it is best that we part ways, your expectations and our expectations do not match and I think you would do better with a firm that uses a pay scale." I was completely shocked. At that point Mr. Mesa chimed in and said, "Sam, is there any way this can be mended?" Ms. Canepa responded that the decision was made. I reminded Ms. Canepa that it is unlawful to terminate an employee for complaining about unequal pay and for discussing compensation with another female attorney. Not knowing how to respond, Ms. Canepa claimed that she was firing me for "performance." I then requested a copy of my recent performance review and Ms. Canepa refused, claiming, "I am not required to show you anything." Mr. Mesa asked again if there was any way to defuse the situation, and Ms. Canepa said no.

Ms. Canepa's claim that I was terminated for alleged performance reasons is illogical and belied by the facts. For example:

- Two business days earlier, I had received a stellar performance evaluation from Mr. Durkee (which Ms. Canepa observed);

- The day after my review, Mr. Durkee requested that I handle a deposition in one of his cases on May 13, 2022.

- I had not received any written counseling or warning for poor performance;

- Attorneys at DLG committed serious infractions (e.g., missing court deadlines) but were not terminated; and

- DLG never provided me with a termination letter or ever articulated in writing the basis for my termination

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
| I declare under penalty of perjury that the above is true and correct | SIGNATURE OF COMPLAINANT |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| 5/18/2022 _____ *Sabrina Boukhira* | Annasofia A. Roig |
| Date           Charging Party Signature | Comm GG 221370 |
| | Expires May 23, 2022 |
| | Notary Public - State of Florida |

EEOC - MDO
Received 05-31-2022

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To | Agency(ies) Charge No(s): |
|---|---|
| [X] FEPA | |
| [X] EEOC | |

### U.S. Equal Employment Opportunity Commission
### Florida Commission on Human Relations

THE PARTICULARS ARE (if additional paper is needed, attach extra sheet)

In addition, Section 5-22 of DLG's Employee Handbook ("Involuntary Termination of Employment") provides that

> When practical, employees will be warned and counseled. However, failure to correct behavior or further violation of any policy may result in additional disciplinary action, up to and including termination. Depending upon the nature of the offense, the Law Firm reserves the right to terminate any employee without warning.

> Warnings and counseling are to be documented on a Disciplinary/Counseling/Termination Report

> The Law Firm will generally terminate an employee after the employee's third offense

Here, DLG did not comply with its own "three strike" policy as I did not commit one offense let alone three offenses. As there was no non-discriminatory or non-retaliatory business reason for terminating my employment, coupled with the temporal proximity between my protected activity and my termination, it is clear that I was terminated in retaliation for complaining about being paid less than a male attorney, and because I attempted to discuss my compensation with other female attorneys.

I have been discriminated and retaliated against in violation of Title VII of the Civil Rights Act of 1964, the Florida Civil Rights Act, and local laws

---

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct

Date: 5/18/2022

Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)

Annasofia A. Roig
Comm. GG 221370
Expires May 23, 2022
Notary Public - State of Florida

# EXHIBIT B

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Miami District Office**
100 SE 2nd St, Suite 1500
Miami, FL 33131
(800) 669-4000
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 05/24/2023

**To:** Sabrina Boukheir
223 Menores Ave. Apt. 3
Coral Gables, FL 33134
Charge No: 510-2023-06462

EEOC Representative and email:     NILIA MARTI
Investigator
Nilia.Marti@eeoc.gov

---

### DISMISSAL OF CHARGE

The EEOC is closing this charge because you have already filed a lawsuit in a state court on this matter.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 510-2023-06462.

On behalf of the Commission,

Digitally Signed By:Evangeline Hawthorne
05/24/2023
Evangeline Hawthorne
Director

**Cc:**
David Durkee
3250 MARY ST STE 307
Miami, FL 33133

Jason D Berkowitz
BT Law Group, PLLC
3050 Biscayne Blvd. Suite 205
Miami, FL 33137

Anisley Tarragona
anisley@btattorneys.com


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you** *receive* **this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 510-2023-06462 to the District Director at Evangeline Hawthorne, 100 SE 2nd St Suite 1500

Miami, FL 33131.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

Enclosure with EEOC Notice of Closure and Rights (01/22)

You may request the charge file up to 90 days after receiving this Notice of Right to Sue.  After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.

# EXHIBIT C

**Recruit Proposal**

Typically, legal recruiters earn approximately 15-20% of a recruit's first year salary. While I recognize I am not a legal recruiter, I am putting in the same effort to not only find myself a solid assistant, but to find the firm some legal assistants since we need support staff. In my free time and entirely separate from my attorney role, I go on LinkedIn, make connections with people who are listed as paralegals or legal assistants, and I speak to them and see what they're interested in and if they'd be interested in a new roll.

Before I joined DLG, I brought Alexis to DLG under the promise of her being my assistant. Due to several circumstances, I recognize that will not be the case, but I still brought DLG, and specifically David Durkee, a solid legal assistant. Additionally, I have been keeping an eye out for potential law clerks as I think about the firm's future. In my recent search I have found what looks to me to be two solid law clerks and a solid legal assistant. I am happy to continue searching as I believe my experience at different firms and my law school's locality makes me a valuable and trusted recruiter on both sides of the relationship.

Recruiting employees, especially in today's market and economy is not necessarily easy, especially if a firm has a high turn over rate. Regarding Alexis, I am requesting a fee equal to **3%** of her first-year salary to be paid upon her **90-day mark**. This percentage is significantly lower than any recruiter, and it is cognizant of my time, effort, and value added to this firm. Truthfully, most firms create this incentive for their employees automatically. I did not realize I would have to ask, but that is okay with me. Regarding any future employees (except for part time workers) that I may bring, I am requesting a fee equal to **5%** the employee's first year salary payable on the employee's 90-day mark. Additionally, I am requesting that if I have put in the effort to find the recruit, I would like to be able to work with the recruit once they have been trained. *Particularly, the most recent legal assistant is an assistant I found for myself, and I would like that to not only be memorialized but respected.* I recognize that other attorneys and departments may need an assistant or additional assistants, but for this recruit, I would like to be able to be included in the interview and hire her to be my assistant. I am confident that I can recruit other assistants for other departments and attorneys if they are not actively looking themselves.

I hope through my effort you can see that I am not only dedicated to this firm, but I also want to see it grow, and I want to see less people leaving so often. I believe in value, hard work, and loyalty, and I believe firms should always recognize an employee's value even if out of their typical scope of employment. I look forward to hearing back regarding the recruitment fee, and I hope I can be an asset to DLG in this manner.

_____                          _____
Samandha Canepa     (3/9/2022)                   Sabrina Boukheir   (3/9/2022)

DLG00004